8/15/93 Birmingham News (AL) 1
1993 WLNR 4610074

Birmingham News (AL)
Copyright ©1993 Birmingham News

August 15, 1993

Section: News

PRESSURE TO PRODUCE

Tom Lindley

The reaction to Gov. Jim Folsom's special-session opening speech drew a strange mixed review.

As far as a campaign speech it was excellent, many say. He addressed the issues, challenged those who pass laws to act and created interest and enthusiasm.

It was the kind of address that editorial writers and citizen activists would love.

Idealistic. Determined. Urgent.

Politically, though, did Folsom get caught up in his rhetoric and forget which audience he was addressing?

There was more than a small amount of hostility expressed by lawmakers afterward.

Folsom's remarks painted a dim _ but accurate - view of how the Legislature and state government is perceived.

He talked about how the Legislature has an opportunity to "return our people's faith" in government. The governor reminded lawmakers they have a chance to show the people that their leaders are "men and women of character and accomplishment."

In his address, he used words like mistrust, suspicion and fingerpointing to describe the frustration people have in their government institutions.

Folsom could have used the opportunity to stroke a few egos and win over some converts. Lawmakers know they are under attack, and some didn't appreciate the "lecture" they received from Folsom.

Such a strategy can work if the executive branch has the clout to whip dissidents into line. It's unclear whether the Folsom administration can do that, though.

Folsom has allies in the Senate where he served as presiding officer for almost seven years, but he doesn't have that strength in the House of Representatives. In picking Rep. Mike Box, D-Satsuma, to handle his legislation, Folsom tabbed a man, who although capable and dedicated, has made enemies in the past couple of years.

And unlike a regular session, Folsom won't have the luxury of influencing support with guarantees of special treatment in the budgets or help with other prized legislation.

In the carrot and stick game, Folsom doesn't have much of a carrot to tempt hungry lawmakers.

Folsom also seems to have left himself little negotiating room on the controversial ethics and campaign finance reform packages.

There were two paragraphs in his speech that had lawmakers wondering what Folsom was up to.

He said:" I can be flexible. I will accept any amendment that will make these bills tougher.

"I will not accept any changes that will make them weaker. Make no mistake about that. They're tough, but they need to be."

The bills are voluminous, but debate will center on a few crucial sections. Will the Ethics Commission be allowed to investigate anonymous complaints and will political action committees be allowed to transfer money from account to account.

Word games continue on what is meant by an anonymous complaint, whether the definition means unknown or confidential.

But there is no mistaking Folsom's position on PAC contributions. ". . . We must end the laundering of campaign contributions through political action committees . . .," he said.

Opponents can try to embarrass Folsom and pass weak reform bills, and then leave town. In essence, they'd be saying, " Take it or leave it."

Folsom knows the public is holding its judgment of him as a leader. This session could greatly improve or severely weaken his standing.

A man of uncanny political savvy, Folsom understands this.

"If you don't provide leadership," he told the lawmakers, " the people of Alabama will find someone who will."
Lawmakers will be quick to remind him this week that that assessment applies to him, too.

Tom Lindley is Montgomery bureau chief for The News.

---- **Index References** ----


Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ETHICS COMMISSION; HOUSE OF REPRESENTATIVES; LEGISLATURE; PAC; SENATE) (Folsom; Jim Folsom; Mike Box; Opponents; Tom Lindley)

Word Count: 709

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

8/15/93 Birmingham News (AL) 2
1993 WLNR 4599834

Birmingham News (AL)
Copyright ©1993 Birmingham News

August 15, 1993

Section: EDITORIAL

PAC TO PAC

One of the most important ideas under consideration is a move to prohibit big money PACs from transferring money to other PACs. Special-interest groups will fight it tooth and nail, but it has to be done. And those transfers have to be banned completely, not just as of a few days before an election as the legislators' plan calls for. The way the system works now, one person can set up several PACs. Money from some unpopular group goes into one and is tranferred to another and another until the money trail is obscured. If PACs want to support the same candidates or causes, let them donate independently. The public ought to see who gave what to whom. Gov. Folsom's plan contains a strong provision for that. It must pass.

---- **Index References** ----

Language: EN

Other Indexing: (PAC) (Folsom; Special)

Keywords: POLITICAL ACTION COMMITTEES, TRANSFERANCE OF MONEY

Word Count: 145

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

8/22/93 Birmingham News (AL) 11
1993 WLNR 4617549

Birmingham News (AL)
Copyright ©1993 Birmingham News

August 22, 1993

Section: NEWS

## CHANCES BRIGHT FOR TAX BREAKS, DIM FOR ETHICS

David White News staff writer

MONTGOMERY - Ten days ago, Gov. Jim Folsom asked the Legislature to pass his ethics and campaign-reform plans and create new tax breaks for industry.

Both the Senate and House of Representatives in the current special session look ready to pass into law Folsom' s proposed tax breaks for companies. But the going looks rough for Folsom' s ethics and campaign plans. The Legislature this week likely will give Folsom much less than he asked for or refuse to pass anything.

Last week, the Senate, but not the House, passed Folsom' s ethics plan, which would allow confidential complaints: A person in some cases could keep his or her identity secret after telling the ethics commission of possible wrongdoing by a public official.

The plan would not let the commission decide on its own to reveal the identity of anyone who filed a confidential complaint.

A district attorney or grand jury could force the commission to reveal a person' s identity, however, but only during a criminal investigation and only after issuing a subpoena.

The Senate-passed plan also would ban a former public official or employee within two years of leaving office from lobbying for clients before his or her former agency, body or department.

The House plan contains no such ban.

It also would force the ethics commission to reveal the identity of every person who filed an ethics complaint, even if he or she asked to remain anonymous. There could be no exceptions.

Sen. Pat Lindsey, D-Butler, who helped write the House-passed ethics plan, said he' s in a box: A majority of House members won' t accept confidential complaints and a majority of senators say they won' t take anything less.

""" What kind of trap does that put us in? ' Legislature, Page 12A Page 11A Lindsey asked.

House Speaker Jimmy Clark and other top-ranking House members make no secret of their strong distrust of the ethics commission staff. They don' t intend to allow any secret complaints.

So if the House and Senate ever do agree this week on any one ethics plan, the plan likely will not expand the power of the ethics commission through confidential complaints or anything else.

Folsom at least has the Senate on his side in the fight over his ethics plan. But the House and Senate last week united against

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

Folsom over the way candidates for public office raise money.

Folsom wants to limit the amounts of money a candidate can take in an election to $15,000 per political action committee, $5,000 per person and $1,000 per company or professional association.

There now are no limits, except for a $500 cap on any company.

Folsom also wants to ban transfers of money between political action committees, which are formed by companies and lobby groups to raise money and give it to politicians.

PAC to PAC transfers now are legal, and are used by a few unpopular or rich companies and lobby groups to hide the amounts of money they give to some candidates.

Both the House and Senate last week rejected Folsom' s proposed cap on contributions and ban on PAC to PAC transfers.

Key Folsom allies in the House and Senate said they would urge him to refuse the Legislature' s campaign plan as now written, either by rejecting it with a veto or returning it and asking lawmakers to add contribution caps and the PAC transfer ban.

'''' This is it. The line' s drawn in the sand on this one,' ' Sen. Doug Ghee, DJacksonville, told the Senate about the proposed ban on PAC to PAC transfers.
But odds are good the Legislature will pass as soon as Monday its own campaign plan without the cap on contributions or ban on PAC transfers and send it to Folsom.

Even if Folsom vetoed it or proposed changes, the Legislature could pass its campaign plan into law over Folsom' s objections if at least 53 out of 105 House members and at least 18 out of 35 senators voted to override Folsom.

Meanwhile, Folsom at least can probably count on the House and Senate passing a tax-incentives plan the way he wants it.

The plan is aimed at convincing the German auto maker MercedesBenz to build in Tuscaloosa County a factory that could create 1,500 jobs.

Even if Mercedes-Benz builds in another state, the plan would reward other companies for building factories, research centers or warehouses in Alabama.

Under the plan, a company could repay debt from building a new or expanded plant in Alabama by using money it otherwise would have paid in state income taxes on profits from the project.

The company also could keep as much as 5 percent of each new employee' s salary and use that money to repay debt.

Money taken from a worker would be credited toward paying that person' s state income tax. The state would pay refunds to workers if withheld salaries exceeded the income taxes they owed.

Last week, House members worried that Alabama would be giving away too much by passing the tax incentives. But after hours of debate, House members approved the plan Thursday by a vote of 97-5.

Rep. Bobbie McDowell, D-Bessemer, said many paper mills and other big plants in Alabama already pay no property taxes because of past tax incentives designed to lure companies.

'''' That' s why we' re in the fix we' re in now, is these low taxes, because we were doing things to better the business climate,' ' she said. '' ' Does this do even more harm in the long run? Corporations ought to want to be good citizens.' ' Rep. Taylor Harper, D-Grand Bay, replied that companies now pay states off each other, searching for rock-bottom production costs.

Kentucky, Tennessee and Mississippi now offer companies the same no-income-tax deal proposed by Folsom, he said, and Alabama might not get many new factories if it doesn' t knuckle under too.

'''' In competition with other states and the rest of the world, you' ve got to use all the tools,'' Harper said.

The Senate Rules Committee passed the tax-break plan on Friday, and the entire Senate could pass it Monday.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

3/23/94 Birmingham News (AL) 1
1994 WLNR 4822206

Birmingham News (AL)
Copyright ©1994 Birmingham News

March 23, 1994

Section: NEWS

ULTIMATE PAC FUNNEL LOBBYISTS, CANDIDATES HAVE FOUND A FAVORITE ROUTE FOR
CHANNELING MONEY: PACS MANAGED BY FINE GEDDIE.

Joe Nabbefeld News staff writer

Since forming their phalanx of 11 political action committees in 1989, Montgomery lobbyists Joe Fine and Bob Geddie have turned them into one of Alabama' s ultimate political funnels.

They take in hundreds of thousands of dollars a year, often from other PACs; they mix it around, then they pass it out to numerous candidates - or sometimes to other PACs that mix it around again.

It s a difficult track to follow, but a computer-assisted compilation of Fine Geddie & Associates' most recent disclosure reports reveals the following flow of political money for 1993:

Hazardous-waste company Waste Management Inc., along with a company it bought last year called Waste Away Inc. and former Waste Away owner Durward Jackson, put in at least $160,000.

Gov. Jim Folsom received the most, at least $164,500. No other gubernatorial candidate, Democrat or Republican, got any.

Drummond Co., which mines coal, put in at least $83,000.

All three members of the Public Service Commission received money - at least $23,000 for Jan Cook, at least $20,000 for Charles Martin and at least $19,000 for Jim Sullivan. The PSC regulates rates charged by Alabama Power Co., which buys large amounts of coal from Drummond.

The Apartment Council of Alabama, which observers credited with helping defeat education-reform measures in 1992 because they would have raised property taxes, gave at least $23,500.

Real estate investors made large contributions, too: Mayer and Abraham Mitchell of Mobile gave at least $28,000; Jake and Owen Aronov of Montgomery, at least $15,000.

Alabama Supreme Court Associate Justice Mark Kennedy received at least $25,500.

House Speaker Jimmy Clark' s campaign got at least $6,500.

PACs have become the favored legal route for channeling money to candidates, in part because PACs obscure who gave how much to whom and in part because they circumvent some restrictions on how much money companies can give.

"" It s just a way of life,' ' said Bob Geddie, PACs, Page 2D Page 1D co-owner of Fine Geddie with Joe Fine. "" Political candidates are relying on them more and more.' '

Take Waste Management. Alabama law allows corporations to give no more than $500 per candidate per election cycle,

Ex. B, Selected News Articles, 1993-2011   85

Geddie said. But Waste Management has formed a PAC to which individuals from the company can contribute as much as they want. That PAC has no restriction on how much it gives to a candidate or to another PAC, Geddie said.

Glenda Kennedy, a spokeswoman for Waste Management' s public relations affiliate, WMX of Alabama, said the company has no hot political issues or new projects in Alabama. She described the contributions to Fine Geddie as "" ongoing political participation.' '

Fine Geddie & Associates has no legal restriction on how much it gives because it' s a partnership, not a corporation, he said.

Fine Geddie' s PACs last year gave $17,500 to Jobpac, a similar outfit organized by Tom Coker, another Montgomery lobbyist.

Jobpac also took in $22,000 from three Drummond PACs, $15,000 from horse- and dog-track operator Milton McGregor, $10,000 from Clark' s campaign (identified as a refund), $3,000 from Coker and a couple of other contributions.

Jobpac gave $12,000 to PSC member Sullivan last year and $15,000 to another PAC, the Progressive Government Committee in Tuscaloosa, according to its 1993 filing.
Fine Geddie' s 11 PACs took in a total of $497,500 last year, according to forms filed at the end of January at the secretary of state' s office. They gave out $384,229 for state elections, and ended the year with $144,107.

"" I would guess we will get at least that amount and more in 1994, from 200 to 300 different contributors,' ' Geddie said. "" Let me tell you this: We will try to get as much as we can. We will probably contribute to 300 different candidates.' '

He defined the candidates Fine Geddie supports as generally "" pro business,' ' although he said it was only partly a joke that one of the main factors is "" who returns your phone calls . . . You generally support people you know.' '

The list of candidates Fine Geddie gave to in 1993 covers a wide range, from Jefferson County Commissioner Jeff Germany ($1,000) and state Sen. Hank Sanders, D-Selma ($2,000), to the Conservative Coalition PAC ($1,000) and Alabama Development Office director Billy Joe Camp ($1,500), who was then secretary of state.

Among contributions to Fine Geddie PACs were:

$10,000 from the Montgomery investment banking firm Merchant Capital.

$10,000 from Samford & DePaola, the law firm of lobbyist and Auburn University trustee Jimmy Samford.

$10,000 each from the Paducah, Ky., engineering firm of Florence & Hutcheson, Birmingham commercial real estate broker Rime Investments, architects R.O. Jones Jr. and R.O. Jones III of Hardaway, food distributor W.L. Petrey Wholesale, Central Bancpac and Mobile timber company operator Lowell Friedman.

Said Friedman, "" I have a large investment in this state and I figure that if I ever need to bring anything before the Legislature, it' s nice to have Mr. Fine and Mr. Geddie on my side.' ' He said he supports Folsom because of his push for education reform, but doesn' t tell Fine Geddie to whom to contribute.

$8,500 from State Democratic Party Chairman William Blount.

As to Fine Geddie' s PACs giving only to Folsom in this year' s gubernatorial race, Geddie said, "" Well, the election' s not over,' ' so others could get money.

This may demonstrate the complexity, or at least irony, of PACs: Folsom has staked his candidacy on achieving some form of education reform. Yet the Apartment Council helped defeat it in the past. Meanwhile, Folsom has hired Fine Geddie to lobby for education reform.

---- Index References ----

Company: ALABAMA POWER CO; WASTE MANAGEMENT HOLDINGS INC; DRUMMOND CO; WASTE MANAGEMENT INC; CLARK INC; SOUTHERN CO (THE)

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

9/25/94 Birmingham News (AL) 26
1994 WLNR 4807915

Birmingham News (AL)
Copyright ©1994 Birmingham News

September 25, 1994

Section: NEWS

TRANSFER MAZE BLURS WHO GETS PAC CASH

Joe Nabbefeld News staff writer

Political action committees already make it hard enough for citizens to know who paid for candidates to seek office. The added difficulty of unraveling maze-like PAC-to-PAC transfers compounds that.

A review of the most recent round of disclosure statements by the 10 PACs that handed out the most money shows they ve added another layer to the problem: payments to political consultants.

Several of the big PACs reported giving large sums to consultants who, in turn, worked for various candidates. The records don t show which candidates received the benefits of the money, however.

The largest payment - $142,418 _ went from the Alabama Trial Lawyers Association s TRIAL PAC to New York consulting firm Austin Sheinkopf.

The report says nothing more about what the money bought.

A review of numerous candidates disclosure statements show the firm performed campaign work for more than 20 Alabama Democratic candidates. Among them was Sen. Pat Lindsey, D-Butler, who the Trial Lawyers Association heavily backed in his primary runoff victory over businessman J.W. Sales. The Alabama Business Council, TRIAL s nemesis in its high-stakes fight to control the issue of tort reform in the Legislature, heavily funded Sales campaign.

The new disclosure statements cover contributions and expenditures by candidates and political groups from 10 days before the June 28 primary runoff election through Friday, which was 45 days before the Nov. 8 general election.

TRIAL s next largest payment in this disclosure cycle went to a Charleston, W.Va., company - Cunningham, Plante and Associates - which TRIAL identifies as "" researchers. '

Two PACs run by the Alabama Farmers Federation and Alfa Insurance Co. paid a total of $54,117 to Creative Consultants Inc. of Montgomery.

The two ALFA PACs also transfered a total of $29,813 to the Conservative Coalition PAC, which, in turn, mixed that money with other money and distributed it to conservative candidates, blurring precisely who gave to whom.

The Business Council s Progress PAC paid $24,983 to Strategic Message Design of New Jersey to help unidentified candidates.

In a classic PAC funnel with which many Alabamians have already become familiar, the phalanx of 11 PACs run by Montgomery lobbyists Joe Fine and Bob Geddie channeled $290,071 from dozens of contributors, including some PACs, to dozens of candidates and other PACs.

