IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, etc., et al., <br>     Plaintiffs, <br><br> v. <br><br> LUTHER STRANGE etc., et al., <br>     Defendants. | CIVIL ACTION NO. <br> 5:11-cv-02449-JEO |

## Plaintiffs' Reply Brief in Support of Motion for Partial Summary Judgment

### I. Introduction.

It is now apparent that the defendants have failed to come to grips with the two essential elements of plaintiffs' Motion for Partial Summary Judgment. First, this case is solely about the State's restriction on money that the Alabama Democratic Conference (ADC) will use for independent expenditures on voter education, advocacy, voter protection, and get-out-the-vote (GOTV) efforts. The defendants' briefs (Docs. 7 and 14) confuse the case law on candidate-bound funds and the case law applying to funds bound for voter education, voter advocacy, and GOTV.

Second, the defendants have failed utterly to address the fact that the proposed ban on PAC-to-PAC transfers constitutes an unconstitutional infringement on the freedom of association.

This reply brief will untangle those strands of the law.

1

## II. Statement of undisputed facts.

The defendants have disputed no facts contained in plaintiffs' brief supporting the motion for partial summary judgment: "the State assumes these facts to be true only for purposes of the pending motions" (Doc. 14 at 3 n.1).

## III. The defendants continue to conflate cases about contributions to candidates with those about independent expenditures.

We repeat that the ADC has established a mechanism involving two separate accounts, one for its principal activities of voter education, advocacy, voter protection, and GOTV efforts (the "independent-expenditure account"), and a second account for its occasional contributions to candidates to assist with filing fees and the like. The second "candidate" account will adhere to the ban on PAC-to-PAC transfers. This case involves only the independent-expenditure account. Plaintiffs challenge only the restriction on the ban on contributions to and expenditures by this independent-expenditure account for the ADC's voter education, advocacy, voter protection, and GOTV efforts. Plaintiffs' attack thus addresses only independent expenditures and not candidate contributions.

Since "preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances," *Federal Election Com'n v. National Conservative Political Action Committee,* 470 U.S. at 496-97, and "independent expenditures ... do not give rise to corruption or the

appearance of corruption," *Citizens United v. Federal Election Com'n,* 130 S.Ct. 876, 908, 909 (2010), it is important to differentiate cases about contributions which will go to candidates from those which will go to independent expenditures.

The defendants ask the Court to "to assess the measure's value as an anticorruption device," Doc. 14 at 6-7. While a PAC-to-PAC transfer ban may be an anti-corruption device if the money will end up in a candidate's account, money given to ADC by another PAC for independent expenditures (voter education, advocacy, voter protection, and GOTV efforts) "do[es] not give rise to corruption or the appearance of corruption."

The defendants argue that ADC's method of complying with the law should be ignored because a PAC that uses **any** money for contributions to candidates is tainted. The courts have firmly established, however, that the Constitution does not require an organization to give up its right to gather money for voter education, advocacy, voter protection, and GOTV drives if it also runs a separate, segregated account to gather funds for candidate contributions – and complies with State law restrictions on such candidate-targeted funds.

In *Carey v. Federal Election Com'n,* --- F.Supp.2d ----, 2011 WL 2322964 (D.D.C. 2011), the plaintiff National Defense Political Action Committee complained that federal law

> impose[s] unconstitutional limits on amounts an individual may contribute to a non-connected political committee such as NDPAC with respect to independent

3

> expenditures. … Plaintiffs do not contest the Commission's authority to regulate "hard money" under [2 U.S.C.] § 441a(a)(1)(A) and (B), which limits contributions to candidates, a candidate's authorized committee, and any political committee established and maintained by a national political party.

*Carey,* 2011 WL 2322964 at *3. The district court granted a preliminary injunction:

> The Commission shall not enforce 2 U.S.C. §§ 441a(a)(1)(C) & 441a(a)(3) against Plaintiffs with regard to independent expenditures, as long as the NDPAC maintains separate bank accounts for its "hard money" and "soft money," proportionally pays related administrative costs, and complies with the applicable monetary limits of "hard money" contributions. All "soft money" contributions used toward federal independent expenditure campaigns shall be free of any contribution limits.

*Carey,* 2011 WL 2322964 at *10.

