IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 5:11-cv-02449-JEO |
| v. | |
| LUTHER STRANGE in his official capacity as the Attorney General of Alabama; et al., | |
| Defendants. | |

## Plaintiffs' Post-Argument Memorandum

### I. Standard of proof.

Even if the Attorney General is correct that there is only one "mid-level" standard of scrutiny, the government still has the burden of demonstrating that it has a "sufficiently important interest" and it has used a "closely drawn" method of meeting that interest. In *Randall v. Sorrell,* 548 U.S. 230 (2006), the Supreme Court summarized the *Buckley v. Valeo* holding on contributions:

> Consequently, the Court wrote, contribution limitations are permissible as long as the Government demonstrates that the limits are "closely drawn" to match a "sufficiently important interest."

*Randall v. Sorrell,* 548 U.S. at 247, quoting *Buckley v. Valeo,* 424 U.S.

1

1, 25 (1976). And that sufficiently important interest is "limited to *quid pro quo* corruption." *Citizens United v. Federal Election Com'n,* 130 S.Ct. 876, 909 (2010).

Although the Supreme Court in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 131 S.Ct. 2806 (2011), lists cases in which the Court has upheld restrictions under the "less onerous" level of scrutiny, the Court omitted *Randall v. Sorrell* (striking down contribution limits because they were not closely drawn), and *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, Cal.,* 454 U.S. 290 (1981) (same).

In addition, lower courts have struck down some state laws under that standard. *Emily's List v. Federal Election Com'n,* 581 F.3d 1 (DC Cir. 2009) (law "restrict[ing] how non-profits may spend and raise money to advance their preferred policy positions and candidates"); *Foster v. Dilger,* 2010 WL 3620238 (E.D.Ky. 2010) (limits on contributions by individuals).

## II. Contradictions in the Attorney General's interpretation.

The Attorney General argues that the statute only forbids a PAC-to-PAC "contribution, expenditure, or other transfer of *funds,*" so in-kind contributions from one PAC to another PAC (and another and another…) would be legal. That is, it would be legal for one PAC to rent cars, print materials, broadcast messages, purchase food, or rent a space for an event and then transfer the right to what it had rented or

purchased to another PAC, such as the ADC. While the State thus renders the rationale for its PAC-to-PAC ban tenuous, the State also argues that the ADC sample ballot, whether published by the ADC or merely distributed by them after an in-kind donation from another PAC, would constitute a contribution to each endorsed candidate. The State's position is both internally inconsistent and contrary to the law, as set forth below.[1] The upshot of these two arguments is that the activity that unquestionably is political "speech" (the endorsements on the sample ballot) receives the least favored treatment under the statute, as interpreted by the Attorney General.

### III.   In-kind transfers

The Attorney General now argues that "in-kind transfers" are not covered by the amended statute because they do not involve a "transfer of funds." Apparently, the ADC could create a wish list or "bridal registry" of items it needed. TRIAL (the PAC of Alabama Association for Justice) could go to the printers and pay for the printing of the sample ballots; A-VOTE (the AEA's PAC) could go to the car rental agency and pay for van rentals for Election Day; and the

---

[1] The Attorney General made this point while arguing that the sample ballots would have to be funded by the ADC Candidate Fund, but would be handed out to voters driven to the polls as part of GOTV activities. This, the Attorney General argued, would constitute an intermixture of funds from the Candidate Account and the GOTV Account. As explained in Part V, endorsements of candidates are not contributions to the candidates.

3

Democratic Party could buy prepaid gas cards and give them to ADC for fueling the vans and volunteer vehicles.

This would still build inefficiencies into the GOTV operation by creating an inflexible budget. If there was a last-minute need for more of one item and less of another, the ADC would have to get another organization to change its spending.

More importantly, under this interpretation, the State would tell ADC how it could run its GOTV operation. As the Chief Justice said in *Federal Election Com'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 477 n.9 (2007):

> That argument is akin to telling Cohen that he cannot wear his jacket because he is free to wear one that says "I disagree with the draft," cf. *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), or telling 44 Liquormart that it can advertise so long as it avoids mentioning prices, cf. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Such notions run afoul of "the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 573, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995).

IV. **Transparency**

Because Act 2010-765 has the short title "Congressman Mike Rogers/Jeff McLaughlin Campaign Finance Transparency Act," the State has emphasized the "transparency" engendered by the Act. The

Attorney General argued that "transparency" includes more than disclosures, citing three cases from its motion to dismiss, Doc. 7: *Minnesota Citizens Concerned for Life, Inc. v. Kelley,* 427 F.3d 1106, 1112-13 (8th Cir. 2005) ("*MCCL*"); *Mariani v. U.S.,* 212 F.3d 761, 775 (3rd Cir. 2000); *State v. Moyer,* 348 Or. 220, 230 P.3d 7, 17 (Or. 2010) (en banc). The three cases arise out of challenges to campaign finance laws forbidding the making of contributions in the name of another (*Mariani* and *Moyer*) and transferring money from one candidate committee to another (*MCCL*).

These cases are inapposite. First, ADC is not challenging the provision of Alabama's Fair Campaign Practices Act forbidding the making of contributions in the name of another. Ala. Code, § 17-5-15(a).

