FILED
2014 Feb-14 PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, *et al.*, )<br>)<br>)<br>)<br>*Plaintiffs,* )<br>)<br>v. )<br>)<br>LUTHER STRANGE, in his official capacity as Attorney General of Alabama, *et al.*, )<br>)<br>)<br>)<br>*Defendants.* )<br>) | Civil Action No.<br>5:11-cv-02449-JEO |

### MOTION FOR PROTECTIVE ORDER
### BY DEFENDANT LUTHER STRANGE

Alabama Attorney General Luther Strange, sued in his official capacity, respectfully moves the Court to enter a protective order precluding the Rule 30(b)(6) deposition of his Office noticed for February 25, 2014. *See* Fed. R. Civ. P. 26(b)(2)(C) & (c)(1); Ex. A (deposition notice). Among other flaws, the proposed deposition is an unwarranted attempt to depose General Strange's lawyers concerning the legal arguments they might advance in this litigation. This is evidenced by the fact that the proposed subjects seek testimony almost exclusively on abstract legal propositions. Citing these objections, General Strange conferred with the plaintiffs in an effort to avoid the need for Court action. *Cf.* Fed. R. Civ. P. 26(c)(1). But that effort proved unsuccessful. Thus, for the reasons that follow,

1

the Court should protect General Strange from this potentially abusive discovery tactic.

## I. Background

This case presents an as-applied First Amendment challenge to a recently enacted Alabama campaign finance law. Seeking to close a well-known loophole for evading the State's campaign disclosure laws and covertly funneling money to candidates, the Alabama Legislature voted unanimously in 2011 to prohibit fund transfers from one political action committee to another. *See* Ala. Code § 17-5-15(b); docs. 7-2, 7-4 & 7-5 (historical abuses of PAC transfers). The plaintiffs—the Alabama Democratic Conference and five of its members—concede that the PAC transfer law is valid with respect to campaign money destined for candidates or officeholders. But they contend the law violates the First Amendment as applied to funds designated for "independent expenditures" the ADC says it would like to make.

This case is now before the Court on remand from the Eleventh Circuit. Reversing this Court's grant of summary judgment for the plaintiffs, the Court of Appeals explained that "material issues of fact" exist with respect to the "mixed questions of law and fact" on which the case turns. *Ala. Democratic Conf. v. Broussard*, No. 11-16040, 2013 WL 5273304 at *4 (11th Cir. Sept. 19, 2013). Examples of these issues include (1) "whether the [State's] anti-corruption interest is sufficient

in light of the evidence in the record" to justify applying the PAC transfer law to the ADC[1]; (2) "the burdens imposed on PACs by the transfer ban"; and (3) "the feasibility and effectiveness" of other possible measures. *Id.*

Since the Eleventh Circuit issued its order, the plaintiffs have sought discovery from the defendants in two forms. First, they served a series of written discovery requests, most of which were contention interrogatories. *See* Ex. B (requests and defendants' objections and responses). And second, relevant here, they have noticed the Rule 30(b)(6) deposition of General Strange's Office. *See* Ex. A. Attorney General Strange is a defendant in this action (in his official capacity), but he is also counsel, as are the undersigned Assistant Attorneys General. The Attorney General is "the chief law officer of the state, and on him are conferred various authorities and duties in connection with instituting and prosecuting, in the name of the state, suits and other proceedings . . . for the preservation and protection of the rights and interests of the state. Essentially all litigation concerning the interest of the state or any department thereof [lies] under the direction and control of the attorney general." *Chapman v. Gooden*, 974 So. 2d 972, 988 (Ala. 2007) (citing *Ex*

---

[1] The Court identified this issue of fact with respect to the State's first corruption-based argument, concerning the inherent potential for abuse arising from PACs that make candidate contributions in addition to purportedly independent expenditures. *See Ala. Democratic Conf.*, 2013 WL 5273304 at *4 &*3 n.4. But the statement applies equally to the State's other, ADC-specific corruption-based arguments. *See id.* at *3 n.4.

