FILED
2014 Feb-19 AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 5:11-cv-02449-JEO |
| v. | |
| LUTHER STRANGE in his official capacity as the Attorney General of Alabama; et al., | |
| Defendants. | |

## Plaintiffs' Response to State's Motion for Protective Order

As set forth herein, Plaintiffs' proposed deposition of the Office of the Attorney General pursuant to Rule 30(b)(6), FRCivP, is a proper exercise of that Rule, designed to obtain answers to questions for which the Defendants provided evasive and unresponsive answers. A Rule 30(b)(6) deposition is the most expeditious way to obtain the information and narrow the issues for the Court within the limited period set for discovery.

1

## A. Two misunderstandings have led the Defendants to their concern over the 30(b)(6) deposition notice.

### 1. Defendants argue (in Sections II and V) that the deposition notice is directed to the Attorney General or one of the Assistant Attorneys General.

Plaintiffs have noticed a deposition of "the Office of the Attorney General," a governmental agency that has a website (see attached PDF of the site). The defense counsel use that name as part of their contact information (see the signature block on Doc. 39). Under Rule 30(b)(6), the Office is supposed to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." This is not a deposition of the Office or of Attorney General Luther Strange, but a representative of the Office who can answer questions about the seven subject-matter areas identified in the notice. This representative does not have to be a current employee of the Office, as long as it fulfills its "duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Starlight Int'l Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D. Kan. 1999).

### 2. Defendants argue that topics in the deposition will lead to questions of "pure law."

Plaintiffs have identified seven topics for the deposition. The answers to questions on most topics will be factual. For instance in Topic 1, Plaintiffs might ask, "What governmental benefit can the ADC provide to its donors?" The answer might be, "The ADC controls

2

patronage at the ____." Of course, the Plaintiffs will ask follow-up questions about proof of any such claim of control of patronage.

In other questions, the answer may be selected from several possible answers because the deponent understands the law. For instance, Plaintiffs might ask, "What corruption can occur if ___?" The deponent must understand the legal concept of "corruption" to answer the question.

Or Plaintiffs may ask, "What law would be violated if a PAC does ____?" The deponent's answer will be an identification of a law, but the selection of that law for the answer will most definitely be "tethered" to the facts in the question. Indeed, Plaintiffs used the phrase "application of law to the facts in the following situation" repeatedly as a signal that Plaintiffs sought *factual* answers, rather than interpretations of the law "untethered to the facts."


**B. Plaintiffs have noticed the 30(b)(6) deposition of the Office of Attorney General because of the refusal of the Defendants to give straight answers to several of the questions in Plaintiffs' earlier interrogatories.**

Plaintiffs have noticed the deposition to obtain straight answers to the topics covered by Plaintiffs' Interrogatories 5, 6, 11, 15, 16, 17, and 21. Plaintiffs do not seek answers to the other Interrogatories.

### 1. The various objections made by the Defendants.

The Defendants began their responses to Plaintiffs' discovery (Doc. 39-2) with more than a page of "General Objections." Rule 33(b)(4) forbids general objections ("The grounds for objecting to an interrogatory must be stated with specificity.").

Faced with a similar pattern of general objections, specific objections, and answers, the court in *Covington v. Sailormen Inc.,* 274 F.R.D. 692, 693-94 (N.D. Fla. 2011), held:

> The defendant's interrogatory answers contained fifteen boilerplate, shotgun-style "General Objections", which were each specifically incorporated into every single interrogatory answer. In some of the answers, defendant gives at least a partial response, but the Court is unable to determine whether this represents the full response or only a portion that is not subject to the specific objection in the answer or the General Objections incorporated into the answer.
>
> The boilerplate, shotgun-style "General Objections" were incorporated into every answer and thus made each of the answers problematic. . . . These boilerplate, shotgun-style objections are not consistent with the Federal Rules of Civil Procedures' goal of securing "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. . . .
>
> Also, the Plaintiff is not required to perform Defendant's legal research, or to instruct Defendant's counsel on the Rules of Civil Procedure. Common sense should have been enough for Defendant to know that boilerplate, shotgun-style "General Objections," incorporated without discrimination into every answer, were not consistent with Fed.R.Civ.P. 33(b)(4)'s

directive that "[t]he grounds for objecting to an interrogatory must be stated with specificity."

Defendants objected to each question with a paragraph of additional objections. These objections included the following:

    a. "Information already in Plaintiffs' possession" (Answers 5, 6, 11).

    b. "Unreasonable and unduly burdensome to the extent that it seeks to require Defendants to list all possible ways that an expenditure, donation, or transfer can be improper" (Answers 5, 6).

    c. "Defendants object to this interrogatory to the extent that it implies that Defendants must prove that . . . ." (or similar language) (Answers 6, 11, 15, 20).

