IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, et al., <br><br>         Plaintiffs, <br><br> v. <br><br> LUTHER STRANGE in his official capacity as the Attorney General of Alabama; et al., <br><br>         Defendants. | CIVIL ACTION NO. 5:11-cv-02449-JEO |

## Plaintiffs' Statement of Facts
## (Proposed Undisputed Facts
## and Disputes with Defendants' Facts)

1.  The State of Alabama places no limits on the amount of money that an individual, a business, or a political organization can contribute directly to the campaign of a candidate for office.

2.  The State of Alabama does not prohibit coordination by individuals or PACs in their independent expenditures for the benefit of candidates for political office. Transcript of 11-21-2011 oral argument at 26:15 – 25-27:5. (Mr. Parker).

3.   The State of Alabama does not have or enforce any requirement that coordinated campaign activities are contributions that must be reported and disclosed. Ed Packard depo at 45:9-18.

4.   Despite the wording of Alabama Code § 17-5-2-9, the State of Alabama does not enforce its ban on conduit payments as contributions in the name of another, § 17-5-15(a), against organizations as do most states and as does the federal government. Lisenby depo at 33:7-18.

5.   Through the 2010 elections the State of Alabama did not restrict PAC to PAC contributions. The restrictions on PAC to PAC contributions enacted in 2010 were enjoined through the 2012 elections.

6.   The ADC's campaign finance reports for 2012 are attached as Exhibit EE. A summary of income and expenditures is in Exhibit FF.

7.   There have been no prosecutions in Alabama based on a corrupt *quid pro quo* effected through PAC to PAC transfers. Lisenby depo at 30:11 − 31:2, 33:7-18. Nor does the Alabama Attorney General know of any cases where bribery was facilitated by a transfer of money through a PAC. Lisenby Depo at 18:9 − 19:8, 26:6-19.

8.   Prior to the introduction of the new campaign finance reporting system in July 2013, there was no way to search campaign finance reports for a particular contributor. A citizen would have to go to a candidate's or committee's reports, and read each one to find a contributor name. Packard depo 36:18-37:6. Tracking contributions

between and among PACs accordingly could be tedious and time-consuming.

9.   Under Alabama law, a single campaign operative can control a number of PACs, but even prior to the PAC to PAC ban, Alabama Code § 17-5-6 prevented concealing the source of a campaign contribution "simply by moving credits from one ledger to another" because that section requires separate checking accounts and all payments must be made by check.

10.  The change to a searchable online database of campaign contributions was completed on 1 July 2013 when the system was open for filing reports. 20 May 2013. MEDIA ADVISORY—Secretary of State Chapman to Introduce New Online Campaign Finance System to Media, http://sos.state.al.us/PR/PR.aspx?ID=7824 (21 May 2013).

11.   The changes in the Code and the introduction of the searchable database have revolutionized the ease of tracking contributions. The tedious review of hard copies no longer is necessary. With the new searchable database now in place, an interested person now can track contributions by individuals and PACs through any transfers with a few strokes on a computer keyboard. See DUF 4.

12.   The Secretary of State web site now allows one to obtain campaign contribution data by searching the name or part of the first of last name of the candidate, the name or part of the name of the candidate's PAC, or the name or part of the first or last name of a contributor. Packard Depo 15:18 – 23:4. By clicking on a particular PAC

one can to find the names of the chair and the treasurer of that PAC, and then by clicking on the chair and treasurer one can see all other PACs of which they are chairs or treasurers. Id. at 23:12- 24:5.

13. It is possible to download all contributions and expenditures by a given PAC in a spreadsheet format. Id at 25:5-28:10. Prior to 2013, all of those searches would have to have been done by scrolling through scanned copies of documents, one at a time.

14. The much greater frequency of reporting of campaign contributions further inhibits the possibility that an individual or PAC can conceal or obscure the source of funds. See DUF 6.