**Ex. B, Selected News Articles, 1993-2011**
81

The funnel obscures which contributors' money went to which candidate. Lieutenant governor candidate Don Siegelman pulled the most out of the funnel, $62,500 - a significant portion of that during the last few days of his primary runoff battle against Sen. Ryan deGraffenried, whom Siegelman beat.

Most conservative business interests backed deGraffenried, and Fine and Geddie identify their PACs as "" pro-business.' ' But the reports reveal Fine and Geddie' s PACs supported Siegelman in the runoff s final days. Since then, other reports show, Siegelman picked up a surprisingly large amount of support from business interests in his campaign against Republican Charlie Graddick.

In a more straightforward path, the fifth-largest PAC in this disclosure cycle, the Alabama Medical Association' s PAC, gave $50,000 to Gov. Jim Folsom' s campaign, and $10,000 each to four other candidates. The Medical Association represents doc tors, so it takes an interest in issues such as capping punitive damage awards in malpractice cases through tort reform.
The eighth-largest PAC in this cycle, the Alabama Democratic Conference, delivered $160,355, almost all of that to its chapters in each county in the state. The chapters use the money to get black voters to the polls and sway them to vote for ADCendorsed candidates.

The amount of money each ADC chapter received largely related to the size of the black population in each county and amount of political activity there. Jefferson County received the most, $20,000, followed by Montgomery County' s $8,500.

---- Index References ----

Company: ALFA CORP; ALFA INSURANCE GROUP

News Subject: (Government (1GO80); World Elections (1WO93); Global Politics (1GL73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ADCENDORSED; ALABAMA BUSINESS COUNCIL; ALABAMA DEMOCRATIC; ALABAMA DEMOCRATIC CONFERENCE; ALABAMA FARMERS FEDERATION; ALABAMA MEDICAL ASSOCIATION; ALABAMA TRIAL LAWYERS ASSOCIATION; ALFA; ALFA INSURANCE CO; BUSINESS COUNCIL; CREATIVE CONSULTANTS INC; MEDICAL ASSOCIATION; PAC; SIEGELMAN; STRATEGIC MESSAGE DESIGN; TRIAL; TRIAL LAWYERS ASSOCIATION) (Austin Sheinkopf; Bob Geddie; Fine; Geddie; J.W. Sales; Jim Folsom; Joe Fine; Pat Lindsey; Republican Charlie Graddick; Ryan; TRANSFER MAZE BLURS)

Keywords: ELECTIONS, CAMPAIGN CONTRIBUTIONS, PACS

Word Count: 783

End of Document © 2011 Thomson Reuters. No claim to original U.S. Government Works.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

9/28/94 Birmingham News (AL) 10
1994 WLNR 4784577

Birmingham News (AL)
Copyright ©1994 Birmingham News

September 28, 1994

Section: EDITORIAL

## CASHING IN WHAT THIS STATE ALLOWS TO GO ON IN CAMPAIGN FINANCE IS A CRIME

Alabama must have the cleanest campaign money in the 50 states. It s not just laundered, it' s scoured. You might be thinking that money laundering is a crime. And you' d be right _ except when it comes to campaign contributions in the State of Lax Laws and Loopholes, otherwise known as Alabama. It s bad enough that political action committees routinely (and legally) conceal the source of contributions by funneling money to other PACs, which then give it to candidates or still other PACs. But the trail of lucre just got shadier. Now PACs are giving money to political consultants. It s impossible to tell exactly who is getting the benefit of the cash. The most staggering example comes from the ever-generous Alabama Trial Lawyers Association. TRIAL PAC handed over $142,400 to the New York consulting firm Austin Sheinkopf since June. What happened then is something of a mystery. The money could have been used for any of the 20 Democratic candidates the firm is working with this election season. There are other examples - Alfa and the Business Council did the same, only with smaller amounts. This is shameful. Alabama voters ought to be able to see who' s bankrolling which candidates. The amount of money poured into campaigns in this state is obscene anyway. Candidates went through $15 million statewide in the primary season, and millions more will be spent before Nov. 8. Mix big money with a dose of deception and you end up with a sordid system. It shouldn' t be this way. And it' s no mystery what needs to happen. PAC-to-PAC transfers and contributions to political consultants shouldn' t be allowed. There ought to be a direct and visible line from giver to politician. Large cash contributions should be outlawed. Elected officials shouldn' t be allowed to use campaign funds for anything but real campaign expenses. And no lawmaker should be allowed to vote on a bill that directly affects his income or livelihood. Beyond that, Alabama needs an Ethics Commission with the tools to do its job. One of those tools is the power to investigate anonymous complaints (as police and sheriff s officers do every day) and the authority to subpoena evidence. This stuff makes some Alabama politicians absolutely apoplectic, but that just proves these are good ideas. Besides, there' s nothing extreme about any of this. At least 32 states already let their ethics agencies investigate anonymous tips. In South Carolina, a lobbyist can' t give a lawmaker so much as a cup of coffee. The clampdown there came because of a sting operation a few years ago that exposed pervasive corruption in South Carolina' s legislature. It doesn' t take an undercover operation, though, to see that what' s going on in Alabama is a crime. If only it were illegal.

---- **Index References** ----

Region: (South Carolina (1SO63); USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA TRIAL LAWYERS ASSOCIATION; BUSINESS COUNCIL; CASHING; ETHICS COMMISSION; FINANCE; PAC) (Austin Sheinkopf; Large)

Keywords: CAMPAIGN FUNDING, CONTRIBUTIONS, PACS

Word Count: 550

10/1/94 Birmingham News (AL) 7
1994 WLNR 4808542

Birmingham News (AL)
Copyright ©1994 Birmingham News

October 1, 1994

Section: NEWS

SPREADING THE WEALTH WITHOUT LEAVING A TRAIL MCGREGOR GETS LESSON ON PACS

Joe Nabbefeld News staff writer

Milton McGregor is applying some lessons of political money-giving in this election season that he learned in 1990, when he handed out almost $700,000 through lobbyist Tom Coker' s JOBPAC, says Milo Dakin, McGregor' s lobbyist.

One of those finer points - don' t run it all through the same political action committee or it will be more traceable - surfaces in the most recent disclosure filings for 11 PACs operated essentially as a single unit by Fine Geddie and Associates.

'"' Most businesses spread their money out so it doesn' t draw fire,' ' Dakin said. "'' If everything isn' t run through one PAC it doesn' t create as much of a trail. The further you spread it, the better you are.' '

The filings show McGregor, who operates horse and dog tracks in Birmingham and Macon County, put $20,000 into Fine Geddie' s PACs during the period, second only to $32,000 from Drummond coal mining PACs.

The filings cover campaign contributions from five to 10 days before the June 28 primary runoff to Sept. 23, 45 days before the general election.

Other givers included Durward Jackson of the Waste Management solid wastes company, $14,500, of which $7,500 came shortly before the June 28 primary runoff election; Colonial Bancorp and Colonial Mort gage Co., a combined $11,000; Protective Life Insurance Co., $10,500; Fine Geddie, $10,500; Central Bancorp, $10,000; Charles Anderson, $9,000; and Thompson Tractor, $6,500. PAC recipients

Those who received money from that pool, and the amounts, include:

Lieutenant governor candidate Don Siegelman, $62,500, of which $22,000 came shortly before his Democratic primary runoff victory over Sen. Ryan deGraffenried.

Incumbent state Public Service Commissioner Jan Cook, whose job includes regulating Drummond and other utilities and to whom Fine Geddie had already provided more than $23,000 earlier this year and last year, $20,500.

Gov. Jim Folsom, to whom Fine Geddie had already provided more than $160,000 in 1993 and earlier this year, $15,600. Folsom, meanwhile, hired Fine Geddie at the start of this year to lobby for his education reform proposal.

Gubernatorial challenger Fob James, $39,500, all of it shortly before his Republican primary runoff victory over Sen. Ann Bedsole. Lobbyist Bob Geddie of Fine Geddie worked for James when James served as governor 1978-1982. Steve White, $12,500, all of it after his Democratic primary runoff loss for the House District 5 seat held by incumbent Rep. Tommy Carter, D-Elkmont.

State Supreme Court candidate Perry Hooper Sr., $8,750.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

State Senate District 6 candidate Roger Bedford, $6,500, of which $4,500 came before his Democratic primary runoff victory over incumbent George Bolling.

Sen. Wendell Mitchell, D-Luverne, $6,000, all before the runoff.

The state Democratic Party, $10,500, and the state Republican McGregor, Page 9A Page 7A Party, $7,500.

PACs collect money from a variety of sources, pool it and pass it out to various candidates.

Some PACs represent a single company s employees, a professional group or one side of an issue, leaving it clear what influence the money represents to the politicians receiving it.

Other PACs obscure the influence by pooling a number of different givers and receivers, and by other methods such as transferring money between PACs before it goes to the politicians.
The Fine Geddie setup, run by Montgomery lobbyists Geddie and Joe Fine, leaves it unclear - to the public, but not to the politician - who gave to whom.

'"' I m sure Milton knows who his money went to,' ' Dakin said.

Fine and Geddie were out of town so they couldn t be reached to comment.

Geddie previously has described their PACs as'"' pro-business.' '

Up to now, McGregor was identified with JOBPAC.

Dakin said his switch to Fine Geddie didn t come because of tax problems Coker ran into last year.

Rather, it was because McGregor and JOBPAC took a publicity beating in 1990 over McGregor s huge contributions through JOBPAC in advance of seeking legislative passage allowing him to run a dog track in Birmingham, Dakin said.

'"' JOBPAC took a pretty good shellacking in 1990,' ' Dakin said. '"' You ve got some candidates who don t want to take money from JOBPAC. The comfort zone probably got a little tight.

'"' If there was a lesson in 1990, it was you can get too much exposure,' ' he said.

Also, that you can give too much money, eventually reaching the point of diminishing returns, Dakin said.

McGregor gave so much money, drawing so much publicity, that some politicians took money yet grew wary of listening to him or voting for him for fear it would look like payback, Dakin said.

'"' Perception is nine-tenths of what happens,' ' he said. '"' The 1990 money made it harder to pass the dog track legislation in 1991 . . . My fashion now is to get involved in a limited number of campaigns in limited fashion.' '

Correction (): See TRACKING THE PACs for additional information on PACs. This story incorrectly stated that the Alabama Public Service Commission regulates the Drummond Co. and other utilities. Drummond is not a utility and is not regulated by the PSC)

---- Index References ----

Company: COLONIAL BANCORP INC CONNECTICUT; CENTRAL BANCORP; DRUMMOND CO; WASTE MANAGEMENT INC; PROTECTIVE LIFE INSURANCE CO

News Subject: (Government (1GO80); World Elections (1WO93); Global Politics (1GL73); Public Affairs (1PU31))

Language: EN

Other Indexing: (ALABAMA PUBLIC SERVICE COMMISSION; CENTRAL BANCORP; COLONIAL BANCORP; DAKIN; DRUMMOND; DRUMMOND CO; JOBPAC; LESSON; MCGREGOR; MILO DAKIN; PAC; PROTECTIVE

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

11/11/94 Mobile Reg. (AL) A14
1994 WLNR 4678663

Mobile Register (AL)
Copyright ©1994 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

November 11, 1994

Section: A

Alabama's civil courts: The system's the problem

THOMASSON

DEMOCRAT SONNY Hornsby was re-elected as chief justice of the Alabama Supreme Court by a razor-thin margin. That he so nearly lost to a challenger who was, shall we say, less than eminently electable, shows what voters are beginning to grasp: that Mr. Hornsby presides over what is quite possibly the most corrupt system of civil justice in the United States.

That kind of talk upsets some lawyers. Three of them express their displeasure in letters printed nearby. They insist that many honest people toil in Alabama's civil court system. We wholeheartedly agree. To understand what it means to say that the system is corrupt, you must consider two sets of facts.

Election dollars. Judicial candidates get most of their contributions from plaintiffs' lawyers. In this week's Supreme Court election, the six candidates for associate justice received $900,000 in campaign contributions. More than $713,000 of it went to the three Democratic candidates who, ironically, won only by narrow margins.

Chief Justice Hornsby has gained national notoriety by personally soliciting campaign contributions from trial lawyers, including some who, according to The Wall Street Journal, had cases pending before his court. As of about six weeks ago, he had collected nearly half a million dollars.

But that's chicken feed. The big money in Alabama judicial politics flows through political action committees. A lawyer or firm contributes to one PAC, which passes the money to other PACs, and so on. This is, to put it bluntly, a laundering operation that makes it virtually impossible to trace contributions back to their sources. Alabama trial lawyers funnel millions of dollars in contributions through such channels.

Judgment dollars. The comparative statistics in this category are staggering. In fiscal 1994 (which just ended), Alabama plaintiffs won punitive damages in excess of $205 million; punitive awards in neighboring Southern states averaged about $25 million. From 1987 to 1993, punitive awards in Alabama were about $25 per capita; in Tennessee, Mississippi and Georgia, they were about $1 per capita. The median punitive award in Alabama is more than three times the national average. (Punitive damages are assessed after plaintiffs are compensated for their losses.)

How are election dollars related to judgment dollars? A common perception is that Alabama's civil appellate courts are, as one lawyer put it, ``bought and paid for.'' It isn't a matter of buying particular cases. Plaintiffs' lawyers spend heavily to elect Democratic candidates who are philosophically disposed toward the plaintiff's interests. Chief Justice Hornsby, for example, was a highly successful plaintiffs' lawyer for 25 years. It isn't hard to see why Forbes magazine rates our state the worst place in the nation to get sued.

In their letters, Broox Holmes and his colleagues insist that the civil court system is not corrupt. But consider this view from Spud Seale, Mr. Holmes' predecessor as president of the Alabama State Bar: ``The whole legal system, our system of justice, is set upon perception, and you avoid the perception of impropriety.'' Albert Brewer, professor of law and former governor,

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

agrees. ``It s the impression that counts,'' he says, and the impression of judicial partiality ``completely subverts the whole process.''

What impression is a disinterested observer likely to get from Alabama s civil courts?

Look at the election dollars plaintiffs lawyers spend to elect judges who are politically friendly. Then look at the judgment dollars: the size of punitive awards and the soaring increases 2,000 percent from 1982 to 1991. Consider the effect of that increase on contingency fees. Look at the towering contrast between Alabama s profile and those of other states in punitive awards.

It is not unreasonable to see an unsavory relation between the cash that plaintiffs lawyers pour into judicial elections and the cash that pours forth from punitive damage awards. It is not far-fetched to suppose that judges are favorably disposed toward attorneys who enrich their election campaigns. And it is not disingenuous to think that many lawyers justifiably regard their campaign contributions as highly profitable investments.

But the slender margins by which Democratic candidates won in the Supreme Court contain a warning for those contributors: Voters are beginning to understand how our courts are being corrupted, and the rules are going to be changed.

There are, undoubtedly, lawyers and judges who have not allowed this system to compromise their integrity. To them we say: You, above all others, should be speaking out, acknowledging the systemic corruption in our civil courts and helping to reform it. You are the best hope for a system that is disgracing Alabama before the entire nation.

Copyright © 1994 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Legal (1LE33); Judicial (1JU36))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA STATE BAR; ALABAMA SUPREME COURT; PAC; PUNITIVE; SOUTHERN; SUPREME COURT; VOTERS) (Alabama; Albert Brewer; Broox Holmes; Democratic; Holmes; Hornsby; Justice Hornsby)

Edition: AM

Word Count: 976

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

1/6/95 Mobile Reg. (AL) A10
1995 WLNR 4918236

Mobile Register (AL)
Copyright ©1995 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

January 6, 1995

Section: A

Taking the slow road toward ethics reform

MCPHAIL

HOW DISAPPOINTING to hear Alabama' s ethics director, E.J. ``Mac'' McArthur, criticize broad ethics and campaign finance reform. He apparently is under the mistaken impression that one weak bill is better than competing weak and strong bills.

Mr. McArthur seems to prefer taking the easy route to fighting for a measure that can clean up corruption in the state. His mediocre standards will only keep Alabama at the bottom of the heap on ethics a sharp contrast to states that, like Georgia, have passed tough legislation. If Alabama reforms ethics and campaign finance only partially, then legislators can pretend they have finished the job.

Clearly, there could not be a better time to introduce tough reforms. The state Legislature has lots of new faces representing a clearly disgruntled populace. These newcomers enjoy a special mandate to clean up government, make it trustworthy and bring it closer to the people. No one should be more willing to tighten the rules.

Granted, the bill drafted by the state Ethics Commission has a few important provisions: For example, it caps gifts by lobbyists and prevents government officials from lobbying their former employers for two years. Still, if s not what it could be.

Mr. McArthur says he is worried that a tougher measure won' t pass in the legislative session. Granted, lobbyists will try to strip out the key provisions in any reform package. But Mr. McArthur overlooks the unique potential offered him by lawmakers who have been elected to clean up government. Who knows what might be possible if he will only aim higher?

Real reform the kind that can restore confidence in state government won' t happen without a few key provisions:

Subpoena power for the commission. The majority of states enjoy the power to subpoena witnesses, which helps them get to the bottom of ethics charges. Too often, the commission turns an investigation over to another agency for further work, only to hear that there aren' t enough facts in the file. Subpoena power would let investigators gather all the facts.

Anonymous complaints. Alabama had the authority to investigate anonymous complaints until the early 1980s, when the Legislature stripped it away. Anonymous complaints had been used, for example, in making a case to oust former state Treasurer Melba Till Allen from office in 1978. Now, without such power, the commission has to ignore complaints from people fearful of giving their names no matter how much evidence of wrongdoing they provide.