Separate funds also were upheld in *Emily's List v. Federal Election Com'n,* 581 F.3d 1 (DC Cir. 2009). There the court described EMILY's List as "a hybrid non-profit: It makes expenditures for advertisements, get-out-the-vote efforts, and voter registration drives; it also makes direct contributions to candidates and parties." *Emily's List,* 581 F.3d at 12. EMILY's List sued to block FEC rules which "dictat[ed] that covered non-profits pay for a large percentage of election-related activities out of their hard-money accounts." *Emily's List,* 581 F.3d at 4. "Hard money" is the term for individual contributions subject to a $5,000 annual limit. Under FEC rules, EMILY's List was already segregating the hard money from the soft money (which is not subject to

4

the annual limit). The court held that the FEC regulation "violates the First Amendment because non-profits are constitutionally entitled to pay 100% of the costs of such voter drive activities out of their soft-money accounts." *Emily's List,* 581 F.3d at 16 (citing cases).

## IV. The level of scrutiny to be applied by this Court.

As plaintiffs noted in their opening brief (Doc. 10 at 15-17), there are generally three levels of scrutiny applied in First Amendment challenges to election or campaign-finance laws: exacting scrutiny, closely drawn scrutiny, and strict scrutiny. We noted that under any of these, there must be a governmental interest (of varying strengths, depending on the level of scrutiny) and that "the only legitimate and compelling government interests" are the prevention of "*quid pro quo* corruption" or the appearance of such corruption. Doc. 10 at 17-18.

However, the defendants have characterized our discussion of the levels of scrutiny as the "plaintiffs conced[ing] that the PAC transfer ban need not withstand strict scrutiny." Doc. 14 at 3. To the contrary, plaintiffs did not concede the PAC-to-PAC transfer ban meets strict scrutiny, but argued that the absence of a legitimate governmental interest meant that the State could not meet **any** level of scrutiny. Doc. 10 at 17-18. Since the defendants have argued that Act 2010-765 "need not withstand strict scrutiny" (Doc. 14 at 2, 3) and that it meets the "exacting scrutiny" standard (Doc. 14 at 5), we will discuss the application of the three standards to the Act.

5

### A. Exacting scrutiny

The defendants argue that exacting scrutiny "is precisely the standard that should be used to evaluate the PAC transfer ban" (Doc. 14 at 5). However, within the field of campaign finance, the Supreme Court has applied exacting scrutiny only to disclaimer and disclosure requirements, which the Court has said "may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." *Citizens United,* 130 S.Ct. at 914 (2010) (citations and internal quotation marks omitted). Act 2010-765's ban on PAC-to-PAC transfers is a "ceiling on campaign-related activities" – a ceiling of zero.

Act 2010-765 does not require a disclaimer, which is a notice of who paid for and/or who did or did not authorize a campaign ad. The FEC gives the following as examples: "Paid for by the Sam Jones for Congress Committee" or "Paid for by the XYZ PAC (www.xyzpac.org) and not authorized by any candidate or candidate's committee."[1]

Nor does the Act require a disclosure, which is a statement of the funds received and expended, the source of the receipts, and the recipient of the expenditures. Disclosures are windows into the finances

---

[1] Federal Election Commission, *Campaign Guide for Congressional Candidates and Committees* (2008) at 65, available at http://fec.gov/info/publications.shtml (last accessed 15 September 2011).

of a political group. In contrast, the Act requires no disclosure of PAC-to-PAC transfers because it bans most of those transfers.[2]

Because the Act does not involve disclaimers or disclosures, exacting scrutiny is not the appropriate standard.

### B. Closely drawn scrutiny

Closely drawn scrutiny applies to contribution limits, but not to bans on contributions.

The Supreme Court held in *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (citations and internal quotation marks omitted):

> Even a significant interference with protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms.

Note that *Buckley* dealt with a restriction on the amount of contributions, not a ban on contributions. The Court explained the reason for a restriction while still allowing the "symbolic expression of support."

> A limitation on the amount of money a person may give to a candidate or campaign organization thus involves little direct restraint on his political communication, for it permits the symbolic expression of support evidenced by a contribution but does not in any way infringe the contributor's freedom to discuss candidates and issues.

---

[2] Other parts of the Fair Campaign Practices Act (not amended by Act 2010-765) have required disclosure of nearly all transfers of campaign funds since 1988.

7

*Buckley*, 424 U.S. at 21. If the State bans a contribution entirely, the contributor is deprived of the "symbolic expression of support."