Second, in *MCCL,*

> The district court found that Minnesota bans transfers between candidate-committees to prevent circumventing the contribution/spending limits,[2] to avoid the appearance of corruption, and to restrict those in power from funneling money to those seeking power.[3]

---

[2] Alabama has no spending limits, and its only limit on contributions is that "corporations may give $500.00 contributions to any number of candidates, political parties, or PACs and, for PACs, the corporation can give a $500.00 contribution with respect to any election, state, county, or municipal, primary, primary run-off or general, occurring anywhere in the state in a given calendar year." Ala. Attorney General's opinion to Hon. Jim Bennett, Secretary of State, dated 22 July 1999, No. 99-255.

[3] The last reason given in the quotation is a "leveling the playing field" justification, which has been rejected in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,* 131 S.Ct. 2806, 2825 (2011).

5

*MCCL,* 427 F.3d 1112. The only one of those reasons arguably applicable to Alabama is the "appearance of corruption." But, once again, the State runs into the Supreme Court's limitation of corruption: "[I]ndependent expenditures ... do not give rise to corruption or the appearance of corruption." *Citizens United,* 130 S.Ct. at 908, 909. See also, *Randall v. Sorrell,* 548 U.S. at 248, 261 (2006), holding that corruption or its appearance is the only justification a state may use for a restriction on contributions and that the burden of proof is on the government ("we have found nowhere in the record any special justification that might warrant a contribution limit so low or so restrictive as to bring about the serious associational and expressive problems that we have described").

## V.  Endorsement and coordination

A question from the Court during the State's rebuttal indicated some concern whether the ADC's endorsement constitutes coordination with the candidate. The Plaintiffs have two responses.

First, PACs and corporations have been endorsing candidates for decades in Alabama,[4] but no Attorney General or District Attorney

---

[4] For instance, this past week, the Alabama Farmers Federation endorsed a number of Republican candidates. See Associated Press, "Alabama Farmers Federation endorses Cavanaugh, Malone, other Republicans," 18 November 2011, at http://bit.ly/soEah8. In 2010, the Conservative Christians of Alabama issued a video with its endorsements. See "Conservative Christians of Alabama Candidate

6

has deemed the endorsements to be expenditures (whether called in-kind or coordinated). The same applies on the federal level. In *Federal Election Com'n v. Christian Coalition,* 52 F.Supp.2d 45, 94 (D.D.C. 1999), the Court noted,

> The [Bush–Quayle '92] campaign did seek Pat Robertson's endorsement, and did rent a mailing list from the [Christian] Coalition to enhance the value of that endorsement, but the FEC has not alleged that either Robertson's endorsement or the rental terms were prohibited contributions as "things of value" given to the campaign.

Second, in arguing that the mere use of a sample ballot constitutes coordination, the State confuses coordination with a candidate with the right of individuals and organizations to associate in furtherance of common goals. The State has never addressed the severe infringement of the PAC-to-PAC ban on the right of association. There is no question that the ADC has the right to associate with other organizations (which because they are engaged in election advocacy, necessarily are PACs under Alabama law) to advance common interests. The ADC associates closely with the Democratic Party (and others) regarding general elections, and with non-party organizations during primary elections. The State has a limited right to regulate activities of political parties where they perform governmental functions, *Democratic Party of the United States v. Wisconsin ex rel. La*

---

Endorsement 2010 GOP Primary," at
https://www.youtube.com/watch?v=dFWE0GY1fbE.

*Follette*, 450 U.S. 107 (1981), but it can only regulate other associations to the limited extent necessary to protect a compelling state interest: here, corruption. "There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments.... The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973).

**VI.  Voting Rights Act**

The PAC-to-PAC ban also directly implicates the right to vote. As we have noted, in assigning federal observers to numerous Alabama counties in recent years, the Department of Justice necessarily has made a determination that the observers are "necessary to enforce the guarantees of the 14th and 15th Amendments." 42 U.S.C. 1973f(a)(2)(B). That is, there must have been an official determination that black voters are threatened by harassment at the polls on account of their race, denial of necessary assistance in voting or to the right to choose what person provides such assistance, or other racially discriminatory treatment that interferes with their exercise of the franchise at the polls on Election Day. *See, Harris v. Graddick*, 593 F. Supp. 128 (M.D. Ala. 1984).

Plaintiffs' declaration (Doc. 9-1) establishes that the activities of the ADC protect minority voters from such discrimination at the polls on Election Day. The relationship to voting is direct and explicit. The

8

ban on PAC-to-PAC transfers will, on the record before this court, interfere with the ability of the ADC to engage in protection of voters at the polls on Election Day. While the State avers that someone, somewhere will be able to step in and provide such protection, such gossamer prospects exist, if at all, far beyond the looming March primary elections.

Submitted by,

/s/ Edward Still
Edward Still
PMB 304
130 Wildwood Pkwy STE 108
Birmingham AL 35209
Phone & fax: 205-320-2882
email: still@votelaw.com

Osaygefo Grubbs
Joe M. Reed & Associates, LLC
524 S. Union Street
Montgomery, AL 36104
Phone: 334-834-2000
Fax: 334-834-2088
email: ogrubbs@bellsouth.net

John K. Tanner
3743 Military Rd, NW
Washington DC 20015
Phone: 202-503-7696
Email: john.k.tanner@gmail.com

CERTIFICATE OF SERVICE

I certify that on 23 November 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

James W. Davis
Winfield J. Sinclair
William Parker Jr.
Attorney General's Office
PO Box 300152
Montgomery, AL 36130-0152
[jimdavis@ago.state.al.us](mailto:jimdavis@ago.state.al.us)
[wparker@ago.state.al.us](mailto:wparker@ago.state.al.us)
[wsinclair@ago.state.al.us](mailto:wsinclair@ago.state.al.us)

/s/ Edward Still