3

*parte Weaver*, 570 So. 2d 675, 679 (Ala.1990), and Ala. Code § 36-15-21 (internal quotation marks and citations omitted)).

The topics identified in the Rule 30(b)(6) notice closely resemble many of the contention interrogatories the plaintiffs previously served. And many of those contention interrogatories in turn closely track the issues previously briefed on appeal. *See* Ex. C (defendants' principal appellate brief) & D (defendants' reply brief on appeal). The specific subjects, along with the parallel interrogatories and pages of appellate briefing to which they relate, are as follows:

> 1. The application of law to the facts in the following situation: any preferential governmental benefits the ADC can provide its donors as a quid pro quo for contributions to the ADC. [*Cf.* Ex. B at 3-4 (interrogatory #5); *see also, e.g.*, Ex. C at 32-43[2]; Ex. D at 3-7, 13-16.]
>
> 2. The application of law to the facts in the following situation: political favors (as described in FEC v. NCPAC) the ADC receives when it makes an independent contribution. [*Cf.* Ex. B. at 4 (interrogatory #6); *see also, e.g.*, Ex. C at 32-43; Ex. D at 3-7, 13-16.]
>
> 3. Other than a ban on PAC-to-PAC transfers, other methods of regulation which make it possible to trace money from a contributor to the ultimate expenditure. [*Cf.* Ex. B. at 6 (interrogatory #11); *see also, e.g.*, Ex. C at 57; Ex. D at 22-26.]
>
> 4. Evidence that PAC-to-PAC transfers designated for independent expenditures have funneled money to candi-

---

[2] Page numbers for Exhibits C & D refer to the brief's native pagination, rather than to the PDF page number.

dates in Alabama or elsewhere in the United States in the last ten years. [*Cf.* Ex. B. at 7 (interrogatory #15).]

5. The application of law to the facts in the following situation: whether ADC's promise to make a contribution to a particular candidate from its candidate account in return for a contribution to ADC's independent expenditure account is a violation of Ala. Code § 17-5-15(a). [*Cf.* Ex. B. at 7 (interrogatory #16.a); *see also, e.g.*, Ex. D at 23.]

6. The application of law to the facts in the following situation: the requirement to report coordinated independent expenditures made by two or more non-candidate PACs. [*Cf.* Ex. B. at 8 (interrogatory #17).]

7. The application of law to the facts in the following situations: the corruption or appearance of corruption present in transfers from one PAC to another related PAC. [*Cf.* Ex. B. at 10 (interrogatory #21); *see alo, e.g.*, Ex. C at 32-37; Ex. D at 3-8.]

Ex. A at 2-3. In addition, the notice directs the Attorney General's Office representative to bring "[a]ll documents reviewed by the deponent in preparation for the deposition." *Id.* at 1.

II. **The Deposition Improperly Seeks to Depose AG Strange's Legal Counsel.**

As explained further below, the plaintiffs' proposed deposition is objectionable because, notwithstanding the labels in the notice, most of the topics seek testimony on abstract legal propositions untethered from the facts of this case. But in the unique circumstances presented here, there is a more general reason for the Court to intervene. Consider what will happen if the proposed deposition is al-

5

lowed to proceed. The Attorney General's Office would be forced to designate either (a) one of the attorneys representing the defendants in this case or possibly (b), with respect to some of the topics, an attorney responsible for prosecuting violations of the PAC transfer law. Either way, the deposition would inherently and unacceptably intrude on the Attorney General's relationship with his lawyers and on important privileges he possesses.

Depositions of opposing counsel are highly problematic. They "disrupt[] the adversarial nature of our judicial system," they "lower[] the standards of the [legal] profession," they "add[] to the already burdensome time and costs of litigation" given the need to resolve work-product and attorney-client objections, and they "detract[] from the quality of client representation." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). As Justice Jackson once put it, "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring).