Finally, each response contained an additional paragraph beginning, "Without waiving these objections, Defendants state . . ."

### 2. Unresponsive answers required deeper probing.

The Defendants' responses were not responsive to the questions. Rather than moving to compel answers, Plaintiffs noticed a Rule 30(b)(6) deposition. Depositions allow the questioner to pose follow-up questions immediately – questions which may probe into the gaps and inconsistencies of the prior answers. Below, we have set out at length the interrogatories Plaintiffs propounded and the evasive and non-responsive answers of the Defendants, along with the Topic listed in the 30(b)(6) notice.

*Question 5 → Topic 1*

**Question 5.** What political favors (as described in *FEC v. NCPAC*) do the defendants contend the Alabama Democratic Conference can provide to donors?

**Answer 5.** . . . Without waiving these objections, Defendants state that a PAC may improperly accept a transfer from another PAC in exchange for a promise that the receiving PAC will pass funds on to a candidate or official, make expenditures on behalf of or in coordination with a candidate or official, or otherwise ingratiate the original sources of the funds with the candidate or official. The candidate or official can then bestow political favors on the original source of the funds, and the PAC in question will have been complicit in hiding the original source of the funds.

Plaintiffs want to ask follow-up questions about "political favors." Question 5 asked "*what* political favors" the ADC could provide. The Defendants explained the Rube Goldberg mechanism by which the political favors could be dispensed by the "candidate or official" but never mentioned the ADC. Topic 1 in the ADC's Rule 30(b)(6) deposition notice will allow Plaintiffs to ask these follow-up questions.

*Question 6 → Topic 2*

**Question 6.** What political favors (as described in *FEC v. NCPAC*) do the defendants contend the Alabama Democratic Conference receives when it makes an independent expenditure?

**Answer 6.** . . . Without waiving these objections, Defendants contend that a PAC which contributes funds to candidates and donors and also engages in advocacy and voter-mobilization efforts can be

6

complicit in facilitating bribery; see, in particular, the response to the preceding interrogatory.

Plaintiffs are seeking an education on how "be[ing] complicit in facilitating bribery" is a "political favor" to the ADC. Topic 2 of the 30(b)(6) deposition should assist in clearing up this point.

*Question 11 → Topic 3*

> **Question 11.** The Attorney General's appellate brief states (at PDF page 67), "By eliminating political operatives' tool for laundering funds through multiple PACs, the law makes it possible to trace money from a contributor to the ultimate expenditure." What other methods of regulation would "mak[e] it possible to trace money from a contributor to the ultimate expenditure"?

> **Answer 11.** . . . Without waiving these objections, Defendants state that while other methods of regulation assist in making money more traceable, none sufficiently address the problems Alabama has experienced historically with respect to PAC-to-PAC transfers.

The answer states there are "other methods" but do not explain what they are. Plaintiffs hope that a 30(b)(6) deposition on this point will allow them to discover Defendants' knowledge of "other methods." Topic 3 of the notice covers this.

*Question 15 → Topic 4*

> **Question 15.** The defendants' appellate brief states (PDF page 48), "And if PACs can continue to make unlimited PAC-to-PAC transfers that they claim will be spent on 'independent expenditures,' they will have little trouble using this artifice to funnel money to their

7

candidates of choice." What evidence do the defendants have that PAC-to-PAC transfers designated for independent expenditures have funneled money to candidates anywhere in the United States in the last ten years?

**Answer 15.** Defendants object to this interrogatory to the extent that it implies that Defendants must prove that PACs have not engaged in subterfuge to funnel money before the State can prohibit PAC-to-PAC transfers. Moreover, this question is unanswerable as to the experience in Alabama because Defendants do not know what transfers were "designated for independent expenditures." (Defendants made the referenced argument in response to Plaintiffs' proposed remedy.) To the extent it calls for information beyond Alabama, the interrogatory is unduly broad and burdensome. [¶] In addition, Defendants note that there is "ample evidence" of the possibility of corruption through these transfers in a hybrid organization like the ADC. See Ala. Democratic Conf. v. Ala. Att'y Gen., No. 11-16040, 2013 WL 5273304 at *4 (11th Cir. Sept. 19, 2013).

Despite the Defendants' contention there is "ample evidence," they refuse to cite any. Plaintiffs will use Topic 4 of the 30(b)(6) deposition probe this omission.

*Question 16(a) → Topic 5*

**Question 16.** The defendants' appellate brief states (PDF pages 48-49), "They can do so by making untraceable PAC-to-PAC contributions to a PAC's 'independent expenditure' account in return for the recipient PAC's promise to make contributions directly to a candidate from its separate 'candidate account.'"