15. Alabama does not limit the number of PACs one person can create or control. For example, Ashley Newman is an officer of or the designated filing agent of multiple PACs and political groups. Newman depo at 13:22 – 18:10 and Exhibit 1 to the deposition.

16. Exhibit GG shows Speaker Mike Hubbard's Storming the State House PAC's registration and its reports over the past 10 months.

17. To some extent it was and remains impossible to achieve perfection in tracking campaign contributions under any regime, regardless of a ban on PAC to PAC transfers. A contribution by an individual to a PAC necessarily becomes intermingled with the contributions of others. Where the PAC contributes to two or more candidates, makes independent expenditures with two or more messages, or makes both candidate and independent expenditures, it is impossible to say what, if any proportion of that individual's

expenditure went to a given expenditure. There is no way to effectively trace the contribution from the original contributor to the ultimate recipient. Packard depo 28:11 - 31:17; Lisenby depo 14:19 – 17:5.

18.  The ADC was founded in 1960 to promote the Kennedy-Johnson ticket, and has continued to operate as a group advocating the rights of black citizens since then. The ADC currently has approximately 3,000 members. Reed Depo. at 42:8-15.

19.  Until 1966 the Alabama Democrats used the slogan, "White Supremacy For the Right," on its ballot symbol. Exhibit HH, Jeff Frederick, *Stand Up For Alabama: Governor George C. Wallace*, 140-42 (2007).

20.  Like many other organizations, the ADC operates within a single political party, in its case the Democratic Party. The ADC endorses and actively supports certain candidates and actively opposes other in Democratic primary elections. And the ADC actively seeks to influence the Democratic Party. [cite]

21.  The ADC focuses its activities on the Democratic Party because it, along with the black voters of Alabama generally and black voters across the United States, perceives the Republican Party as hostile to the aspirations of black citizens.

22.  Overwhelming majorities of black voters in Alabama and, indeed, across the United States, regularly support Democratic candidates. In the case of the ADC, that perception is based on the ongoing actions of Republican elected officials. Reed Depo 41:8-23; Reed

declaration ¶ 4. The ADC activities thus are intertwined with the Democratic Party, but it is independent of the Democratic Party. Friction between the two groups is not uncommon. See, e.g., Reed depo 118:16 - 119:11(disputes over reserved seats on SDEC for ADC and other matters).

23.   The ADC refuses to endorse certain Democratic candidates in general elections, and opposes actions and policies of Democratic Party leaders and democratic elected officials. Reed depo 181:19 - 183:5; 183:21 - 184:8.

24.   From time to time the ADC has sued the Democratic Party under the Voting Rights Act, 42 U.S.C. §1973, et seq. For example, under Alabama law, county party executive committees play a role in selecting poll officials. The ADC has filed suit to bar racial discrimination in the selection and behavior of poll officials, *Harris v. Graddick,* 593 F.Supp. 128, 601 F.Supp. 70 (M.D. Ala. 1984), and to obtain racially fair selection of members of the state and county Democratic committees, *Hawthorne v. Baker,* 750 F.Supp. 1090 (M.D.Ala. 1990), 756 F.Supp. 527 (M.D.Ala. 1990), 762 F.Supp. 1475 (M.D.Ala. 1991), and the ADC continues to promote vigilance as to the activities of the state and county party committees.

25.   The relationship between the ADC and the Democratic Party is similar to its relationship with other groups with which it is often aligned. For example, Dr. Reed was a senior official of the AEA; when the groups' goals aligned (both groups support public education),

they supported each other, but there were times when they were opposed. 30:10 – 22; 213:1 - 214:18.