Elimination of PAC-to-PAC transfers. It s impossible to trace campaign money that is funneled through Political Action Committees in Alabama.

A study by the American Tort Reform Association, for example, revealed how trial lawyer contributions were juggled

through nine transfers among four PACs in just two days. Some of those PACs gave money to candidates for the Alabama Supreme Court, but no one can trace the dollars to their original sour- ces. Eliminating PAC transfers would make it clear who supports whom.

Such breaches of ethics, though legal, ought to outrage any ethics director, particularly one so new to the job. Rather than accepting a half-hearted effort, he could hold up a model of what ethics ought to be in Alabama. That would be leadership at its best.

Copyright © 1995 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA SUPREME COURT; AMERICAN TORT REFORM ASSOCIATION; DISAPPOINTING; LEGISLATURE; STATE ETHICS COMMISSION; STATE LEGISLATURE) (Alabama; Elimination; Granted; McArthur; Melba Till Allen; Real)

Edition: AM

Word Count: 669

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

5/7/95 Mobile Reg. (AL) C2
1995 WLNR 4899305

Mobile Register (AL)
Copyright ©1995 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

May 7, 1995

Section: C

Spring cleaning time for Alabama politics

THOMSON

IT IS springtime for Alabama' s Legislature. The dreariness of last year' s failures recedes, and hopes flourish for giving people good reasons to trust their leaders.

Central to this renewal are efforts to cast sunshine upon the dark, dank corners of influence-peddling. Proposed reforms would make politics more transparent, allowing voters to see the hands that would manipulate government to serve special interests. Nowhere is this more necessary than in the present practice of raising and spending huge sums on political races.

Secretary of State Jim Bennett hopes to combine the best ideas from two reform packages now moving through the Senate under the sponsorship of Doug Ghee, D-Anniston, and Michael Figures, D-Mobile. The only flaw is that certain proposals fall short. Such timidity may squander a rare chance to raise the standards for political conduct.

The present system reeks from tainted money. Too much of it flows into campaign coffers, and the sources often are hidden from public view. Raising money does not stop with the election for many politicians. They continue to build their war chests through the generosity of donors eager to court their favor. Loose rules allow legislators and other officeholders to lavish these dollars on themselves under the guise of paying expenses.

Three basic reforms would strike at the heart of corrupting practices:

Limit the size of campaign contributions.

It may surprise people to learn that Alabama' s elections amount to open season for the big-money players. There are no limits on how much individual donors and political action committees may give to a candidate. Remember last year how the Alabama Education Association, through its PAC, dumped $1 million into Paul Hubbert' s gubernatorial campaign? Even with that obscene transfer, Mr. Hubbert lost. Indeed, the Democratic nominee, Jim Folsom, ended up outspending everyone.

Current proposals call for capping contributions from PACs at $15,000 per candidate per election. Individuals could give no more than $5,000. But even these limits are too generous. Why not follow the rules for federal elections, which have caps of $5,000 and $1,000? Meanwhile, limit corporations to the same amount that individuals may give.

Prohibit PACs from laundering money.

There' s no other way to describe the present system, which allows PACs to move money around among themselves to hide the origin. It works this way: A special interest will stash a huge sum in a PAC, which will then contribute to another PAC, which may have a deceptive name. In turn, that PAC may transfer the money again before the originally intended donor gets the loot. The game is to foil anyone who tries to follow the money trail and thereby understand what' s going on.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

Lots of interest groups favor this method, so it will be difficult to stop. Sen. Albert Lipscomb, R-Magnolia Springs, is among those who have called for banning outright any PAC-to-PAC transfer. Let s hope this effort prevails over a partial solution that would keep loopholes intact.

Restrict periods for raising campaign dollars.

It s hard to see how anyone can defend continuous campaigning, but that s what we have in Alabama. Newly elected legislators, for example, can accept contributions for their next race four years from now. What a great opportunity for special interests to curry favor. To cure this problem, limit contributions to 12 months before an election and 30 days afterward. The latter provision would allow candidates to pay off campaign debts.

If the Legislature combines these reforms with stricter rules for conduct that the Ethics Commission proposes, voters can have more confidence that their elected leaders will listen to them instead of the moneyed interests. In fact, honest lobbyists would benefit, too, because the current system encourages politicians to hit them up for money and favors year-round.

Such reforms would make politics more open and presumably more responsive. Moreover, they would coincide with the larger role for states that congressional Republicans envision. Alabama will not be ready for this great responsibility until the Legislature throws open the doors to sunshine and puts its political house in order.

Copyright © 1995 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Legislation (1LE97); Government (1GO80); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA EDUCATION ASSOCIATION; DEMOCRATIC; ETHICS COMMISSION; LEGISLATURE; PAC; REPUBLICANS; RESTRICT; SENATE) (Albert Lipscomb; Central; Doug Ghee; Hubbert; Jim Bennett; Jim Folsom; Loose; Michael Figures; Newly; PACs; Paul Hubbert; Prohibit PACs; Remember)

Edition: AM

Word Count: 858

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

3/1/97 Mobile Reg. (AL) A13
1997 WLNR 6241942

Mobile Register (AL)
Copyright ©1997 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

March 1, 1997

Section: A

Legislature should study spending

CCLARKE

My decision to seek the chairmanship of the Alabama Democratic Party was undertaken with the notion that those of us with a burning desire to contribute to the political process would, if we worked hard enough and tried to play by the rules, be successful. After 16 months of serving as the Alabama Democratic Party chairman in a difficult time in the political stream of Alabama, my optimism has been diminished.

The truth is that the financial and special interests of politics outweigh the altruism and political nobleness of those individuals who choose to get involved. That is a fact that knows no political boundary or political party.

I have always believed that without comprehensive campaign finance reform at the state and national levels, the ability of average men and women to affect the political process would never be fully realized. Having been responsible as chairman for raising money for our party to use and to support the campaigns of Democratic nominees in 1996, I witnessed firsthand the failures of the current system. It is because of that experience that I support the intent behind campaign finance reform legislation being considered in the current legislative session.

It is my sincere belief that political action committees with their unlimited ability to donate money to political parties or candidates are not in the best interest of the people of Alabama. More specifically, the ability for these committees to hide the sources of campaign money through a series of PAC-to-PAC transfers is ultimately used to deceive the people of Alabama. I readily admit that no political party is innocent of having used existing legal means to the benefit and advantage of its candidates, but I also believe our Legislature can in this session begin to change this process for the better.

Unlimited PAC donations and PAC-to-PAC transfers, as well as unlimited PAC contributions to political parties not only allow a smaller number (or sometimes single entities) to control the electoral process, but also they help distort the true sources of campaign funds.

The use of political action committee money in and of itself is not a bad thing, and I defend the rights of groups and individuals with similar interests to organize such PACs to positively affect the political process. The problem with the political action concept comes when these groups operate unchecked, with no financial spending limitations and no regulation of their behavior with true and timely disclosure.

Truthfulness in reporting, PAC spending limits, spending limits for House and Senate campaigns, as well as limits on the amounts of corporate and individual contributions, all are issues that deserve fair and deliberate consideration by the Alabama Legislature.

Several bills namely those sponsored by Sens. Ted Little and Doug Ghee and Reps. Randy Hinshaw, Jack Venable, Ken Guin and Frank McDaniel can address many of the problems I ve mentioned.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

It is my hope that we can pass some version of these bills and achieve significant campaign finance reform this session with a bipartisan effort in both houses. My visits throughout the state, meeting people of all political persuasions, indicate that an overwhelming majority of people on both sides of the political spectrum support the reform of Alabama's campaign laws.
JOE TURNHAM

Chairman

Alabama Democratic Party

Birmingham

Photo

Turnham

Copyright © 1997 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Industry: (Science & Engineering (1SC33); Social Science (1SO92); Political Science (1PO69); Science (1SC89))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA DEMOCRATIC PARTY; ALABAMA LEGISLATURE; DEMOCRATIC; PAC; UNLIMITED PAC) (Doug Ghee; Frank McDaniel; Jack Venable; Ken Guin; Legislature; Randy Hinshaw; Ted)

Edition: AM

Word Count: 693

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

7/30/98 Birmingham News (AL) 1
1998 WLNR 7055792

Birmingham News (AL)
Copyright ©1998 Birmingham News

July 30, 1998

Section: NEWS

PASSING MONEY TO OTHER PACS A LEGAL WAY TO HIDE DONATIONS

DAVID WHITE News staff writer

MONTGOMERY - The Alabama Education Association' s political action committee gives money directly to people running for the Legislature, but it also runs money through other PACs to hide its tracks.

AEA passes money through other PACs when candidates want to '' keep a contribution quiet' ' and not let voters know they got money from AEA, said Paul Hubbert, executive secretary of the teachers' lobby.

'' We were viewed historically as a Democratic organization, and in some cases early on, Republicans winced a little at a direct contribution from us,' ' he said.

AEA also channels money through other PACs on occasion because it wants to support someone running against a legislator but wants to keep the help secret, to avoid angering the lawmaker, Hubbert said.

'' There might be an incumbent we don' t necessarily want to alienate, but there may be a challenger we want to give some assistance to without necessarily creating a problem for ourselves public-relations-wise with an incumbent,' ' he said. PACs, Page 3A Page 1A

The practice of transferring money from one PAC to another to obscure its source is not uncommon among the hundreds of PACs formed by associations, companies and lobbyists-for-hire in Alabama. But it is one that troubles some officials who are concerned about openness in elections.

State Sen. Doug Ghee, D-Anniston, has tried but failed since 1993 to pass a law to ban PAC-to-PAC transfers, which are legal.

'' It amounts to money laundering,' ' he said. '' It deprives the voter of a basic right to know where money' s coming from to the various candidates. Unfortunately, it' s ingrained in our process. People camouflage where money' s coming from.' '

Don Gilbert, executive director of the Alabama Trial Lawyers Association, said his lobby' s PACs also disguise contributions to candidates sometimes.

'' It' s no secret trial lawyers have been a controversial organization, because of the tort reform issue,' ' Gilbert said.

'' In some instances, people we may want to support may be in a district where it wouldn' t help them in their election or re-election to receive trial-lawyer funds,' ' Gilbert said. '' A lot of times, that' s requested by the candidates.

'' We' ve long been an advocate of abolishing PAC-to-PAC transfers. That' s the only way you' ll ever know where legislators get their money,' ' Gilbert said.

'' But legislators haven' t seen fit to do so; so we, like everybody else, use the law as it is,' ' he said. '' There are some special

Ex. B, Selected News Articles, 1993-2011
132

interests in the state that don' t want people to know who' s getting their money. And some legislators who don' t want the disclosure.' '

Under current law, a person may give $10,000 to a PAC, and that must be reported to the secretary of state' s office. But the PAC may spread $200,000 among dozens of candidates and other PACs without any accounting for who finally got the $10,000.

'' It s absolutely impossible' ' to track contributions through PACs, said Rudy Davidson of Vestavia Hills, a political consultant who runs five PACs.

His Children' s PAC through late May this year took more than $50,000 from trial lawyers and PACs formed by trial lawyers and AEA, as well as money from lobbyists-for-hire Tom Coker, Joe Fine and Bob Geddie.

In turn, during that time it gave $10,750 to Democratic Lt. Gov. Don Siegelman, who is running for governor; $2,000 apiece to Democratic state Senate candidates Phil Poole and Randy Hinshaw, and $3,000 to Democratic circuit judge candidate Jack Meigs of Brent.
His Children' s PAC during that time also gave $1,500 to three of Davidson' s other PACs, $9,000 to a PAC formed by AEA executives, $8,700 to a PAC run by lobbyist-for-hire John Crawford and $9,300 to a PAC connected to Douglas Johnstone, a Democrat running for the Supreme Court.

There' s no way to tell from state records whether money given to Children' s PAC by AEA or a particular trial lawyer or lobbyist-for-hire was given by the PAC to one of the candidates it supported or passed along to another PAC for a later contribution to someone else.

Davidson said he shifts money from his PACs to other PACs because sometimes they get money meant for a politician he personally doesn' t support.

'' Sometimes people want you to give to a candidate you don' t want to give to. So you just ship it off,' ' he said.

PAC-to-PAC transfers have gotten easier partly because there are more state PACs now than ever before.

PACs have spread like kudzu since AEA raised money from its members and formed Alabama' s first state PAC to support legislative candidates in 1974.

'' We had around $75,000,' ' Hubbert said. '' We had phenomenal success because back then nobody was giving any money.' '

That soon changed as trial lawyers, the Alabama Farmers Federation and other powerful lobbies rushed to form their own PACs to try to match AEA' s success at getting allies elected to the Legislature.

By 1988, there were 188 state PACs in Alabama. Last week, there were 414 PACs formed to contribute in state and local races, an increase of 54 PACs since January 1997, said state elections analyst Janice McDonald.

State PACs showed their political power by spending $19.2 million between January 1997 and mid-June of this year, state records show.

State law puts no limit on how much money a PAC can give to a candidate, and most of the PAC money flowed to people running for governor, lieutenant governor, various judgeships and seats in the Legislature.

But since PACs can shift money among themselves, and each trans fer counts as spending in state records, state and local candidates likely have gotten more than $10 million from PACs the past 18 months, but not the full $19.2 million.

Montgomery lobbyist-for-hire John Crawford, for instance, said transfers among PACs likely account for a third of all spending by his 10 PACs.

The days of a major lobby group spending just $75,000 in an election year are long gone. AEA, the Alabama Trial Lawyers Association, the Business Council of Alabama and the Alabama Farmers Federation already have spent more than $1 million apiece through PACs on this year' s campaigns.

From January 1997 through late June of this year, 34 associations, companies or lobbyists each spent more than $100,000

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

through PACs, a review of state records showed.

PACs are spending more partly because costs for TV ads and other campaign tools have zoomed, and partly because the growing number of interest groups with PACs has given candidates more money to spend, lobbyists said.

Biggest-spending Alabama PACs Here are the associations and lobbyists that ran the biggestspending PACs in Alabama from January 1997 through mid-June of this year, with amounts spent:

Alabama Trial Lawyers Association, $1,491,781

Alabama Education Association, $1,345,938

Alabama Farmers Federation and ALFA Insurance, $1,289,919

Business Council of Alabama, $1,137,305

Lobbyists-for-hire Joe Fine and Bob Geddie, $983,049

State Democratic Executive Committee, $848,229

Alabama Republican Party, $699,205

Lobbyist-for-hire John Crawford, $561,844
Lobbyist-for-hire John Teague, $522,970

Alabama Association of Realtors, $348,875

Source: Disclosure forms filed by political action committees with the Alabama secretary of state' s office.

---- Index References ----

News Subject: (Legal (1LE33); Legislation (1LE97); Government (1GO80); Government Litigation (1GO18))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (AEA; ALABAMA; ALABAMA ASSOCIATION; ALABAMA EDUCATION ASSOCIATION; ALABAMA FARMERS FEDERATION; ALABAMA PACS; ALABAMA REPUBLICAN PARTY; ALABAMA TRIAL LAWYERS ASSOCIATION; DEMOCRAT; DONATIONS; GILBERT; MONTGOMERY; PAC; PACS; PASSING; STATE; STATE DEMOCRATIC EXECUTIVE COMMITTEE; STATE PACS; STATE SEN; SUPREME COURT; VESTAVIA HILLS) (Biggest; Bob Geddie; Davidson; Doug Ghee; Douglas Johnstone; Hubbert; Jack Meigs; Janice McDonald; Joe Fine; John Crawford; John Teague; Montgomery; Paul Hubbert; Phil Poole; Randy Hinshaw; Rudy Davidson; Siegelman; Tom Coker)

Keywords: CAMPAIGN FINANCES, POLITICAL CONTRIBUTIONS

Word Count: 1427

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

8/25/98 Birmingham News (AL) 8
1998 WLNR 7051499

Birmingham News (AL)
Copyright ©1998 Birmingham News

August 25, 1998

Section: EDITORIAL

## WHITHER REFORM? WHILE OTHER STATES TIGHTEN CAMPAIGN LAWS, ALABAMA LAWMAKERS IGNORE PROPOSALS

The Alabama legislature adjourned in April without taking action on campaign finance reform proposals supported by Common Cause/Alabama.

So reads part of a new state-by-state report on campaign funding reform by Common Cause, a nonpartisan, Washington, D.C.,-based group pushing for tougher campaign finance laws.

Lest there be any confusion, the Alabama Legislature adjourned in April without taking action on campaign finance reform proposals of any kind, much less those supported by Common Cause/Alabama.

That shouldn' t surprise many, given Alabama' s standing among states as having some of the weakest laws on the books any where for how money is allowed to invade the political process and lawmaking. Nor is that likely to change.

That' s what' s so disturbing in a state where special interests, are, indeed, very special when it comes to the access and clout they have with lawmakers.

According to Common Cause, states all over the country are moving to strengthen their campaign finance laws.

In Arizona and Massachusetts, voters in November will vote on ballot initiatives to strengthen contribution limits and disclosure requirements; in April Connecticut voters banned political parties from transferring " soft ' money into that state; Florida in November will vote on a constitutional amendment that would require public financing and spending limits for statewide office; Illinois lawmakers approved a campaign finance and ethics reform bill that bars candidates from using campaign funds for their personal benefit and improves disclosure of campaign funding.

Yet in Alabama, campaign finance measures that would prohibit the most egregious behavior never even made it out of committee. (And in this, an election year, candidates aren' t even talking about the issue.)