What is the "sufficiently important interest" which must be present to meet the "closely drawn scrutiny" test? In *Buckley,* the Court upheld the federal restrictions on the size of campaign contributions because the law "limit[ed] the actuality and appearance of corruption resulting from large individual financial contributions…." *Buckley,* 424 U.S. at 26. In later cases, the Court has made clear "that preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances." *Federal Election Com'n v. National Conservative Political Action Committee,* 470 U.S. 480, 496-97 (1985).

In summary, a complete ban on a type of contribution is not judged under the closely drawn scrutiny test. If it were, the ban would not meet the "sufficiently important interest" part of the test.

### C. Strict scrutiny

As we noted in our opening brief, the Eighth Circuit has held, "State-enforced limits on contributions to political action committees stifle not only free political speech, but also free political association, and are reviewed according to a strict scrutiny standard." *Russell v. Burris,* 146 F.3d 563, 571 (8th Cir. 1998) (citation and internal quotation marks omitted). The strict scrutiny standard "requires the Government to prove that the restriction furthers a compelling interest

8

and is narrowly tailored to achieve that interest." *Citizens United,* 130 S.Ct. at 898 (2010) (citation and internal quotation marks omitted).

If strict scrutiny is applied to Act 2010-765, the State must prove that the restriction furthers a compelling governmental interest and is narrowly tailored to achieve that interest, see *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 786 (1978); *Elrod v. Burns,* 427 U.S. 347, 362 (1976); *Buckley,* 424 U.S., at 25. That means the State must show that the Act serves the interest of preventing *quid pro quo* corruption or its appearance. Because contributions to the ADC independent-expenditure account are not and cannot be contributions to candidates, there can be no actuality or appearance of *quid pro quo* corruption.

## V. Defendants' Reply does not dispute that the ban on PAC-to-PAC transfers violates the freedom of association protected by the First Amendment.

As noted in plaintiffs' Motion for Summary Judgment, the ADC is associated in a number of ways with the Alabama Democratic Party, which also is a PAC, as well as with other PACs and with various candidates, all with common political interests.

The PAC-to-PAC ban criminalizes future financial exchanges between PACs even where the exchanges go exclusively for political advocacy. "If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech." *Citizens United,* 130 S.Ct. at 904 (2010).

9

Such restrictions are "subject to the closest scrutiny." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-461 (1958).

The State of Alabama does have a legitimate interest in deterring and detecting corruption. But there is no corruption or appearance of corruption when individuals, PACs, corporations, unions, or other entities associate to further their political goals. That is what Americans are supposed to do. The State of Alabama has no legitimate interest in restricting associations of individual citizens or PACs engaged in voter education and advocacy, GOTV, and voter protection efforts such as through the ADC independent-expenditure account.

## VI. Conclusion

The ADC does not seek to hide or launder contributions to candidates. The ADC separate-account mechanism recognizes and completely fulfills the state's legitimate interest in avoiding corruption or the appearance of corruption through contributions to candidates. Indeed, the ADC mechanism shows an unexceptionable method by which the state could tailor legislation to meet its legitimate goals while avoiding overbreadth that infringes the First Amendment. In sum, the defendants have vigorously attacked a straw man while glossing over, ignoring, and failing to justify its unconstitutional restriction on the rights of its citizens to speak and to associate in the advancement of their common interests. The PAC-to-PAC ban is unconstitutional as it expands to the non-candidate expenditures by the ADC, and it cannot stand.

Submitted by,

| | /s/ Edward Still |
|---|---|
| Osaygefo Grubbs | Edward Still |
| Joe M. Reed & Associates, LLC | 130 Wildwood Pkwy STE 108 |
| 524 S. Union Street | PMB 304 |
| Montgomery, AL 36104 | Birmingham AL 35209 |
| Phone: 334-834-2000 | Phone & fax: 205-320-2882 |
| Fax: 334-834-2088 | email: still@votelaw.com |
| email: ogrubbs@bellsouth.net | |

John K. Tanner
3743 Military Rd, NW
Washington DC 20015
Phone: 202-503-7696
Email:
john.k.tanner@gmail.com

CERTIFICATE OF SERVICE

      I certify that on 18 September 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

James W. Davis
Winfield J. Sinclair
William Parker Jr.
Attorney General's Office
PO Box 300152
Montgomery, AL 36130-0152
jimdavis@ago.state.al.us
wparker@ago.state.al.us
wsinclair@ago.state.al.us

/s/ Edward Still