Accordingly, depositions of opposing counsel are highly disfavored. When an opposing-counsel deposition might lead to the disclosure of the attorney's litigation strategy, the Eighth Circuit requires the discovering party to carry a heavy burden. Specifically, the party must show: (1) that no other means exist to obtain the information, (2) that the information sought is relevant and nonprivileged, and

(3) that the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327. "Other courts have cast a similarly jaundiced eye on taking the deposition of opposing counsel and imposed similar limitations." 8A Charles Alan Wright, Arthur R. Miller, et al., Fed. Practice & Procedure § 2102 (3d ed.) (collecting cases) (available on Westlaw at "8A Fed. Prac. & Proc. Civ. § 2102"). Indeed, even courts that have criticized the Eighth Circuit approach have insisted that district Courts consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.). According to these courts, relevant considerations include "the need to depose the lawyer," "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," the "risk of encountering privilege and work-product issues," and "the extent of discovery already conducted." *Id.*; *see also Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-85 (D.D.C. 2011) (applying analysis from *Friedman* and Fed. R. Civ. P. 26(b)(2)(C)).

The *Shelton* rule is the correct approach regarding lawyer depositions, and would plainly apply here to preclude the plaintiffs' proposed deposition. But even if the Court follows the more "flexible" approach of *In re Friedman*, the deposition is still inappropriate. 350 F.3d at 72. This is so for at least three reasons.

7

First, it is not just likely but guaranteed that the proposed deposition will "encounter[] privilege and work-product issues." *Id.* It is impossible to conclude otherwise given specific content of the requests and the Eleventh Circuit's description of the issues as "mixed questions of law and fact." *Ala. Democratic Conf.*, 2013 WL 5273304 at *4. Indeed, every one of the seven proposed topics directly relates to one of the ultimate issues as described by the Eleventh Circuit. *See* Ex. A at 2-3. Moreover, although the *Freidman* Court likely had issues of *attorney-client* privilege in mind, this factor applies even more forcefully here given the additional privileges that may be involved. High-ranking government officials like the Attorney General are protected by a "mental process" privilege. *See, e.g.*, *United States v. Morgan*, 313 U.S. 409 (1941). In addition, the requests may raise questions of executive or deliberative-process privilege. *E.g.*, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). In addition, the requests may raise questions arising under the law enforcement investigatory privilege. *See, e.g.*, *Barnette v. Folmar*, 151 F.R.D. 685, 689 (M.D. Ala. 1993). If any deposition would "add[] to the already burdensome time and costs of litigation," then this one surely would. *Shelton*, 805 F.2d at 1327.

Second, the plaintiffs already know what the AG's Rule 30(b)(6) representative would or could say about the relevant topics. The plaintiffs have already probed these topics through written discovery requests. What is more, the plaintiffs

have the benefit of many pages of briefing from the prior appeal. As demonstrated in the preceding section above, the defendants' interrogatory responses and appellate briefs address each of the proposed topics. There is thus no "need to depose the lawyer," and the "extent of discovery already conducted" counsels against allowing the deposition to proceed. *Friedman*, 350 F.3d at 72.

Third, even if the plaintiffs had not already learned the defendants' legal arguments, it would still be unwarranted absent a far better showing of particularized need. This is because even apart from privilege issues, opposing-lawyer depositions intrinsically "disrupt[] the adversarial nature of our judicial system," "lower[] the standards of the [legal] profession," and "detract[] from the quality of client representation." *Shelton*, 805 F.2d at 1327. These more general reasons are surely what led *Freidman* to acknowledge as an independent consideration "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation." 350 F.3d at 72. In this case, any potential benefit from defense counsel's testimony on the proposed subjects is so minimal that it does not come close to overcoming the factors that make such depositions presumptively unwarranted.