8

a. Would such a contribution in return for a promise of other contributions violate Ala. Code § 17-5-15(a) and if so, how?

**Answer 16(a).** . . . Without waiving these objections, Defendants state that there appear to be many ways in which the hypothetical contribution would not violate Ala. Code § 17-5-15(a).

Plaintiffs want to follow up on this question and answer to probe whether the State will be protected from "contributions in the name of another" if the PAC-to-PAC transfer ban is partially voided.

*Question 17 → Topic 6*

**Question 17.** The defendants' appellate brief states (PDF page 71), "For example, under the law, another PAC could rent vans to drive ADC members to the polls for get-out-the-vote efforts. ADC can work with other PACs to spend money in a way that organizes joint rallies, joint get-out-the-vote events, and joint fundraising events for candidates or causes. The ADC could split the cost of an advertisement with another PAC. And the ADC's individual contributors are free to contribute to another PAC. The only thing PACs cannot do is transfer contributions, expenditures, or other funds between themselves."

a. Which of the arrangements described above must ADC report on its campaign-finance disclosures to the Secretary of State?

b. What is the defendants' legal authority for this statement?

**Answer 17.** . . . Without waiving these objections, Defendants refer the Plaintiffs to the Alabama laws regarding campaign-finance disclosures, which speak for themselves.

9

Plaintiffs are interested in more detail from the Attorney General's Office about its proposal. The Fair Campaign Practices Act says nothing about renting vans, running joint events, or splitting the cost of advertisements, so the law cannot "speak for itself."

*Questions 20(e) and 21 → Topic 7*

> **Question 20.** Which of the following PAC to PAC transfers do the defendants contend involve corruption and describe the nature of the corrupt exchange?
>
> **e.** Alabama Realtors Political Action Committee transfers to NAR/RPAC [National Association of Realtors/Realtors PAC] of $6,186.54 and to NAR/PAF of $1137.00 – both on or about 8/21/2013 (Attachment 6).
>
> **Answer 20(e).** . . . Without waiving this objection, Defendants state that they do not have personal knowledge of the listed transaction.
>
> Question 21. Which of the PAC to PAC transfers in the preceding Question 20 do the defendants contend involve the appearance of corruption, and if so, explain the appearance of corruption?
>
> Answer 21. . . . Without waiving these objections, Defendants state that PAC-to-PAC transfers can facilitate corruption or the appearance thereof in the ways that they have expressed in the previous filings in this litigation.

Defendants' answer begs the question. Plaintiffs wish to depose the Attorney General's Office about the general topic of transfers between PACs related in some way, without having to check all the

"previous filings in this litigation." Topic 7 notified the Attorney General's Office to appoint someone to answer questions on this topic.

## C. A 30(b)(6) deposition is an expeditious way to get answers to these topics.

The parties agreed to an accelerated schedule to move this case to final determination quickly. The Court has set a discovery deadline for 14 March (Doc. 38). Because the deadline is 3½ weeks from now, Plaintiffs have decided that the most efficacious form of discovery will be a 30(b)(6) deposition of the Office of Attorney General.[1]

Submitted by,

/s/ Edward Still

| | |
|---|---|
| John K. Tanner | Edward Still |
| 3743 Military Rd, NW | PMB 304 |
| Washington DC 20015 | 130 Wildwood Pkwy STE 108 |
| Phone: 202-503-7696 | Birmingham AL 35209 |
| Email: | Phone & fax: 205-320-2882 |
| john.k.tanner@gmail.com | email: still@votelaw.com |

---

[1] The Plaintiffs have also given notice of a 30(b)(6) deposition of the Office of Secretary of State.

| Joe M. Reed | Norman Osaygefo Grubbs |
| --- | --- |
| Joe M. Reed & Associates, LLC | The Grubbs Firm |
| 524 S. Union Street | 1904 Berryhill Rd Ste 100 |
| Montgomery, AL 36104 | Montgomery, AL 36117-7789 |
| Phone: 334-834-2000 | E-mail: |
| Fax: 334-834-2088 | ogrubbs@mylawyerlobby.com |
| email: joe@joereedlaw.com | Phone & fax: 334-523-9200 |

CERTIFICATE OF SERVICE

I certify that on 19 February 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Andrew L. Brasher
James W. Davis
Winfield J. Sinclair
William Parker Jr.
Attorney General's Office
PO Box 300152
Montgomery, AL 36130-0152
abrasher@ago.state.al.us
jimdavis@ago.state.al.us
wparker@ago.state.al.us
wsinclair@ago.state.al.us

/s/ Edward Still