26.   The ADC is a statewide organization with chapters in over 60 counties. Doc. 43-4 (Reed Depo.) at 46:11-22.

27.   The ADC endorses candidates for many state, district, and local race in both the primary and general elections. Candidates seeking the ADC's endorsement must appear in person to be interviewed in turn. The determination as to which candidates the ADC endorse is made, for county elections, by the county chapters; at the district level by groups of members from the respective districts, with all of the endorsing groups interviewing candidates and deciding on endorsements simultaneously; and at the state office level by the ADC Executive Committee. The various committee endorsements are subject to amendment on the floor of the state convention. Reed depo at 175:1 - 176:1

28.   The ADC endorsements are not based on candidates' contributions to ADC: some candidate committees make donations and others do not. Reed depo 191:20 - 192:9.

29.   Dr. Joe L. Reed is the Executive Director of the ADC. Dr. Reed does not cast a vote in the various endorsement committees. His role during the endorsement process is to keep things moving and answer questions that may come up within the various decision-making groups. Reed depo 164:20 - 166:11.

30.  The ADC distributes a base amount of its available funds to each of its 60+ chapters. Remaining funds are distributed based on an independent determination by Dr. Reed of a variety of factors, including the size of the county's black population and the effectiveness of the local chapter . Reed declaration at ¶¶ 16-17.

31.  The ADC has no power to direct government benefits. That is, there is no *quo* within the gift of the ADC.

32.  The ADC has not used PAC to PAC transfers as a way to avoid revealing the true source of a contribution. Reed Depo, 13:8 - 14:13.

33.  The ADC'S campaign finance reports are prepared by an independent auditor. Reed Dep. 105:23 - 107:1.

34.  The ADC is not aware that it ever has been investigated and the State of Alabama does not allege that the ADC ever has been investigated for possible violation of a campaign statute of the State of Alabama since its inception in 1960.

35.  Upon the enactment of the ban on PAC to PAC transfers, the ADC sought to restructure its activities in a manner consistent with those held by the court in *Emily's List v. Federal Election Com'n*, 581 F.3d 1 (DC Cir 2009). Reed declaration at ¶ 21.

36.  The Federal Election Commission refers to PACs with separate bank accounts for candidate contributions and independent expenditures as "political committees with non-contribution accounts." There are 81 such committees registered with the FEC. Exhibit II.

FACTS PROPOSED BY DEFENDANTS BUT DISPUTED BY PLAINTIFFS

37. The statements alleged in paragraphs 1-2, 4-53 of the Defendants' Numbered Statement of Undisputed Facts relate to the period before the development of a searchable database and have no relevance to the operation of the new system and the exponentially greater transparency it has created.

38. A jury acquitted all defendants in *United States v. McGregor*, 879 F. Supp. 2d 1308 (M.D. Ala. 2012), the case referenced in paragraphs 50-53 of the Defendants' Numbered Statement of Undisputed Facts, and Senator Smith and the other acquitted defendants presumptively did not commit the acts alleged.

Submitted by,

/s/ Edward Still
Edward Still
PMB 304
130 Wildwood Pkwy STE 108
Birmingham AL 35209
Phone & fax: 205-320-2882
email: still@votelaw.com

John K. Tanner
3743 Military Rd, NW
Washington DC 20015
Phone: 202-503-7696
Email:
john.k.tanner@gmail.com

Joe M. Reed
Joe M. Reed & Associates, LLC
524 S. Union Street
Montgomery, AL 36104
Phone: 334-834-2000
Fax: 334-834-2088
email: joe@joereedlaw.com

Norman Osaygefo Grubbs
The Grubbs Firm
1904 Berryhill Rd Ste 100
Montgomery, AL 36117-7789
E-mail:
ogrubbs@mylawyerlobby.com
Phone & fax: 334-523-9200

CERTIFICATE OF SERVICE

I certify that on 5 May 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Andrew L. Brasher
James W. Davis
Winfield J. Sinclair
William Parker Jr.
Attorney General's Office
PO Box 300152
Montgomery, AL 36130-0152
abrasher@ago.state.al.us
jimdavis@ago.state.al.us
wparker@ago.state.al.us
wsinclair@ago.state.al.us

/s/ Edward Still