Consider that it' s legal in Alabama for political action committees to launder campaign money through PAC-to-PAC " transfers ' so no one can figure the source of a donation; or that a PAC or individual can give an unlimited amount to a candidate.

It' s so bad in Alabama that no one talks of the need to ban " soft ' money that corporations, labor unions and wealthy individuals give to political parties to get around legal contribution limits. That' s because with no limits (except on corporations) there' s not much need to give soft money, although some groups do.

Clearly, this isn' t good for the democratic process. The chances of getting a phone call from a lawmaker returned or having legislation sponsored shouldn' t be related to how much money a person or group gave to that lawmaker' s campaign.

Yet that' s often the result of the system our lax laws have created.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

If s not enough for poll after poll of voters to say they want campaign finance reform. Until they raise their voices against those who defend the status quo our state will be run by the golden rule: He who has the gold, makes the rules.

---- **Index References** ----

News Subject: (Legislation (1LE97); Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA LEGISLATURE; ILLINOIS; PAC; REFORM) (STATES TIGHTEN CAMPAIGN LAWS)

Keywords: CAMPAIGN FINANCE REFORM

Word Count: 576

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

9/23/98 Birmingham News (AL) 8
1998 WLNR 7058240

Birmingham News (AL)
Copyright ©1998 Birmingham News

September 23, 1998

Section: EDITORIAL

### BY THE NUMBERS CAMPAIGN FINANCIAL DISCLOSURES UNDERSCORE NEED FOR REFORM

The numbers are in, and for some candidates for statewide offices, they look mighty good.

Lt. Gov. Don Siegelman has raised more than $5 million in his bid for governor, outraising Gov. Fob James nearly two-to-one. In the lieutenant governor's race, Republican state Sen. Steve Windom has raised nearly $1 million more since June than opponent Democratic state Sen. Dwayne Freeman has raised all year.

Even in the race for attorney general, between incumbent Republican Bill Pryor and Democratic challenger Terry Butts, the candidates have raised nearly $2 million since January.

Those numbers, however, are not such good news for Alabama voters.

They indicate just how much it costs for a candidate to win a major statewide race in Alabama. And they underscore just how much Alabama needs to enact major campaign finance reform.

Don't think for a minute that an individual will give a candidate for governor $100,000 or more and not expect something in return. Both Siegelman and James have had such individual, big-money contributors.

Don't think for a minute that a political action committee will put up hundreds of thousands of dollars and not expect some sort of payback down the road.

Amazingly, under Alabama law, those huge contributions are fine. Only corporations are limited in their election giving, with $500 per election cycle to a candidate, but even that limit is a joke. A corporation can give $500 per election cycle to as many PACs as it has money to give and PACs as there are to take. Those PACs, in turn, can funnel all that money to a single candidate. So much for the $500 ° limit ' on corporations.

Add to that the fact that one PAC can transfer money to another PAC, over and over again, as many times as there is enough energy to make the transfers, and there's no way the true source of much of the money given to candidates in Alabama can be traced.

That's plain wrong. Yet, few candidates are out their on the campaign stump talking about changing the corrupt system.

To his credit, Secretary of State Jim Bennett says he will push the Legislature next year for across-the-board limits on contributions, much like the Federal Election Commission has in federal campaigns.

That's fine. But limiting the amount an individual, corporation or PAC can give mustn't be the end. That'll just encourage the creation of a lot of new PACs, to get around the limits like corporations can do now.

Already this year PACs have given $5.4 million to their favorite candidates and causes, and according to a report by News staff writer Robin DeMonia, ° across the board . . . the trail of campaign money was often blurred as contributions passed

from one PAC through others before reaching a candidate.''

PAC-to-PAC transfers must be eliminated, and strict limits on contributions must be set and enforced if there is going to be true campaign finance reform in Alabama.

Otherwise, why don' t we just auction our candidates off to the highest bidder?

---- **Index References** ----

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (FEDERAL ELECTION COMMISSION; PAC; PACS; SIEGELMAN) (Add; Amazingly; Bill Pryor; Dwayne Freeman; Fob James; James; Jim Bennett; PACs; Republican; Robin DeMonia; Steve Windom; Terry Butts)

Keywords: CAMPAIGN FINANCES, DISCLOSURES, ELECTIONS

Word Count: 590

**End of Document**                          © 2011 Thomson Reuters. No claim to original U.S. Government Works.

11/3/98 Birmingham News (AL) 6
1998 WLNR 7049471

Birmingham News (AL)
Copyright ©1998 Birmingham News

November 3, 1998

Section: EDITORIAL

PAC ATTACK NO WAY TO TELL WHERE ALL OF CANDIDATES' MONEY COMES FROM IN ALABAMA

Gov. Fob James' campaign has been running an ad accusing challenger Don Siegelman of accepting money from trial lawyers.

The TV ad features a diagram showing prominent legal firms funneling money to the Alabama Democratic Party, which, in turn, gives it to Siegelman.

While it s no secret Siegelman has accepted hundreds of thousands of dollars from trial lawyers, he could legitimately deny the money the party gave him came from trial lawyers. PACs, by their very nature, act as a pass-through for money, blurring its original source.

Even worse, the state s campaign laws actually encourage special interests to hide where candidates' money is coming from.

Here s how it works. PACs raise money from individuals and interest groups to give to candidates. The money gets mixed into one big pot, then is ladled out to candidates. Because a PAC may get money from dozens of contributors, a candidate can claim the money he got came from someone other than a controversial giver.

Even more insidious, though, is the Alabama law that allows unlimited PAC-to-PAC transfers. Once a PAC gets contributions it can ship them to another PAC, which can give to another PAC, making it absolutely impossible to trace a candidate s original contributor.

It allows trial lawyer money, for example, to end up in a conservative, pro-business candidate s coffers, and no one will be the wiser or able to point any fingers.

In Alabama, there s a whole lot of this sort of money-laundering going on. According to a computerized tally by the secretary of state s office, as much as a third of all PAC spending (and possibly more) is money the PACs have transferred among themselves before distributing it to candidates.

We re not talking about chump change. Since January 1997 PACS have spent more than $41 million; in the past five weeks alone they ve spent $16.7 million on candidates - more than PACs spent during the entire 1989-90 election cycle.

The state s lax campaign laws, especially regarding PACS, have created a two-tiered election and governance system ruled by special interests. Those being ruled, of course, are ordinary citizens whose voices rarely get heard.

Instead, special interests who give bucketfuls of money wield an inordinate amount of influence, not only in the way a candidate votes on an is sue, but in shaping legislation which affects that issue.

Their money also foots the lion s share of the bills for the nasty television ads that have inundated the screen these past several weeks and numbed many a potential voter. Maybe that s why Secretary of State Jim Bennett is predicting voter turnout of 45 to 48 percent, less than normal for a gubernatorial election.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

As long as candidates can get away with not having to talk about campaign finance reform, the downward spiral will continue. Voters should demand better.

---- **Index References** ----

News Subject: (Business Management (1BU42); Government (1GO80); Sales & Marketing (1MA51); Public Affairs (1PU31))

Industry: (Advertising (1AD82); Advertising & Public Relations (1AD83); Advertising Campaigns (1AD39))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA DEMOCRATIC PARTY; CANDIDATES; PACS; TV) (Fob James; Gov; Jim Bennett; PAC; PAC ATTACK; PACs)

Keywords: ELECTIONS, CAMPAIGN FINANCES

Word Count: 564

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

4/13/99 Mobile Reg. (AL) A8
1999 WLNR 7286344

Mobile Register (AL)
Copyright ©1999 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

April 13, 1999

Section: A

PAC-to-PAC campaign funds camouflage donors

hillyer

PAC-to-PAC campaign funds camouflage donors

NEW REVELATIONS about the campaign funding practices of former state Sen. John Amari, R-Birmingham, should end any doubt that Alabama needs a law to limit the ability of political action committees to transfer campaign contributions among themselves.

Secretary of State Jim Bennett has been pushing hard to eliminate PAC-to-PAC transfers, and he is right on target. The problem with them is that they disguise the original source of the campaign funds, so that the general public has no way of telling which candidates are beholden to which special interests. These monetary transfers among PACs are a highly objectionable form of subterfuge.

In the most recent campaign for the Republican nomination for lieutenant governor, eventual winner Steve Windom charged that Sen. Amari was being funded by plaintiffs' lawyers - not a normal Republican constituency. Mr. Windom claimed that Sen. Amari would thus be an impediment to necessary ``tort reforms'' to end abusive lawsuit practices. Sen. Amari denied that trial lawyers were the source of his funding - and, because campaign disclosure laws have so many loopholes, voters had no way of determining which story was correct.

On the day before the primary, too late for the revelation to do voters much good, Sen. Amari amended his campaign report to disclose that more than half a million dollars of his campaign contributions were actually in the form of loans. Now comes the news, reported by The Huntsville Times, that the loans have since been repaid through contributions from two dozen PACs created by Birmingham lawyer T.N. Dickinson. Those two dozen PACs in turn were funded entirely by two other PACs created by the executive director of the Alabama Trial Lawyers Association and funded primarily by trial lawyers.

The PACs were listed under neutral names that did not hint at their trial-lawyer connections. They donated the money to Mr. Amari's campaign on the same day that they themselves received the donations from the two PACs created directly by the trial lawyers' official.

What all this is, is legal money laundering. And it shows that Mr. Windom's suspicions about Mr. Amari's alliances were almost certainly correct.

The issue here is broader than that one particular Republican race, however. The Windom-Amari case is just the latest in a series of examples of how a dizzying practice of PAC-to-PAC transfers - sometimes even among PACs representing interests that are normally adversarial - serves to hide information about a candidate's alliances that otherwise would be of great import to voters.

That's why Secretary Bennett's legislation to eliminate such transfers should be passed: because sneaky tactics like those -

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

though not illegal - help accelerate an already rampant cynicism about democracy itself, among voters who feel they have no way of judging the accuracy of their information about candidates on the ballot.

Copyright © 1999 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Economics & Trade (1EC26))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA TRIAL LAWYERS ASSOCIATION; PAC; PACS) (Amari; Bennett; Jim Bennett; John Amari; Steve Windom; T.N. Dickinson; Windom)

Keywords: EDITORIAL; EDITORIAL PAGE

Edition: 02

Word Count: 605

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

2/29/00 Birmingham News (AL) 6
2000 WLNR 8971984

Birmingham News (AL)
Copyright ©2000 Birmingham News

February 29, 2000

Section: EDITORIAL

## MONEY TRAIL LIMITING PAC TRANSFERS WILL MAKE IT EASIER TO FOLLOW

The best part of Alabama' s Fair Campaign Practices Act is its requirement that fund-raising and spending on political campaigns be reported to the public at certain intervals.

That way, voters supposedly will know who' s financing a particular campaign - and who a particular candidate will be beholden to once the election is over.

Except in Alabama, disclosure is a hollow promise. There are so many legal ways to hide where campaign contributions come from, there' s little reason for anybody to even try to break the law.

The source of a contribution is vital information, though, because who gives money to a candidate often tells a lot about where that candidate stands on certain issues.

A candidate getting a lot of money from, say, dog track owners, is likely to support video gambling at greyhound racing tracks. Somebody getting big bucks from the Alabama Education Association likely will back teacher pay raises. Candidates who take in huge contributions from business interests likely are going to support tort reform; if they' re backed by trial lawyers, they' re against tort reform.

The clear intent of the disclosure law is that citizens will have that information in hand before going to the polls to vote.

But flaws in state law, especially one allowing political action committees to transfer money back and forth, make finding the original source of many campaign contributions impossible.

State Rep. Mike Rogers, R-Anniston, is sponsoring a bill that ll tighten up that loophole a bit. His bill overwhelmingly passed the House last week and is up in the Senate now. It isn' t perfect, but it' s more reasonable than the sham we' re operating under now.

The bill would outlaw transfers from one PAC to another unless the groups are members of the same association or have similar interests. For example, under Rogers' bill, a local business organization PAC could give money to a parent business organization' s PAC, as long as it was a member of the parent organization.

Still, an outright ban on PAC-toPAC transfers would have been better. Leaving the door open even a little bit surely will encourage continued hiding of campaign money.

For example, what' s to stop somebody from setting up a " similar' ' interest PAC just so it could transfer money to another PAC with a " similar' ' interest And there' s still no limit on the number of transfers a PAC can make to a " similar' ' PAC, so while it might be obvious the money is coming from, say, a member of the local retail association, exactly who gave the money still could be difficult to trace.

Rogers' bill will outlaw transfers of money between organizations like the Alabama Education Association, the Alabama

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

Farmers Federation, the Trial Lawyers Association and other groups that are unrelated. Likewise, independent PACs, like those set up by independent contract lobbyists, couldn' t transfer money from PAC to PAC to PAC.

Shutting down some of the PAC transfers is a worthwhile goal. The Senate certainly should endorse the plan.

But Rogers would get more enthusiastic support if he' d push for an absolute ban on campaign money laundering altogether. That' ll be done only by ending all PAC-to-PAC transfers.

---- Index References ----

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing:   (ALABAMA; ALABAMA EDUCATION ASSOCIATION; ALABAMA FARMERS FEDERATION; FAIR CAMPAIGN PRACTICES; PAC; SENATE; STATE REP; TRIAL LAWYERS ASSOCIATION) (Leaving; Likewise; Mike Rogers; PACs; Rogers; Shutting)

Keywords: CAMPAIGN FINANCES REFORM

Word Count: 634

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

5/12/00 Birmingham News (AL) 16
2000 WLNR 8952012

Birmingham News (AL)
Copyright ©2000 Birmingham News

May 12, 2000

Section: EDITORIAL

CAMPAIGN CASH IN ALABAMA, THERE'S NO TELLING WHERE IT COMES FROM

In Alabama, the people and groups who finance political campaigns easily can be kept secret. That' s because state law allows political action committees to transfer campaign money among themselves, over and over again, until the trail is lost.

After a few of these transfers, there' s no way to track the original source of a contribution. A strong disclosure law, which Alabama has, does little good if what' s disclosed can' t be traced to its original source.

But the state Senate thinks that' s just fine.

A bill that would have limited PACto-PAC transfers never even got out of a committee in the Senate. The committee' s chairman, Sen. Jeff Enfinger, D-Huntsville, said he didn' t get a single request from a senator to bring the bill up for a vote.

That should be no surprise.

This is, remember, the same Senate that can' t do without a ton of secret pork in the budget. Senators like to give extra tax dollars to state agencies to hold for them until they tell where to spend it, usually on some project in the senator' s district.

It' s the same Senate where a committee recently approved a tax cut for dog tracks without even giving proper notice of its meeting or holding a public hearing.

Sure, it' s dirty business, but so what Do the voters care

Our esteemed senators certainly think they don' t.

Stopping PAC-to-PAC transfers is a must to provide any real accountability in campaigns in Alabama.

A Birmingham News analysis during the 1998 election cycle showed that PACs pumped 11.2 million into lawmakers' campaign funds, by far the largest source of money, dwarfing the amounts given by corporations and individuals. About a third of PACs are involved in transferring money, meaning millions of untraceable dollars can be given to campaigns. It' s not even unusual for PACs with unrelated interests to swap money before giving it to a candidate to hide the original contributor.

Shame on Enfinger for not bringing the bill up in his committee. Just because his colleagues don' t ask for a vote on a bill doesn' t mean it isn' t the right thing to do.

Enfinger had a lot of time to think about it, too. The bill arrived at his committee way back on Feb. 29 after passing the House with a hefty 78-6 vote. If that doesn' t indicate the bill had some backing, what does But Enfinger thinks he can' t let a vote come up in his committee unless another senator asks him to

Well, of course he can.

The truth is that Enfinger and the Senate want things to remain just as they are.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

Incumbents know the corrupt campaign finance system in placeworks to their advantage during an election. They'll often go around their districts talking about the need for campaign finance reform, moaning about the terrible system of PAC-toPAC transfers, whining about how much it costs to stand for election, then do absolutely nothing for four years to change it.

Senate leadership is so weak, there won't be much movement until voters decide to make a change.

At election time, ask your state senator why he supports unlimited PAC-to-PAC transfers. When he says he doesn't, ask him why he didn't vote for change when he had a chance.

---- Index References ----

News Subject: (Government (1GO80))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (PAC; SENATE) (CAMPAIGN CASH; Enfinger; Incumbents; Jeff Enfinger; Shame; Stopping)

Keywords: CAMPAIGN CONTRIBUTIONS, CAMPAIGN FINANCES DISCLOSURE, PACS

Word Count: 619

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

7/17/01 Mobile Reg. (AL) A6
2001 WLNR 11134231

Mobile Register (AL)
Copyright ©2001 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

July 17, 2001

Section: A

Don't let election reform just fade into oblivion

Don' t let election reform just fade into oblivion WHAT IS it about Alabama that makes this state so cavalier about ensuring fair elections?

If Gov. Don Siegelman wants to overcome a reputation for politics-as-usual that has been developing with every new report of cronyism in state contracting, he could easily grab the mantle of a reformer by making campaign and election safeguards a priority.

Instead, he let slide into virtual oblivion a task force he himself created to study Alabama' s election systems, procedures and equipment. And in three legislative seasons as governor (plus four years as lieutenant governor in which he virtually controlled the state Senate), Mr. Siegelman hasn' t noticeably lifted a finger to push even the simplest of reforms in campaign-finance practices.

Nor have legislative leaders shown much gumption on these issues, either. Year in and year out, Secretary of State Jim Bennett sponsors a package of thoughtful election-related reforms - and every year, legislative leaders find some excuse to let them die.