Against all of this, it is no response to say that the Attorney General's Office could designate a prosecutor responsible for enforcing the PAC transfer law. Each of the foregoing considerations would apply equally to that situation. But that situ-

ation would raise other concerns as well. For example, it is unclear why such a prosecutor would be reasonably equipped to testify regarding these topics—making the "need to depose the lawyer" even less compelling. *Id.*

In sum, the plaintiffs' proposed Rule 30(b)(6) deposition of the Attorney General's Office is unwarranted under either the *Shelton* rule or *Friedman*'s more flexible approach. Either way, "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In addition, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). For these reasons, the Court should preclude the proposed deposition to protect Attorney General Strange from "annoyance, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

### III. The Deposition Improperly Seeks Legal Conclusions.

Items 1-3 and 5-7 are independently objectionable on grounds that they seek legal conclusions. Plaintiffs state their requests as if they concerned the "application of law to the facts," and in some instances, such a discovery request is permissible. The Federal Rules of Civil Procedure provides that

> [a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time."

Fed. R. Civ. P. 33(a)(2). However, a question that "seeks pure legal conclusions which are not related to the facts, but to the law of the case . . . exceeds the bounds of permissible discovery under the rule." *O'Brien v. International Brotherhood of Electrical Workers*, 443 F. Supp. 1182, 1186 (N.D. Ga. 1977).

*O'Brien* involved discovery requests that fell on either side of the line of permissibility. Applying the rules above, the court allowed a plaintiff to ask how specific acts or utterances allegedly made by the plaintiff violated a duty to the defendant. That question was tied to specific facts of the case. *Id.* However, the court did not allow an interrogatory asking how certain legal provisions relied on by the defendant were "not deprived of force and effect by operation of" a federal statute. *Id.* The latter question was not tied to specific facts of the case and improperly sought a legal conclusion.

Similarly, in *Kendrick v. Sullivan*, 125 F.R.D. 1 (D.D.C. 1989), the Court held that interrogatories seeking pure legal conclusions were improper. There, the interrogatories at issue asked whether certain hypothetical grants were unlawful, or

whether certain provisions of a statute were severable. *Id.* at 1, 4. The Court held, "[d]iscovery as to legal arguments is impermissible." *Id.* at 4.[3]

While Plaintiffs' topics appear on the surface to seek the application of law to the facts of the case, they do not. Plaintiffs intend to ask questions of pure law, and items 1-3 and 5-7 are in the same mold as the questions disallowed by the courts in *O'Brien* and *Kendrick*. Plaintiffs in this case do not intend to ask how a specific transfer ADC was made or received, on a specific date with specific facts, fits into the law (that question would be subject to different objections, but it likely would not impermissibly ask for a legal conclusion). Instead, Plaintiffs intend to ask hypothetically how a transfer might be improper, or generally how PAC-to-PAC transfers can be corrupt. To answer such a question, the witness would have to state a conclusion of law untethered to the facts of this case.

---

[3] *See also Mobile Oil Corp. v. Dep't of Energy*, 1982 WL 1135 *3 (N.D.N.Y. March 8, 1992) ("Interrogatories calling for an opinion based on hypothetical facts are improper."); *Abbot v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) ("The defect of this request is plain—plaintiffs have attempted to have the Government respond to a legal question unconnected to the facts of the case at bar."); *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, 1995 WL 625744 (D. Kan. 1995) (stating that requests for admissions that seek abstract opinions of the law or opinions of law unrelated to the facts of the case are improper); *Storck USA, L.P. v. Farley Candy Co., Inc.*, 1995 WL 153260 (N.D. Ill. 1995) ( "hypothetical questions" are not within purview of Rule 36); *Ransom v. United States*, 8 Cl. Ct. 646, 647 (1985) (same); *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973) (questions seeking "pure legal conclusions which are related not to the facts, but to the law of the case" are not appropriate).

Such discovery is therefore improper. The matters about which Plaintiffs seek testimony belong in a lawyer's brief or the Court's findings of law, not a deposition transcript.