Long ago, Alabama should have required daily updates of campaign donations all the way up until Election Day. Instead, candidates wait to accept the donations until the campaign' s last few days - after the final reporting deadline - so that voters won' t know until after the election which money-bag-men the candidates might be beholden to.

Long ago, Alabama should have banned what' s known as " PAC-to-PAC transfers." That' s the practice of laundering campaign donations through several different political action committees before the money reaches the candidate, so that the public will have a hard time tracing the original source of the cash.

Long ago, Alabama should have required some form of certifiable identification at polling places. Frankly, a photo ID should not be too onerous for most people - but the Legislature has for two years now failed to pass a much weaker bill that would allow any one of up to 17 different forms of identification to suffice.

No wonder that a big Alabama election rarely passes without some report of vote fraud.

And now there' s the governor' s forgotten task force. In the midst of the Florida recount controversy last November, Mr. Siegelman appointed a bipartisan group to study and recommend reforms. One obvious option would be for the state to provide all counties the money to make the switch to electronic voting machines, like those in use in Mobile County, so as to help avoid any vote-counting discrepancies that became so famous in Florida.

The task force was supposed to report to the governor by March 15. It did meet, and broke down into subcommittees. One subcommittee even drafted proposed legislation - on April 25, which was late, but at least it was action of a sort - to set up a procedure for the state to count ballots that can' t be read by an electronic scanner.

But the proposal sits on a shelf, never considered by the full task force, much less the Legislature itself.

This is pitiful. Without fair elections, representative democracy is a sham. Issues this important should not be ignored. And if they are being ignored, it is the governor's responsibility to put them front and center.

So, Gov. Siegelman: How about it? Will you revitalize the task force - or, by not doing so, admit that it's just not important to you to ensure that votes are fairly cast and counted, and that inordinate financial influences are exposed to the light of day?
Copyright © 2001 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Legal (1LE33); Judicial (1JU36); Government (1GO80); World Elections (1WO93); Global Politics (1GL73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); Florida (1FL79); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; LEGISLATURE; SIEGELMAN) (Frankly; Gov; Jim Bennett; Siegelman)

Keywords: EDITORIALS

Edition: 01

Word Count: 707

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

4/5/02 Birmingham News (AL) 10
2002 WLNR 13160851

Birmingham News (AL)
Copyright ©2002 Birmingham News

April 5, 2002

Volume 115
Section: Editorial
Section: 020

## DIRTY LAUNDRY: PAC-TO-PAC BAN WOULD BE START TOWARD CLEANING UP

There are no rings around the dollars awash in Montgomery. That s because there s some serious money laundering going on, which whisks away any chance that voters can figure out who s beholden to whom.

It s just one of myriad problems surrounding the way we elect our officials and allow money to influence the decisions they make in office.

Alabama law allows this legal washing through a practice known as PAC-to-PAC transfers. The transfers allow political action committees to shuffle money between themselves, hiding the source of campaign contributions and making it easier for contributors to get around laws that limit how much they can give.

Wednesday, the House Elections Committee voted 9-1 to ban PAC-toPAC transfers. Unfortunately, there s no reason to get excited. The chances of the bill, sponsored by Rep. Jeff McLaughlin, D-Guntersville, making it through the Legislature into law this year are somewhere between slim and none. And the smart money s on none.

That s because there are just four days remaining in the current legislative session. McLaughlin said he knows there isn t enough time to pass the bill. "But there is tremendous grass-roots support out there for this kind of reform. I plan to come back with this next year," he said.

McLauglin acknowledges that getting rid of PAC-to-PAC transfers won t clean up all the dirt in the state s campaign finance system. But it s a good place to start.

There s much, much more that can be done to rein in a system awash in cash.

Alabama needs reasonable limits on money PACs can give candidates to curtail the perception (correct, unfortunately) that special interests buy candidates. Right now, there is no limit. PACs have given as much as $1 million to a single candidate in a gubernatorial election. Federal election law limits PAC giving to $5,000 per candidate per election cycle. Certainly, Alabama politicians could live within those sorts of limits.

Alabama has no voter identification law. Is it any surprise the state has a long, ugly history of voter fraud? Yet the Legislature has failed for the past several years to pass a voter ID law that would require voters to show identification which doesn t even include a picture.

The state ethics law contains a loophole large enough to drive a lobbyist through. Legally, a lobbyist can wine and dine a lawmaker and spend as much as $250 a day doing it - and never have to report the spending to anyone. That s insane. If lawmakers aren t for sale, why are lobbyists trying so hard to buy them?

McLaughlin, who won special election to the House last year and made campaign reform a major issue in his race (he refused

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

to take contributions), is a perfect point man for this sort of legislation. Let's hope he's successful next year in his efforts to hang money laundering out to dry.

---- **Index References** ----

News Subject: (Government (1GO80); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (HOUSE ELECTIONS COMMITTEE; LEGISLATURE; PAC) (Alabama; DIRTY LAUNDRY; Jeff McLaughlin; McLaughlin; McLauglin; PACs)

Keywords: CAMPAIGN FINANCE REFORM

Word Count: 560

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

8/13/02 Birmingham News (AL) 8
2002 WLNR 13155279

Birmingham News (AL)
Copyright ©2002 Birmingham News

August 13, 2002

Volume 115
Section: Editorial
Section: 131

## CLEAN MONEY: TIME TO ELIMINATE MONEY-LAUNDERING PAC TRANSFERS

Republican gubernatorial candidate Bob Riley makes a big pitch about restoring ethics and honesty in state government. Here s a good place to start: a ban on PAC-to-PAC transfers that are used to disguise the true source of campaign contributions.

Unfortunately, Riley already has been the benefactor of such laundered contributions. Colonial Bank chief Bobby Lowder and two other members of Auburn University s board of trustees have collectively steered more than $400,000 to political action committees that, in turn, gave - what are the odds? - more than $400,000 to Riley s gubernatorial campaign.

In their defense, Riley is hardly the only candidate to get campaign money this way, and the Auburn trustees are far from alone in filtering their campaign cash through PACs.

However common, this is subterfuge that should be outlawed. If Lowder and his bank enterprises want to give Riley s campaign $254,450, they should be required to give it directly, not launder it through a third party s PAC. But big-money interests - such as the Business Council of Alabama - have fought efforts to ban PAC-to PAC transfers, and the Legislature has refused to close this loophole.

This undermines the disclosure requirements that are the foundation of honest campaigning. Voters need and deserve to know which interests are bankrolling political campaigns and to whom candidates are beholden. PAC-to-PAC transfers allow the true source of campaign money to remain hidden.

Granted, in Lowder s case, the trail was pretty easy to follow. But in many cases, the money is laundered so often and well that the source of the donation is impossible to figure out - to the public, though, not the candidate.

Voters should hear alarm bells going off when candidates (including Riley) claim they don t know the true source of contributions laundered through PACs. Rest assured, no one who funnels $250,000 to a campaign wishes to remain anonymous - not to the candidate. Big political donors are almost always in the business of advancing a cause or protecting their interests. They want candidates to know who s buttering the proverbial bread.

Why not let voters know, too?

**---- Index References ----**

Language: EN

9/29/02 Birmingham News (AL) 2
2002 WLNR 13150129

Birmingham News (AL)
Copyright ©2002 Birmingham News

September 29, 2002

Volume 115
Section: Editorial
Section: 171

## ATTACKING PACS: FOR SAKE OF GOOD GOVERNMENT, CAMPAIGN LAWS MUST CHANGE

There' s the Good Government PAC. The Common Sense PAC. And Fair PAC.

If only the campaign laws that govern these and hundreds of other political action committees in Alabama had anything to do with good government, common sense or fairness.

Often, PACs are nothing more than a way for special-interest groups to funnel large sums of money to candidates, sometimes laundering the donation so no one will know who gave it. There has been plenty of that going on lately, judging from the 45-day reports due Monday at the secretary of state' s office. Gubernatorial candidates Don Siegelman and Bob Riley have raised millions of dollars from PACs, part of a massive, record amount of $17 million - and the fund-raising isn' t over.

The reports show just how generous PACs have become. Eleven associations, political groups or lobbyists through their PACs spent more than $300,000 each on political candidates during the reporting period, including the Republican National State Elections Committee (more than $1.8 million), the Business Council of Alabama (more than $1 million) and the Alabama Education Association (more than $1 million.)

What' s the problem? There are many.

Unlike federal and some states' elections, Alabama has no limit to how much money a PAC can give to a candidate. At least one state PAC has given more than $1 million to a candidate for governor. That' s buying an extraordinary amount of influence with a candidate, making it hard for average Alabamians' concerns to be heard.

Alabama allows PAC-to-PAC transfers, which are nothing more than a legal way to launder money. It lets a donor give money to a PAC, which washes it through another PAC, and then gives it to a candidate, hiding the true source of a donation. All it takes is one transfer to wash away any trace of who donated the money to the candidate.

Saddam Hussein could funnel money through a PAC to another PAC and to a candidate in Alabama and no one could ever prove he had done so.

Alabama lets lobbyists set up PACs, which gives them inordinate power in Montgomery. They often create a network of PACs to raise money for candidates and launder money for other PACs.

PAC names and purposes aren' t well-identified. What, for example, does the Good Government PAC (formed by a lobbyist for the Alabama Forestry Association) really want to do? Its version of " good government" may not be so good.

Of course, expecting the Legislature to fix this mess is about as likely as a candidate actually accepting money from Saddam. It won' t happen, because lawmakers like things just the way they are since they benefit the most from the system.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

The only hope is for a public furor over too-influential PACs and lax campaign finance laws. Otherwise, Alabama will never have fair, com mon-sense, good government.

---- **Index References** ----

News Subject: (Government (1GO80); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA EDUCATION ASSOCIATION; ALABAMA FORESTRY ASSOCIATION; GOOD GOVERNMENT PAC; PAC; REPUBLICAN NATIONAL STATE ELECTIONS COMMITTEE) (ATTACKING; Bob Riley; Eleven; Fair; Gubernatorial; PACs; Saddam; Saddam Hussein)

Keywords: CAMPAIGN FINANCE REFORM

Word Count: 555

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

4/10/03 Montgomery Advert. (Ala.) A8
2003 WLNR 18129549

Montgomery Advertiser (AL)
Copyright ©2003 Gannett

April 10, 2003

Section: A

EMPOWERING VOTERS

April 10, 2003

PAC-to-PAC ban key election reform

Money has been described as the mother's milk of politics, and surely no one could discount its influence. Given that, voters ought to be able to find out who is giving money to political candidates.

But that's not so easy in Alabama; in fact, it can be impossible. Under Alabama law, there is no prohibition against political action committees contributing to other political action committees.

That allows what amounts to money-laundering, to essentially the same sort of hiding of the fiscal trail that criminal enterprises employ.

Under the current law, a contribution may be made to a PAC, which can then contribute to another PAC, which can then contribute to another PAC, and so on. By the time some PAC writes a check to a candidate, the real source of the money is hard to trace.

Under this system, an individual or interest group could arrange for a contribution to end up with a candidate who wants the money, but doesn't want to be identified publicly with the contributor. That's dishonest, and the voters of Alabama deserve better.

Legislation has been introduced to ban PAC-to-PAC transfers, but the bill is not moving and doesn't seem likely to move. The key language in House Bill 130, by Rep. Mike Hubbard, R-Auburn, reads: "It shall be unlawful for any political action committee to make a contribution to any other political action committee, other than a principal campaign committee."

That is eminently sensible. If Candidate A is getting campaign money from a particular interest group or individual, voters ought to be able to see that, openly and clearly.

As long as PAC-to-PAC transfers are permitted to obscure the trail of the money, that can't happen.

ONLINE ONLY

To read the entire text of House Bill 130, log on to the following site and click on Opinion:

www.montgomeryadvertiser.com

---- Index References ----

Company: ONLINE; IF; PAC

9/23/03 Birmingham News (AL) 8
2003 WLNR 15953614

Birmingham News (AL)
Copyright ©2003 Birmingham News

September 23, 2003

Volume 116
Section: Editorial
Section: 166

## NO DISCLOSURE: CANDIDATES FOR PUBLIC OFFICE CAN HIDE CONTRIBUTORS

When it comes right down to it, a candidate for public office in Alabama who doesn't want voters to know who is funding his campaign before an election can keep that information a secret. And it's all legal.

Sure, Alabama laws require candidates to report who gives them money, but there are so many loopholes that the laws are practically meaningless.

The shortfalls of Alabama's campaign finance laws didn't escape the "Grading State Disclosure" study, put together by the California Voter Foundation, the Center for Governmental Studies and the UCLA School of Law and underwritten by the Pew Charitable Trusts. Like 17 other states, Alabama got an "F," and it was a low "F." Only three other states - North Dakota, South Carolina and Wyoming - ranked lower than Alabama, which failed in all four rating categories: campaign disclosure law, electronic filing program, accessibility to disclosures and the state's campaign finance Web site.

Though candidates must file annual reports in nonelection years and two campaign finance reports before an election during an election year, there are serious shortcomings in the requirements.

The biggest is that contributions candidates receive late in a campaign aren't reported until after the election. A candidate who wants to keep a particular contribution secret waits until right before the election to accept it. Too, while the names of contributors must be reported, no jobrelated information about the contributor is mandated. The lack of such information keeps voters from knowing if many employees from the same company are giving to a candidate.

Remember as well that Alabama allows unlimited transfers of campaign cash between political action committees. Multiple PAC-to-PAC transfers keep voters from ever knowing who originally gave the contribution.

Alabama deserves its failing grade, but a few changes could help:

End PAC-to-PAC transfers. There's no reason PACs need to shift money back and forth, other than to hide the original source of the contribution.

Require candidates to file electronically. Nearly half the states already require electronic filing instead of paper filing. With electronic filing, contributions are instantly transmitted to the secretary of state's office and are available to voters almost immediately, which keeps candidates from waiting until just before an election to accept a big contribution they hope to keep secret. Electronic filing also allows records to be kept in a searchable database, not available under the current system.

Pay for electronic filing by charging PACs a registration fee. Currently, a PAC can be created simply by filling out a few forms. There are more than 500 PACs registered in Alabama.

Require candidates not only to report the name and amount of a contribution, but the occupation of the person making the

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

contribution.

Voters deserve to know, in a timely way, who is paying for political campaigns before they cast their ballots. Right now, Alabama flunks the test, but some remedial work on campaign finance laws can point the state toward a passing grade.

---- **Index References** ----

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (CALIFORNIA VOTER FOUNDATION; GOVERNMENTAL STUDIES; GRADING STATE DISCLOSURE; PEW CHARITABLE TRUSTS; SCHOOL OF LAW; UCLA) (End; Multiple; Remember)

Keywords: CAMPAIGN FINANCIAL DISCLOSURE

Word Count: 615

**End of Document**                          © 2011 Thomson Reuters. No claim to original U.S. Government Works.

# **News**Room

2/8/04 Birmingham News (AL) 17
2004 WLNR 20536180

Birmingham News (AL)
Copyright © 2004 Birmingham News

February 8, 2004

Volume 116
Section: News

## PROPOSAL WOULD SET LIMITS ON PACS BILL RESTRICTS MONEY TRANSFERS BETWEEN GROUPS

### KIM CHANDLER News staff writer

MONTGOMERY

Shortly before the heated 2002 state elections, a political action committee with the unassuming name of Franklin took in $391,870 from nine other PACs.

Franklin and its donor PACs had something in common. All 10 are run by Montgomery lobbyist Johnny Crawford out of the same post office box in Montgomery. Franklin then disbursed the money to various campaigns.

Such PAC-to-PAC transfers are common in Alabama politics, and the practice makes it difficult to track who is funding candidates.

Gov. Bob Riley and the Democratic majority in the Alabama Legislature are backing proposals to limit transfers that obscure campaign money trails.

"This is money laundering - a way to hide the source of money," said Rep. Jeff McLaughlin, D-Guntersville, the sponsor of the bill backed by the Democrats. "This bill addresses the worst excess of the current election system." McLaughlin's bill could come up for a vote this week in the state House of Representatives.

Riley called McLaughlin's proposal weaker than his because it would exempt donations given to legislative caucuses. The Republican governor is trying to convince the Legislature to meet in special session on a package of government accountability bills, which he has not yet introduced. Riley's PAC regulation bill would be part of his accountability package.

Memorable shells

Alabama has about 535 registered political action committees, according to the secretary of state's office.

"Alabama is one state that sticks out in the number of what we've come to call shell PACs," said Edwin Bender, executive director of the Montana-based Institute on Money in State Politics. "You have lobbyists who create four or five different PACs - the ABC PACs, we've started calling them.

Ex. B, Selected News Articles, 1993-2011

"What we've seen in Alabama is the systematic proliferation of PACs as a tool for getting around limits or the way in which information is disclosed. I kind of think of it as an accounting tool. They know to which special interest they're selling access. In other states, there is not that kind of problem. It's there. It's just much, much smaller." PACs, Page 20A 17A

Some states limit, or at least try to limit, the role of political action committees in elections. Alabama law provides no cap on contributions from political action committees in state races and allows them to shuffle contributions from one PAC to another.

Secretary of State Nancy Worley said she believes McLaughlin's bill "is a very good step in honesty in elections and knowing where candidates and political action committees get their money."

Bender said PAC managers become instant money brokers, and a handful of lobbyists handle millions each election cycle.

Crawford runs 10 PACs from his Montgomery office, including Vision PAC and Growth PAC. Franklin PAC got its name from Benjamin Franklin, whom Crawford called America's first paid lobbyist.