> IV. **Assuming The Court Precludes The Deposition As To Subjects 1-3 And 5-7 Because They Seek Legal Conclusions, Subject 4 Can Be Handled Through Written Discovery.**

Plaintiffs category number 4 (the only category that does not call for a legal conclusion) requests testimony concerning "evidence that PAC-to-PAC transfers designated for independent expenditures have funneled money to candidates in Alabama or elsewhere in the United States in the last ten years." This subject matter can and should be effectively answered through a written interrogatory or a written deposition question. And in fact, Plaintiffs have already requested that information through written discovery; Defendants responded that they do not have the information requested, but will supplement as necessary. *See* Ex. B (interrogatories #16(b), 18, and 19).

> V. **To the Extent the Attorney General Himself is the Only Valid Rule 30(b)(6) Designee, the Plaintiffs Cannot Show the Extraordinary Circumstances That Would Defeat the Presumption Against a Deposition.**

Finally, the Court should preclude the plaintiffs' proposed deposition because in most respects it is the Attorney General himself who would be the only valid Rule 30(b)(6) designee. The rules require that "the persons designated [by the named organization] must testify about information known or reasonably available

to the organization." Fed. R. Civ. P. 30(b)(6). But virtually all of the proposed deposition topics involve questions of legal policy, answerable only by the Attorney General himself. Any Assistant Attorney General who might be designated could not speak authoritatively on the matters on which the plaintiffs seek testimony.

Absent extraordinary circumstances, high-ranking public officials should not have to spend their time giving depositions and responding to discovery. *E.g.*, *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999); *Kyle Eng. Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979). An exception may be made if the party seeking the deposition shows that the official has "direct personal factual information pertaining to material issues in an action … [that] is not available through any other source." *Green v. Baca*, 226 F.R.D. 624, 648 (C.D. Cal. 2005). Or, the deposition may be permissible upon a showing that the official approved or was personally involved in matters at issue in the litigation. *E.g.*, *Bagley v. Blagojevich*, 486 F.Supp.2d 786, 789 (C.D. Ill. 2007). Otherwise, "[h]igh ranking government officials are granted this limited immunity from being deposed when they have no personal knowledge to ensure that they have the time to dedicate to the performance of their governmental functions." *Marisol A. v. Guilliani*, 1998 WL 132810 *3 (S.D.N.Y. March 23, 1998). Plaintiffs have made no such showing here.

## VI. Conclusion.

For the foregoing reasons, the Court should issue an order forbidding the plaintiffs from taking a Rule 30(b)(6) deposition of the Attorney General's Office.

Respectfully submitted,

LUTHER STRANGE (ASB-0036-G42L)
   *Attorney General*

Andrew L. Brasher (ASB-4325-W73B)
   *Solicitor General*

s/William G. Parker, Jr.
Winfield J. Sinclair (ASB-1750-S81W)
James W. Davis (ASB-4063-I58J)
William G. Parker, Jr. (ASB-5142-I72P)
   *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
(334) 353-8440 (fax)
wsinclair@ago.state.al.us
jimdavis@ago.state.al.us
wparker@ago.state.al.us

**Attorneys for Attorney General Strange, District Attorney Broussard, and District Attorney Graham**

**CERTIFICATE OF SERVICE**

      I certify that on February 14, 2014, I electronically filed the foregoing document using the Court's CM/ECF system which will send notification of such filing to the following persons:

Edward Still
130 Wildwood Parkway
Suite 108 - PMP 304
Birmingham, AL 35209
(205) 320-2882
still@votelaw.com

John K. Tanner
JOHN TANNER LAW OFFICE
3743 Military Road NW
Washington, DC 20015
(202) 503-7696
john.k.tanner@gmail.com

Norman O Grubbs
JOE M. REED & ASSOCIATES LLC
524 South Court Street
Montgomery, AL 36104
(334) 834-2000
ogrubbs@bellsouth.net

                                                <u>s/William G. Parker, Jr.</u>
                                                Winfield J. Sinclair (ASB-1750-S81W)
                                                James W. Davis (ASB-4063-I58J)
                                                William G. Parker, Jr. (ASB-5142-I72P)
                                                *Assistant Attorneys General*