Montgomery lobbyists Joe Fine and Bob Geddie operate 11 PACs.

Crawford PACs reported giving more than $2 million during the 2002 elections, although internal money shuffling could inflate that total. Fine and Geddie PACs reported giving more than $3 million.

'Out of control'

Crawford said PAC proliferation has roots with Alabama election law that put a $500 cap on what corporations could give directly to candidates. Alabama law places no limits on how much PACs can give, so multiple PACs were formed to channel the money flow.
Others argue it's deliberate deceit.

"I think a third of the PACs are pass-through PACs. They exist solely for the purpose for misleading the voter," said former Secretary of State Jim Bennett, now Riley's head of the state Department of Labor.

Bennett said political action committees radically multiplied in the late 1980s and early 1990s. It was a loophole in Alabama election law that wasn't foreseen, he said.

"It has gotten completely out of control," he said

McLaughlin's bill would continue to allow some transfers, including between state and national political parties and between any PAC and a PAC of a caucus of the Legislature. Both Republicans and Democrats have legislative caucuses.

Riley spokesman Jeff Emerson said the governor agrees with McLaughlin's proposal except for the exemption it would allow legislative caucuses.

"New loopholes are not the people's idea of accountability and reform," Riley said in a statement.

McLaughlin, who said he did not accept PAC money in his legislative campaign, said he believes his bill is a significant step in the right direction, although he admits it won't plug the flow for long. If the bill is passed, he believes he'll have to follow with cleanup legislation as money brokers find new ways.

"This is a bill to be workable and passable. It's not perfect," he said.

---- Index References ----

News Subject: (Legal (1LE33); Judicial (1JU36); Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Ex. B, Selected News Articles, 1993-2011

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ABC PACS; CRAWFORD PACS; DEMOCRATIC; GEDDIE PACS; GROWTH PAC; MONTGOMERY; PAC; PACS; PROPOSAL; STATE DEPARTMENT OF LABOR; STATE HOUSE; VISION PAC) (Bender; Bennett; Bob Geddie; Bob Riley; Crawford; Democrats; Edwin Bender; Fine; Franklin; Franklin PAC; Gov; Jeff Emerson; Jeff McLaughlin; Jim Bennett; Joe Fine; McLaughlin; Memorable; Nancy Worley; PAC; Republicans; Riley)

Word Count: 941

End of Document                                    © 2011 Thomson Reuters. No claim to original U.S. Government Works.



**Ex. B, Selected News Articles, 1993-2011**

2/9/04 Mobile Reg. (AL) A8
2004 WLNR 20362726

Mobile Register (AL)
Copyright ©2004 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

February 9, 2004

Section: A

Get it right on PAC transfers

Get it right on PAC transfers By aucoin ALABAMA DEMOCRATIC legislators still don' t get it when it comes to legislating accountability.

Granted, political compromise is the stuff laws are made of, but when it comes to rebuilding the public' s trust in government -- something Alabama lawmakers sorely need to do -- legislators have to go the extra mile. Nothing less will do.

Democratic lawmakers disingenuously are offering a flawed bill to stop money transfers among political action committees and other political groups. PAC-to-PAC transfers are an onerous practice that lets politicians and groups hide who' s bankrolling them, and it should be stopped.

Unfortunately, though, the Democratic bill approved last week by the House Constitution and Elections Committee includes a loophole big enough to drive a campaign bus through: PACs could still transfer funds to political party caucuses, which could do the laundering that hides the money s true source.

The PAC-to-PAC transfers work like this: a political action committee wants to donate to a particular politician or group' s campaign, but doesn' t want the public to know. The secrecy might be to protect the image of the recipient, or it might be to protect the PAC' s image. So, to keep the donation hidden, the PAC transfers the money to a more politically attractive PAC or party caucus, which then either shifts it again or makes the donation directly. The PAC or caucus that delivers the donation gets the credit, and the public is bamboozled.

The public won' t be, nor should it be, placated by the Democratic measure. Gov. Bob Riley is right to condemn the bill. His proposal is better, because it takes on the PAC-to-caucus transfers, too.

What legislators must learn is that Alabamians want real accountability, not loopholes that protect politics-as-usual in Montgomery. Legislators should get it right, or do nothing -- which would be foolish, but honest. Offering half a loaf on accountability will only reinforce the public' s already cynical view of Alabama politics.

Copyright © 2004 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; DEMOCRATIC; HOUSE CONSTITUTION AND ELECTIONS COMMITTEE; PAC; PACS) (Bob Riley; Democratic; Granted)

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

4/23/04 Montgomery Advert. (Ala.) A7
2004 WLNR 23196573

Montgomery Advertiser (AL)
Copyright ©2004 Gannett

April 23, 2004

Section: A

RESTRICTS TRANSFERS

April 23, 2004

PAC bill step toward reform

One of the glaring flaws in Alabama campaign finance law is the lack of any prohibition on the transfer of funds among political action committees. These PAC-to-PAC transfers defeat one of the core purposes of campaign finance law the ability of a voter to determine which individual or interest is contributing money to a political candidate. That is critical information for a conscientious voter to have, and there is no justification for perpetuating a system that allows financial-political con nections to be obscured. In Al abama, however, that trail can be impossible to follow. Currently, a contribution from an individual or an in terest group can be made to one PAC, which can then make a contribution to anoth er PAC, which can then make a contribution to another PAC, and on and on until some PAC eventually gets the money to the candidate. By then, the link between the original contributor and the recipient the contributor in tended to get the money all along is effectively erased. This has often been likened to money laundering, and that s precisely what it is. Money laundering in an illegal enterprise is a crime, but this kind of political money laundering is entirely lawful in Alabama. It shouldn' t be. Legislation to restrict PAC-to-PAC transfers is now before the state Senate, which ought to pass this long needed reform. Senate Bill 262 amends the law on political action committees to generally bar contributions from one PAC to another. Contributions are permitted between principal campaign committees and between state and national political parties. That s reasonable. These aren' t the sort of contributions that are shuffled from PAC to PAC in an obvious effort to blur the line between contributors and candidates. Restrictions on PAC-to-PAC transfers would be an important step in campaign finance reform in our state.

ONLINE ONLY

To read the full text of Senate Bill 262, log on to the following site and click Opinion:

www.montgomeryadvertiser.com

---- Index References ----

Company: ONLINE; PAC

News Subject: (Government (1GO80); Public Affairs (1PU31); Political Parties (1PO73))

Region: (Alabama (1AL90); North America (1NO39); Americas (1AM92); USA (1US73))

Language: EN

Other Indexing: (ONLINE; PAC; SENATE BILL 262) (Legislation; RESTRICTS TRANSFERS)

2/12/05 Mobile Reg. (AL) A10
2005 WLNR 23917278

Mobile Register (AL)
Copyright ©2005 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

February 12, 2005

Section: A

Accountability plans could help restore trust

Accountability plans could help restore trust By aucoin THE PUBLIC could better trust state officials if the Alabama Senate would pass accountability legislation already approved by the House.

The House sent to the Senate a collection of bills to improve accountability - measures that Gov. Bob Riley, to his credit, has been pushing for a couple of years.

One of the more important among the bills is one that would end most money transfers from one political action committee to another. PACs provide most of the funding for political campaigns, and politicians have an understandable tendency to carry the water for those who give them the most money.

Granted, there' s much debate about whether the PACs give money to politicians who share their perspectives on public issues, or whether PAC contributions purchase a public official' s loyalty. It probably happens both ways.

But it' s a fact that PACs with the most money - whether they represent teachers, trial lawyers or some other large or wealthy interest group - have abundant influence on the state leaders they bankroll. That' s not necessarily bad. Under American democracy, political contributions are a legitimate means of political speech.

Voters, though, express themselves at the ballot box, and to make informed choices, they need to know who' s writing the checks. That' s why PAC-to-PAC transfers don' t serve the public. In fact, they cloud the money trail. A PAC making a contribution may be passing along money from a different, more controversial PAC that the well-funded politician would rather voters never know about.

This isn' t just theoretical. It happens all the time, and it' s dishonest.

The House bill, which got unanimous approval, doesn' t go far enough. It will still allow transfers among similar PACs and exempts donations from political parties to party caucuses in the Legislature. The Senate should remove these exemptions before approving the measure.

Another worthy bill sent to the Senate would criminalize "pass-through pork." It would stop state legislators from money laundering.

When a legislator wants to give tax dollars to a project that might not get state funding in the light of day, he adds it to a state agency' s budget and the agency passes the money to the project. It' s a practice that inflates agency budgets and shields legislators from disclosing how they' re spending tax dollars. It' s dishonest and needs to stop. Senators should approve the legislation.

Other bills deserving passage would create a nine-member commission to run the Department of Transportation to insulate the department' s decisions on state construction projects from undue influence from the governor' s office; require local school systems to be audited regularly; shed sunlight on state no-bid contracts; and automatically recount votes when a

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

constitutional amendment passes by less than one-half of 1 percent approval. The House did right by approving these bills; now it's up to the Senate to do the same.

Alabamians don't trust legislators and other state officials much. That's largely because special interests, emboldened by PAC-to-PAC transfers, pass-through pork, no-bid contracts, and a host of other political shenanigans, hold Alabama's future hostage.

The accountability bills can help ensure that state leaders act in the public's best interests. The Senate should move quickly to approve them.

Copyright © 2005 Mobile Register. All Rights Reserved. Used by NewsBank with Permission.

---- Index References ----

News Subject: (Legislation (1LE97); Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (DEPARTMENT OF TRANSPORTATION; HOUSE; PAC; SENATE) (Alabama; Bob Riley; Granted; PACs; Senators)

Edition: 05

Word Count: 692

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

3/14/05 Montgomery Advert. (Ala.) A7
2005 WLNR 27100273

Montgomery Advertiser (AL)
Copyright ©2005 Gannett

March 14, 2005

Section: A

Ends Pac Shuffling

March 14, 2005

Anti-transfer bill deserves support

If Alabama legislators are really serious about strengthening campaign finance laws, they now have a chance to demonstrate it, thanks to a Senate committee' s vote last week. The committee approved a bill that would prohibit transfers of money among political action committees.  .

If passed into law, that would be a huge step forward for Alabama and a huge service to the voters of the state. An informed electorate is the best tool for obtaining good government, but even the most conscientious voter can be denied im portant information un der the current law.

A voter should be able to tell who is paying for a candidate' s campaign. It s that simple. The source of a candidate' s financial support is a legitimate question for a voter to consider in making his or her choice for that office.

In Alabama, that can be a difficult and even an impossible task. Because there are no restrictions on transfers among PACs, it is all too easy for the money trail between contributor and candidate to be hidden.

An individual or interest group can send money to a PAC, which sends it to another PAC, which sends it to another PAC and so on until the link between the contributor and the eventual recipient is not traceable.

That s fundamentally dishonest. It s essentially money laundering, which is a crime in the private sector. It allows a candidate to take money from an individual or interest without a voter being able to tell it and to weigh that information in deciding how to vote.

The amended version of House Bill 60 approved by the Senate Economic Expansion and Trade Committee contains plain language that halts PAC-to-PAC transfers:

"It shall be unlawful for any political committee to make a contribution to any other political committee, other than a principal campaign committee."

That means that if an individual or interest contributes to Jones for Governor or Smith for Senate, the source of that contribution will not be hidden in a shuffle among PACs.

"Everybody says they re for it. We ll see," said Sen. Pat Lindsey, D-Butler, the chairman of the committee and the target of criticism for sitting on the bill for a month after it passed the House.

Indeed we will. Voters should press their senators to pass the amended bill, and then turn their attention to their House members to give final passage to the bill.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

5/18/05 Birmingham News (AL) 8
2005 WLNR 24087722

Birmingham News (AL)
Copyright ©2005 Birmingham News

May 18, 2005

Volume 118
Section: EDITORIAL

Good government takes a beating

THE ISSUE Once again, the Legislature fails to make accurate disclosure of political contributions a priority, which means voters lose.

When the Legislature falters in its most important responsibility - passing state budgets - the session has to be judged a failure.

Combine the general lack of support for good government proposals, and lawmakers should be embarrassed.

They' re probably not; doing the " same as usual ' is nothing new for the Legislature. It' s one reason Alabama' s state government is considered among the worst in the nation.

Included in the bills that died this week was one that simply would have required nonprofit organizations to disclose their sources of funding when they try to influence an election. It' s the public disclosure that political action committees and candidates for public office already must make every election. Voters should know who is paying to influence an election, but the Christian Coalition of Alabama doesn' t think it should have to be accountable.

As it turns out, that' s probably because the Christian Coalition has accepted out-of-state gambling money to fight a lottery in Alabama, even after the organization issued repeated denials. Having to disclose where it gets its funding for its political battles might also disclose the hypocrisy of the Christian Coalition of Alabama.

Another bill that died would have banned the transfer of campaign contributions from one political action committee to another. Alabama' s campaign laws are lax - there is no limit to how much money an individual or PAC can give to a candidate, but the contribution must be made public. That way, voters know which individual or group is sponsoring a particular candidate.

However, when the law allows transfers of campaign funds between political action committees, it becomes impossible for anybody to trace the original source of a contribution. That undercuts the purpose of disclosure.

Just as the Christian Coalition of Alabama hides the contributions it solicits, so can PACs keep some contributors unidentified by repeatedly transferring funds back and forth.

If good government were a priority of the Legislature, these bills would have passed. But, then, so would have reasonable education and General Fund budgets.

---- Index References ----

News Subject: (Government (1GO80); Public Affairs (1PU31))

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

1/14/06 Montgomery Advert. (Ala.) A9
2006 WLNR 25370463

Montgomery Advertiser (AL)
Copyright ©2006 Gannett

January 14, 2006

Section: A

Pass Pac Transfer Bill

January 14, 2006

End laundering of political funds

In a criminal enterprise a drug dealing opera tion, say the perpetrators often shuffle money around to hide its true source. It s called money laundering and it is just as much against the law as the criminal activities that preceded it. No one defends the practice. Yet in Alabama politics, the same money maneuvering can go on in perfect legality, even though the same purpose hiding the actual source of money is accomplish ed. Political influence, and thus public policy influence, is sought and often obtained with financial contributions, but the concerned voter who wants to know who s giving money to whom may not be able to learn that. This conscientious voter may find that the paper trail that should link contributor with recipient has been hidden. That s because Alabama allows unfettered transfers of money among political action committees. These PAC-to-PAC transfers which can be PAC-to-PAC-to-PAC-to-PAC-to-PAC and on and on make it easy to cover a contributor s tracks. They also make it easy for a candidate to take money from sources he or she might not care to be directly associated with by laundering the money through multiple PACs. Legislation that would stop this scandalous practice has been introduced again this year by Rep. Jeff McLaughlin, D-Guntersville, a relentless voice for disclosure reform. This year s bill is stringent and straightforward. Any legislator who opposes it should face a storm of demands for explanation from constituents. The bill makes it " unlawful for any person to make a contribution in the name of another person, or knowingly permit his or her name to be used to effect such a contribution made by one person in the name of another person, or for any candidate or political committee to knowingly accept a contribution made in the name of another person." The bill further states that it " shall be unlawful for any political committee to make a contribution to any other political committee, other than a principal campaign committee." That s exactly as it should be. If the widget lobby wishes to give money to Candidate A, it would be entirely free to do so directly. It would not be able to give the money to PAC X, which ships it to PAC Y, which ships it to PAC Z, which gets it to the candidate who, you may be sure, knows where it really came from. The current system is assured of abuse. " It allows those who don t want voters to know who s behind a candidate to shroud those contributions," McLaughlin told the Associated Press. " This is the time to take the decisive action to clean it up." It s long past time.

---- Index References ----

Company: PAC


Region: (Alabama (1AL90); North America (1NO39); Americas (1AM92); USA (1US73))

Language: EN

Other Indexing: (PAC; PASS PAC TRANSFER) (End; Jeff McLaughlin; McLaughlin)

Edition: 01

2/8/06 Birmingham News (AL) 9
2006 WLNR 2268708

Birmingham News (AL)
Copyright ©2006 Birmingham News

February 8, 2006

Volume 118
Section: EDITORIAL

Ban on PAC transfers needs a little help

BOB BLALOCK

Milton McGregor, friend of children. Who knew?

McGregor's dog racing tracks in Macon County and Birmingham - which also offer electronic bingo and sweepstakes, respectively - each gave $16,000 to Children's PAC, according to finance reports filed last week with the secretary of state's office. Children's PAC is a political action committee that lists children's issues as its primary concern.

Maybe McGregor worries about children because his long-term success depends on them growing up to be gamblers. Other " friends of children' " also donated big bucks to Children's PAC, including Alabama Power Co. employees, Drummond Coal and trial lawyer interests. They and others gave $156,000 to Children's PAC, which sent $92,000 to other PACs associated with Children's PAC or run by Montgomery lobbyists.

Laundering money

Children's PAC, of course, has nothing to do with supporting children's issues. It has everything to do with getting money to political candidates, often by disguising the original donor from the public. That's because state law lets PACs shuffle dollars among themselves, allowing them to hide the money trail.

Here's how Rep. Jeff McLaughlin, D-Guntersville, described the process to News reporter Kim Chandler: " One political action committee gives to another that gives to another. You wash the identity of the original donor. Through a series of winks and nods, the last PAC in the chain knows where to send the money.' "

McLaughlin is sponsoring a bill that would end the winks and nods. His bill would ban all PAC-to-PAC transfers, forcing PACs to give directly to candidates.

It is not the first attempt to limit PAC-to-PAC transfers, but it is the strongest. McLaughlin four times sponsored another version of the bill that granted exemptions to legislative caucuses and other groups. Even before McLaughlin was elected to the House in 2001, former House member Mike Rogers, who represents the Alabama's 3rd Congressional District, sponsored the limited PAC-toPAC transfer ban legislation.

Last year, the House passed that bill. But the Senate Economic Expansion and Trade Committee did something unusual. It made the bill stronger by banning all money transfers and then approved it unanimously. In the past, the committee was the designated graveyard in the Senate for bills curtailing PAC-to-PAC transfers.

McLaughlin, who accepts no campaign contributions, decided this year to sponsor the stronger version of the bill.

" The earlier bill was half a loaf,' " he said in an interview. " If we could get this one through, this is a much better thing for

Ex. B, Selected News Articles, 1993-2011

the voters of Alabama.' '

McLaughlin said he has " guarded optimism' ' the bill will pass. " I ll remain optimistic and say it has a good shot, but it s definitely not a lead-pipe cinch.' '

Unlikely help

McLaughlin believes he ll get some help from an unlikely source: Jack Abramoff. The disgraced Washington, D.C., uber-lobbyist pleaded guilty last month to conspiracy, fraud and tax-evasion charges, admitting to corrupting government officials and defrauding his own clients out of $25 million.

Abramoff agreed to cooperate with federal investigators, which could lead to the indictments of several members of Congress and their staffs. The Abramoff probe is so serious, Congress is actually making noise about real lobbying reform.

McLaughlin hopes the scandal spurs state lawmakers, most of whom are seeking re-election this year, to pass his bill. '' It would seem to me that those incumbents concerned about the appearance of things would want to distance themselves from unseemly activity, downright illegal activity and things that smack of bribery, that they would want to do everything they could to let the voters in Alabama know nothing like that could happen in Alabama,' ' he said.

Banning PACs from laundering campaign dollars is a good start, but there s much, much more the Legislature must do, such as: setting limits on campaign giving, ending lobbyists' lavish spending on public officials, and forcing all groups that spend money influencing the Legislature and elections to report who funds them.

Until then, voters should know that something very much like the Abramoff affair could happen in Alabama.

-------------------------

Bob Blalock is editorial page editor of The News. E-mail him at bblalock@bhamnews.com.

---- Index References ----

Company: ALABAMA POWER CO; SOUTHERN CO (THE)

News Subject: (Legislation (1LE97); Government (1GO80))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA POWER CO; CONGRESS; DRUMMOND COAL; LEGISLATURE; PAC; SENATE; SENATE ECONOMIC EXPANSION AND TRADE COMMITTEE) (Abramoff; Bob Blalock; Jeff McLaughlin; Kim Chandler; McGregor; McLaughlin; Mike Rogers; Milton McGregor)

Word Count: 859

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

3/24/06 Birmingham News (AL) 8
2006 WLNR 4980920

Birmingham News (AL)
Copyright ©2006 Birmingham News

March 24, 2006

Volume 119
Section: EDITORIAL

## Stop transfers, get accountability

THE ISSUE Allowing political action committees to launder money only makes a joke of Alabama's campaign finance disclosure laws.

Little in the Legislature gets more lip service than the need for politicians to fully disclose their campaign contributions. Let the people see who is giving how much to candidates, then they can cast an informed vote. Just about everybody prefers transparency over other reforms, such as limiting contributions.

When it comes to putting action behind the words, however, it's an entirely different story.

One of the best ways to ensure that voters know who is giving what to candidates is to ban transfers of funds from one political action committee to another. PAC-to-PAC transfers are intended to do one thing: hide the original source of a contribution. It's a corrupt system that allows powerful special interests to give money to candidates who might not want their constituents to know they're getting it from, say, the Alabama Education Association or trial lawyers or Alfa.Yet, each year, proposals that would prohibit transfers between political action committees either die outright or get watered down close to meaningless - and then die. And unless somebody gets a sluggish Senate moving next week, that'll happen this year, too.

State Rep. Jeff McLaughlin, D-Guntersville, has been the champion of banning PAC transfers in recent years. His bill this year was introduced early in the session and passed the House by a 97-2 vote before the first month was out. But McLaughlin's bill has been languishing in a Senate committee for more than a month now.

And it's in an odd committee. Instead of going to the Senate's Consti-

tution, Campaign Finance, Ethics and Elections Committee, where one would think a bill dealing with ethics, elections and campaign finance would go, the bill was sent to the Senate Committee on Finance and Taxation-Education. That's the committee that writes the education budget.

Hmmm. Last year, after passing the House, McLaughlin's bill ended up in an weird Senate committee, too - the Economic Expansion and Trade Committee, chaired by Sen. Pat Lindsey, D-Butler. That's one of the committees where bills traditionally are sent to die a quiet death. But last year, Lindsey's committee unanimously approved the bill and - wow! - made it much stronger.

So this year, the bill was sent to the committee chaired by Sen. Hank Sanders, D-Selma, no stranger himself to pushing the ethics envelop. If the PAC-to-PAC transfer ban wasn't sent there to die, Sanders needs to make sure it gets to the full Senate next week when lawmakers return from spring break.

But the signs aren't encouraging. McLaughlin's bill has been in Sanders' committee longer than it took it to pass the full House.

© 2011 Thomson Reuters. No claim to original U.S. Government works.

Banning money transfers between PACs will make Alabama' scampaign finance system more accountable. As it stands, if s a bad joke to claim there is any semblance of full disclosure when huge sums of money can be hidden so easily and spread around so freely.

---- Index References ----

News Subject: (Government (1GO80))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (ALABAMA; ALABAMA EDUCATION ASSOCIATION; ELECTIONS COMMITTEE; HOUSE; PAC; PACS; SENATE; SENATE COMMITTEE; STATE REP; TRADE COMMITTEE) (Campaign Finance; Hank Sanders; Jeff McLaughlin; Lindsey; McLaughlin; Pat Lindsey; Sanders)

Word Count: 600

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

5/2/06 Birmingham News (AL) 1
2006 WLNR 7573809

Birmingham News (AL)
Copyright ©2006 Birmingham News

May 2, 2006

Volume 119
Section: LOCAL NEWS

It's hard to do algebra of campaigns

John Archibald

It s not hard to pick out the various personalities in the schizophrenic world of Alabama campaign finance.

There s the '' invisible donor,'' for instance. He ll give $1,000 to his friendly neighborhood county commission candidate, but cut it into five $200 payments hoping no one will add them all up and print his name as a big spender.

And there s the type I like to call the '' boldface giver.'' He ll write a thousand dollar check and more. He ll write it for $1,001, just so his name will stand in bold type in the paper s list of donors.

It takes all types to make a campaign. Donors with personal and (they believe) private reasons for shelling out cash. Givers with big egos or big business reasons to ensure politicos know where the money originated.

Then of course, there are the dadgum PACs. The political action committees transfer money with the efficiency of an offshore bank. Get inside that secret game and you ve done something.

But it s a bit like algebra. It s easier to find the value of '' x '' than to follow cash from PAC A to PAC Z.

We re not going to solve that equation today. But basic math will give us some insight into who wants to buy the ears of our would-be leaders.

Just a few notes from the most recent round of contributions to candidates for the Jefferson County Commission.

The nine candidates raised $272,000 this filing period. It sounds like a lot, but it s not as if they walked their districts with tin cups. The money came from just 260 donors, which would average about $1,039 per gift if campaigns worked that way. But they don t.

Only about a quarter of all the donors gave $1,000 or more. As it happens, those big spenders gave three quarters of the cash.

I won t break it down by candidate. You ve had a chance to see the names. Let s just see, more generally, what special interests are trying to elect this commission.

The biggest, and most frustrating chunk of money - 60 percent or better - came from the PACs, with their algebraic array of wants and needs. About half the PAC money came from those I d call '' the PAC guys,'' the Rudy Davidsons and Stephen Bradleys and Clark Richardsons who manage a stable of committees to distribute money from diverse interests.

Without them, the game would be easy.

After that, it was just a matter of labeling. Donors with real estate, development or construction concerns gave far more than

any other group. Almost $78,000, total, or 30 percent of the take.

Who will wield influence with our new commission? Looks like the guys who build things.

Nobody else is close. Coal interests and lawyers made a small dent. The AEA and banking interests, just a scratch.

Of course we can't really know for sure, for the real money is hidden in those PACs; you might as well say laundered through those PACs.

So voters have to solve for x without all the variables. It doesn't seem quite fair. Then again, that's Alabama politics.

------------------------

John Archibald's column appears Sundays, Tuesdays and Thursdays. Write him at jarchibald@bhamnews.com.

**---- Index References ----**

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (AEA; JEFFERSON COUNTY COMMISSION; PAC; RUDY DAVIDSONS) (Clark Richardsons; Coal; John Archibald; Stephen Bradleys; Thursdays)

Word Count: 604

**End of Document**

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

5/5/06 Birmingham News (AL) 10
2006 WLNR 7810898

Birmingham News (AL)
Copyright ©2006 Birmingham News

May 5, 2006

Volume 119
Section: EDITORIAL

The pure politics of PAC pandering

THE ISSUE One candidate wants an investigation into possible illegal contributions, but in an election year, a credible probe would be practically impossible.

Montgomery lawyer Mark Montiel is running for state attorney general in the Republican Party primary against incumbent Troy King. Montiel is urging King and Gov. Bob Riley to appoint an independent prosecutor to look into what Montiel claims are illegal campaign contributions funneled through political action committees to King's and others' campaigns.

Here's an election-year shocker: King and Riley have refused.

It's politics as usual, of course. For the record, Riley says he has no authority to appoint an independent investigator; King claims previous attorney general opinions authorize the campaign contributions Montiel is complaining about. It's up to the Legislature to change the law if there's a problem, King's office says.

We can't help but wonder where Montiel was in earlier elections - this isn't a new concern. But now that he's running for office himself, the proliferation of PACs and how they give money have become publicly troublesome.

Still, regardless of the politics and timing, Montiel scores some points.

Here's the deal:

Alabama law prohibits a company from directly giving candidates more than $500 in each election cycle. However, many PACs are created just to accept contributions and pass them on. Some companies no doubt use the system to bypass the $500 limit. For example, a company might give $5,000 each to 10 PACs. Those PACs then give a total $50,000 to a particular candidate.

A Birmingham News analysis showed that nearly half of the $8.8 million raised from June through January by the major statewide candidates came from PACs.

Another complaint from Montiel and others is that pushing contributions through PACs allows someone to give a contribution in somebody else's name, which also violates the law. Though Montiel's motivation appears political, there's nothing wrong with shining a light on the flawed campaign finance system in Alabama.

Another problem Montiel didn't make a big deal about is PACs transferring contributions among themselves. While the laws requiring disclosure are considered strong, they are seriously weakened when a contribution can disappear in the maze of PACs before winding up in somebody's campaign coffer. Political action committees were designed to allow people with similar political concerns to give contributions to candidates who think like they do, not to hide the source of a contribution or to allow corporations to circumvent giving limits. Today, though, PACs are established for just that purpose.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

It might be technically legal, but it' s unambiguously wrong. The Legislature should have (and could have) fixed the problem long ago; law enforcement officials should have (and could have) been looking at whether laws are being violated through PACto-PAC transfers, whether as an attempt to thwart disclosure altogether or to get around limits on contributions.

The election-year atmosphere makes it all but impossible to conduct an investigation that isn' t tainted with politics. Certainly, however, this should be the focus of the governor, attorney general and lawmakers during next year' s legislative session.

Once again, voters are witnessing a corrupt campaign finance system at work. It' s easy to fix, though, if those people elected to office are serious about fixing it.

---- Index References ----

News Subject: (Judicial (1JU36); Legal (1LE33); Government (1GO80); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (PAC; PACS; REPUBLICAN PARTY; TROY) (Alabama; Bob Riley; Mark Montiel; Montgomery; Montiel; Riley)

Word Count: 683

End of Document &copy; 2011 Thomson Reuters. No claim to original U.S. Government Works.

&copy; 2011 Thomson Reuters. No claim to original U.S. Government Works.

6/7/06 Montgomery Advert. (Ala.) A4
2006 WLNR 25376257

Montgomery Advertiser (AL)
Copyright ©2006 Gannett

June 7, 2006

Section: A

Controls Needed

June 7, 2006

Money taints judicial process

Alabama residents should be concerned about the insidious effects of large campaign contri butions on the running of government in general. But that concern should be especially acute when so much campaign money is being focused on the state' s judicial system, especially the Alabama Supreme Court.

Prior to two decades ago, candidates for statewide judicial office didn' t have to raise much campaign money to have a fighting chance to win election. But when the business community and trial lawyer interests started a tug of war over tort reform, that changed, and it changed fast.

Since 1993, candidates for just the Alabama Supreme Court have raised about $43 million, which is more than has been raised in any other state during that period for state supreme court campaigns.

The big-money trend is not only continuing, it' s getting worse. This year alone, the Institute on Money in State Politics estimates that 14 candidates for the Alabama Supreme Court have raised more than $1.76 million. That is up from the same point in 2004, when 13 candidates had reported raising about $870,000.

If you would ask these judicial candidates if their decisions from the bench could be affected by all those donations from business or trial lawyer interests, we would bet that to a person they would say they can continue to be impartial no matter the issue.

But ask them a generic question, in a nonelection year, about the potential for undue influence from all this money, and we would bet the more thoughtful among the candidates would readily admit that it is not healthy.

Even if all judges could remain unaffected in their decisions by big campaign contributions from special interests, such contributions clearly undermine the judiciary' s credibility with the public.

The potential for campaign funds to influence the judicial process is made worse in Alabama by the difficulties of tracing campaign donations back to their real source.

Unlike most states, Alabama allows campaign funds to be transferred from one political action committee to another and then on to others, with the money being intermixed along the way with other donations.

There are no easy solutions to this problem. Ending PAC-to-PAC transfers would help keep both judicial campaigns and non-judicial campaigns honest. But Alabamians are not likely to give up the right to elect judges, so the effects of having to raise large campaign chests likely won' t go away anytime soon.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

As long as special interests are allowed to fund judicial campaigns, the voters of Alabama need to be especially alert to who is taking what money from which interests. For now, the only thing that can offset the negative effects of special interest money is an intelligent voter who takes such issues into ac^^^^^^^^^^^^^^^^^^^^^^^^^^count when casting his or her ballot.

---- Index References ----

News Subject: (Legal (1LE33); Judicial (1JU36))

Region: (Alabama (1AL90); North America (1NO39); Americas (1AM92); USA (1US73))

Language: EN

Other Indexing: (ALABAMA SUPREME COURT) (Alabama; Alabamians; Controls; Ending; Prior)

Edition: 02

Word Count: 571

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

9/13/06 Birmingham News (AL) 8
2006 WLNR 15888335

Birmingham News (AL)
Copyright ©2006 Birmingham News. All Rights Reserved.

September 13, 2006

Volume 119
Section: EDITORIAL

Using a stinky system expertly

THE ISSUE AEA' s Paul Hubbert, spurned by the Republican Party so it can demonize him, still plans on giving to GOP candidates. But the public will never know which ones.

Paul Hubbert didn' t get to be Montgomery' s most powerful lobbyist by bucking the system. Instead, the executive secretary of the Alabama Education Association has used the system expertly to help elect teacher-friendly lawmakers who pass bills or kill them, depending on how they affect his members.

In recent years, that meant giving large campaign contributions not only to Democrats, but to Republicans who have grown in number every election cycle. In 2002, AEA' s formidable fund-raising arm - Alabama Voice of Teachers for Education, or A-Vote - gave $670,000 in direct contributions to Republican candidates. This year, with the Republican Party spurning Hubbert publicly, trying to demonize him for election-year advantage, contributions to GOP candidates are much lower. So far, AEA has reported $85,000 going to Republican candidates.

Hubbert said, " That' s fine, we' ll invest it elsewhere.' '

But some Republicans would like to keep getting AEA' s campaign contributions. So, once again, Hubbert will use the system to maximum advantage. A-Vote will continue to give to some Republican candidates, just not directly.

In other words, A-Vote will launder the money through other PACs, with full knowledge of the candidates.

" We' re giving to those candidates who are brave enough to ask, and running it through whatever PACs they suggest running it through,' ' Hubbert said.

It is the system, and it stinks. Alabama' s campaign finance laws allow

contributors to funnel money through PACs, many of them set up for just such a purpose. The only ones not in on this little game are voters, who have no way of knowing that AEA is giving to Republican candidates.

Everyone knows what it would take to fix this chicanery: banning PAC-toPAC transfers, and setting some sort of reasonable limits on campaign contributions. But not enough lawmakers want to change the system. They have plenty of incentive to leave things as they are.

Candidates from both parties receive millions of dollars for their races. Many of them don' t want limits, on AEA' s or any other group' s money. And candidates from both parties, not just Republicans, benefit from PAC-to-PAC transfers to get money from interest groups they may disavow publicly.

There is only one incentive - besides doing the right thing - for fixing the problem. But if that were incentive enough, lawmakers already would have done so. The only surefire way to make the Legislature outlaw PAC-to-PAC transfers and set

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

contribution limits is for the public to start working the system.

Just like Hubbert, they need to press their case with lawmakers. Very few people can contribute to campaigns the way A-Vote does, but they can hector lawmakers to pass good legislation. Most important, just like Hubbert, the public needs to let lawmakers know there will be consequences for failing to follow instructions.

To make lawmakers change the system, the public must use the system every bit as expertly as Hubbert.

---- Index References ----

News Subject: (Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (VOTE (A); AEA; ALABAMA; ALABAMA EDUCATION ASSOCIATION; EDUCATION; GOP; PAC; REPUBLICAN PARTY) (Hubbert; Legislature; Paul Hubbert; Republicans)

Word Count: 623

End of Document                                    © 2011 Thomson Reuters. No claim to original U.S. Government Works.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

9/29/06 Montgomery Advert. (Ala.) A6
2006 WLNR 25367333

Montgomery Advertiser (AL)
Copyright ©2006 Gannett

September 29, 2006

Section: A

Transfers can deceive

September 29, 2006

Multiple PACs underscore issue

A recent report that a prominent Montgomery lobbyist had formed nine new political action committees this month to add to the 13 he already operated highlights once again the importance of addressing the way PACs are allowed to function in Alabama. The key concern is the unlimited transfers of funds among PACs that current state law allows.

The issue is not the number of PACs. The Birmingham News reported that lobbyist John Teague now operates 22 of them. Other lobbyists also operate multiple PACs.

We don' t care whether Teague has 22 PACs or 122. The real issue, argued on this editorial page for years, is PAC-to-PAC transfers that allow the true source of campaign funds to be hidden from the voters.

As long as PAC-to-PAC transfers are permitted, Alabamians will never be able to know with certainty who is giving what to whom in political campaigns. That is a fundamentally dishonest approach that is an affront to democracy.

Candidates are always looking for campaign money, but there are individuals and interests with whom they may prefer not to be publicly associated. They' ll take their money, to be sure, but they' d rather the voters not know about it.

A good example surfaced earlier this month when Paul Hubbert of the Alabama Education Association said that his organization had contributed to a handful of Republican candidates who had asked for the money. AEA is regularly flogged by the GOP as a menace, so these Republican candidates had their AEA contributions channeled through other PACs.

PAC-to-PAC transfers make the deception easy. A PAC can take a contribution from an individual or interest, send it to another PAC, which sends it to another PAC, and so on until it gets to the intended recipient. He or she, voters should have no doubt, knows the real source of the money, but the paper trail is conveniently covered by the multiple transfers.

That is indefensible. Voters should be able to tell -- easily -- who is funding political campaigns and thus be able to weigh that information in making their decisions.

To their credit, both gubernatorial candidates have called for an end to PAC-to-PAC transfers. Whoever wins in November should follow up with an all-out effort to get that prohibition through the Legislature, the political body that most benefits from the current arrangement. It won' t be an easy fight, but it' s one that has to be waged in the interest of honest, open elections.

---- Index References ----

Company: ALABAMA EDUCATION ASSOCIATION; PAC

10/15/06 Birmingham News (AL) 11
2006 WLNR 18004575

Birmingham News (AL)
Copyright ©2006 Birmingham News. All Rights Reserved.

October 15, 2006

Volume 119
Section: NEWS

McGregor, Creeks put money on candidates Gambling interests add almost $1.2 million to campaign chests

### KIM CHANDLER and JEFF HANSEN News staff writers

Dog track owner Milton McGregor has long been a fixture on the Alabama political scene, known for his hefty contributions to candidates.

But McGregor isn' t the only gambling interest giving to state candidates this year. The Poarch Band of Creek Indians in south Alabama has ramped up contributions as its competes for political clout.

Gambling interests have given nearly $1.2 million to candidates through 60 political action committees, making it difficult to follow the money trail. That figure excludes thousands of dollars given by gambling interests directly to candidates and other sources.

The chief contributors with gambling ties were McGregor and the Poarch Creeks. McGregor and his tracks gave $623,500 to the 60 PACs, which are controlled by eight lobbyists. McGregor gave $398,500 and his Birmingham and Shorter tracks each gave $112,500. The Poarch Creeks gave $315,500 - $203,000 from Poarch PAC and $112,500 from PCI gaming.

McGregor and the Poarch Creeks compete for customers who want to play electronic gambling machines. McGregor

operates electronic bingo at VictoryLand, his Macon County track. He also opened electronic sweepstakes games at his Jefferson County track.

The Poarch Creeks run more than 2,100 electronic bingo games at their Wetumpka, Atmore and Montgomery " entertainment centers.' '

Asked why they gave through PACs instead of directly to candidates, the Poarch Creeks and McGregor issued statements about their right to participate in the political process.

'' I have been active in politics for well over 20 years and fully intend to stay active. That is the American way,' ' McGregor said.

Buford L. Rolin, the Poarch Creek tribal chairman, said, " As a corporate citizen, the Tribe seeks to work with leaders in both the public and private sectors to create and expand economic opportunities for our Tribe and our community. Like many other entities in the state, the Poarch Band of Creek Indians is involved in the political process, and the manner in which we participate is guided by state and federal law.' '

Poarch PAC only recently became a significant campaign contributor, according to campaign finance records. Other gambling contributions in the current election cycle included $100,000 from a Huntsville bingo operator, $107,500 from Greenetrack dog track and $44,000 from Mobile Greyhound Park.

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

McGregor noted that gambling-interest money in Alabama politics has not always come from inside the state.

Convicted Washington lobbyist Jack Abramoff funneled hundreds of thousands of dollars from the casino-operating Mississippi Choctaws in 2000 to the Alabama Christian Coalition when the coalition was fighting McGregor' s push for legislation legalizing video poker at his track.

EMAIL: kchandler@bhamnews.com

---- Index References ----


Industry: (Casinos (1CA80); Travel & Tourism (1TR07))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (CREEK INDIANS; CREEKS; HUNTSVILLE; MCGREGOR; MOBILE GREYHOUND PARK; POARCH; POARCH BAND; POARCH BAND OF CREEK INDIANS; POARCH CREEK; POARCH CREEKS; TRIBE) (Buford L. Rolin; Convicted Washington; Jack Abramoff; Montgomery)

Word Count: 549

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

10/16/06 Montgomery Advert. (Ala.) A5
2006 WLNR 25368010

Montgomery Advertiser (AL)
Copyright ©2006 Gannett

October 16, 2006

Section: A

Prohibit Transfers

October 16, 2006

Legislature must address PACs

It is commendable that both major-party candidates for governor have called for an end to unlim ited transfers of money among political action committees, a fundamentally dishonest practice that is an affront to the voters. However, the next governor, whether it s Bob Riley or Lucy Baxley, won t be the decision-maker on this critical reform issue.

The governor is not empowered to halt this scandalous practice with a stroke of his or her pen. That authority rests with the Legislature, and that is the body on which Alabamians serious about seeing this important change occur should focus their efforts. The support of the governor will be welcome, to be sure, but the change will have to occur in the legislative branch.

Current law makes possible -- indeed invites -- widespread deception. Suppose a candidate wants to take campaign money from an entity with which that candidate prefers not to be publicly linked, or suppose that some interest or individual wants to direct money to a candidate without the contribution being traceable.

That s no problem in Alabama. The individual or interest can send the money to a political action committee, which sends it to another PAC, which may then send it to still another PAC or even more before it eventually gets to the candidate. The candidate will have no doubt about where the money really came from, of course, but the conscientious voter trying to determine the source of a candidate s funding will be thwarted. What should be an easy-to-follow paper trail from contributor to candidate is obscured.

Outside the world of politics, such activity is called money laundering, and it s a crime. But it s all perfectly legal in the political arena.

A recent report in the Birmingham News noted 656 active PACs in the state. Many of these are run by lobbyists, who can take PAC contributions from various sources and shuffle them through other PACs, making it all but impossible to tell who gave what to whom.

" Suddenly it s a big tangle of money," Rachel Weiss of the Institute of Money in State Politics told the News. " PACs being able to transfer money to a second PAC, and then to a third PAC, really limits citizens ability to know where that money is coming from."

Exactly. It s an indefensible practice that insults the voters. Alabamians should demand that the Legislature address it in the next session.

---- Index References ----

Company: PAC

10/18/06 Birmingham News (AL) 11
2006 WLNR 18153186

Birmingham News (AL)
Copyright ©2006 Birmingham News. All Rights Reserved.

October 18, 2006

*Volume 119*
Section: EDITORIAL

Shell game treats voters like suckers

BOB BLALOCK

*It is the classic street swindle: The con man places a small object, sometimes money, under one of three walnuts or the like. He shuffles them around, challenging bettors to guess which walnut hides the object. With deft sleight of hand, the con man wins this shell game far more often than not. The duped bettor ends up playing the sucker.*

There's another shell game being played in Alabama elections: Powerful special interests, with candidates' complicity, shuffle campaign contributions between political action committees to keep the public from knowing who gave the money to the candidate. In this shell game, PACs and candidates play the poor voter for the sucker; there's no way he can win at untangling the donations passing through a thicket of PACs and figure out which interest groups are funding which candidates.

Hiding the source

A Birmingham News analysis Sunday of 60 PACs run by seven lobbying or political consulting groups found that more than $13 million had been given to those PACs so far this election cycle. The PACs shifted $3.2 million of that in 828 separate transactions, which made sure voters couldn't tell where the money came from originally.

The largest donors to those 60 PACs are a who's who of special interests intent on influencing what happens - or doesn't - in Montgomery: the Alabama Education Association's PAC; dog track owner Milton McGregor and his two tracks; trial lawyer Jere Beasley's firm; Alabama Power Co.'s employee PAC; Drummond Co.; soft drink bottlers; nursing home groups run by Norman Estes; and Montgomery banker Bobby Lowder and his Colonial Bancgroup.

The candidates who received the most money from these PACs are Republican Gov. Bob Riley, $1.7 million; Democratic Lt. Gov. Lucy Baxley, $534,000; state Senate Pro Tem Lowell Barron, $358,800; and House Speaker Seth Hammett, $334,500.

*Has Riley received massive amounts of money from AEA? Have gambling bucks buoyed Baxley's campaign war chest? We'll never know for sure, and that's the way contributors and candidates alike want it.*

'' Candidates tell us where they want the money to go,'' Beasley said. Candidates don't want ° the stigma of the trial lawyer'' attached to their candidacy, he said.

It makes for a nice little money-laundering scheme that cleanses such ° stigmas'' from campaign contributions, the better to deceive the voters. Under Alabama law, that scheme is legal, but it is just as wrong as the shell-game swindler hustling suckers on the street. In fact, it's much worse.

Candidates for political office are campaigning for a position of public trust. What trust can there be if candidates and their donors don't want the public to know who is funding candidates' campaigns? The whole process further erodes whatever

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

confidence the public has in the honesty of its elected officials.

Members of both political parties invariably say - and have said for years - they favor banning PAC transfers. Somehow, the Legislature never gets around to passing such a law. If s not for lack of trying on the part of a few dedicated souls. State Rep. Jeff McLaughlin, D-Guntersville, has sponsored a bill for the past five years, which the House has passed several times. The bills have never come close in the Senate.

*A special session*

The News' editorial page urged Riley this summer to call a special session on banning PAC-toPAC transfers and tightening the state ethics law, which allows lobbyists to wine and dine elected officials at up to $250 a day without reporting it. We believed that election-year pressure on lawmakers would force them to do the right thing.
The governor didn' t take the bait, saying Democrats would accuse him of political grandstanding. Riley has said he believes the Legislature will pass a ban in its 2007 session.

But why would next year' s legislative session be any different from this year' s, and last year' s, and the one before that, and the one before that . . .?

There' s really only one way to force lawmakers into changing a system under which they benefit. Voters have to let them know the stigma of candidates and PACs playing them for suckers is much worse than the stigma of candidates getting money from trial lawyers, or gambling interests, or the teachers union, or any other special-interest group.

Unless that happens, the PAC hustlers will keep running their little shell game.

------------------------

Bob Blalock is editorial page editor of The News. Email him at bblalock@bhamnews.com.

**---- Index References ----**

Company: ALABAMA POWER CO; COLONIAL SA; PAC; SOUTHERN CO (THE)

News Subject: (Government (1GO80); Political Parties (1PO73); Public Affairs (1PU31))

Region: (USA (1US73); Americas (1AM92); Alabama (1AL90); North America (1NO39))

Language: EN

Other Indexing: (AEA; ALABAMA; ALABAMA EDUCATION ASSOCIATION; ALABAMA POWER CO; COLONIAL; DRUMMOND CO; HOUSE SPEAKER SETH HAMMETT; LEGISLATURE; PAC; PACS; SENATE; SENATE PRO TEM LOWELL BARRON; STATE REP) (Baxley; Beasley; Bob Blalock; Bob Riley; Bobby Lowder; Candidates; Democrats; Email; Jeff McLaughlin; Jere Beasley; Lucy Baxley; Members; Milton McGregor; Norman Estes; PACs; Riley)

Word Count: 889

End of Document                                                © 2011 Thomson Reuters. No claim to original U.S. Government Works.

1/28/07 Montgomery Advert. (Ala.) A98
2007 WLNR 27813748

Montgomery Advertiser (AL)
Copyright ©2007 Gannett

January 28, 2007

Section: A

PAC-TO-PAC DECEPTION

January 28, 2007

Timing right to ban transfers Talk of gridlock and insurmountable partisan rancor has dominated discussion of the new state Senate, and not without justification under new operating rules that have been decried as heavy-handed by the minority. However, there does appear to be broad agreement on one important issue the Senate has failed to address for several years. Measures to end the deceptive practice of transferring campaign funds among political action committees in order to obscure the real source of the money have passed the House of Representatives year after year, only to meet their demise in the Senate. Somehow they never seem to make it to the floor, where at least senators would have to go on the record on these bills with a yea or nay vote. A report by The Associated Press indicates that this could change in the coming session. Changes in the Senate leadership, along with fresh memories of the 2006 campaigns, may have produced a friendlier climate for the legislation, some members say. PAC-to-PAC transfers are a poisonous element of the political process. They deprive voters of the opportunity to see clearly who is funding political campaigns and to weigh that information in making their decisions at the polls. Current law makes this deception entirely too easy to perpetrate. An individual or interest can send money to one PAC, which can then send it another PAC, which can then send it to another PAC. The process can be repeated several times, until the tracing of the money from the original contributor to the intended recipient is made impossible. Never doubt, however, that the recipient knows who really provided the money. The expressed support for the ban has never been greater. Prohibiting PAC-to-PAC transfers was part of the broad platforms put forth by both the Republican and Democratic parties in last year' s elections. Both candidates for governor called for a ban. So did both candidates for lieutenant governor. " I have a good feeling about the PAC-to-PAC transfers bill," Sen. Hinton Mitchem, the new Senate president pro tem, told AP. " I feel like it s got the best chance I ve seen in the last five years." Good feelings alone don t pass bills, of course, but it is encouraging to see what seem to be enhanced prospects for finally passing this sorely needed bill. Alabamians can help by pushing their legislators for passage. Letters for members of either house may be sent to 11 S. Union St., Montgomery AL 36130.

ON THE WEB VNot all members of the Legislature have e-mail addresses, but to contact those who do, go the following site and click on House or Senate:

www.legislature.state.al.us

---- Index References ----

Company: HOUSE OF REPRESENTATIVES; AP; PAC

News Subject: (Government (1GO80); Legislation (1LE97))

Region: (Alabama (1AL90); North America (1NO39); Americas (1AM92); USA (1US73))

Language: EN

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

2/9/07 Montgomery Advert. (Ala.) A4
2007 WLNR 27814279

Montgomery Advertiser (AL)
Copyright ©2007 Gannett

February 9, 2007

Section: A

PEOPLE WANT ETHICS REFORMS Degree of support eliminates excuses

February 9, 2007

excuses

A ny politicians who still cling to the claim that no one in Alabama cares about ethics rules ex cept a few do-gooders and a handful of editorial writers would be well advised to consider the results of a new survey. The support for a series of specified reforms is overwhelming -- not bare majorities, but percentages as close to unanimity as any survey on any topic is likely to find.

The survey, led by Samford University political science professor Randolph Horn, was unveiled last week at the annual meeting of the Public Affairs Research Council of Alabama. It indicates an unmistakable desire for stricter standards. Even if the results are taken at the very lowest end of the 5.1 percent margin of error, they still represent overwhelming levels of support.

91.8 percent of those surveyed said lobbyists should be required to report all spending on legislators. Under the current - and indefensibly lax - law, a lobbyist can spend up to $250 a day on a legislator without reporting it.

89.3 percent of respondents said the law should not allow transfers of money among political action committees, a commonly used dodge to obscure what should be a direct line between the contributor and the recipient. Current law makes it easy for an individual or interest to funnel money through several PACs before it gets to the intended recipient. That recipient, be assured, knows full well who sent the money, but a voter trying to track the money is stymied by the multiple transfers.

91.6 percent of those surveyed said lobbying rules should apply throughout state government, not just to the Legislature. Of course they should. Legislators are not the only decision-makers in state government.

88.7 percent of respondents said any special spending project should be identified in an agency's budgets, thus ending the practice of" pass-through pork," in which legislators direct funds to agencies with the understanding that the money is to go for projects in their districts and at their direction.

Outside of Mom, apple pie and the flag, it's hard to imagine anything enjoying broader public support than this. Legislators have no excuse for continuing to ignore such obvious public concerns.

---- Index References ----

Company: SAMFORD UNIVERSITY

News Subject: (Government (1GO80); Legislation (1LE97); Local Government (1LO75))

Region: (Alabama (1AL90); North America (1NO39); Americas (1AM92); USA (1US73))

© 2011 Thomson Reuters. No claim to original U.S. Government Works.