# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, *et al.*, )<br>*Plaintiffs,* )<br>v. )<br>LUTHER STRANGE, in his official capacity as Attorney General of Alabama, *et al.*, )<br>*Defendants.* ) | Civil Action No.<br>5:11-cv-02449-JEO |

### DEFENDANTS' RESPONSE TO
### PLAINTIFFS' NOTICE OF ADDITIONAL AUTHORITY

On September 25, 2014, the ADC transmitted to the chambers e-mail address a copy of the Seventh Circuit's recent decision in *O'Keefe v. Chisolm*, No. 14-822 (7th Cir. Sept. 24, 2014), as well as a cover letter arguing *O'Keefe*'s significance for this case. *See* Ex. A (*O'Keefe* opinion); Ex. B (cover letter). The cover letter, in particular, highlighted the following language from *O'Keefe*:

> If the Constitution forbids all regulation of campaign contributions, there is no basis for regulating coordination either. After all, the rationale for regulating coordination has been to prevent evasion of contribution limits and ensure the public identification of persons who contribute to politicians' war chests.

Ex. B at 2 (quoting *O'Keefe*, slip op. at 10). According to the ADC, this language supports its challenge to Alabama's PAC transfer law because Alabama has refrained from imposing traditional, across-the-board dollar limits on candidate con-

tributions. "If there is no regulation of the amount of contributions," the ADC says, "'there is no basis for regulating coordination either.'" Ex. B at 2 (quoting *O'Keefe*, slip op. at 10).

The quoted language from *O'Keefe* does not support the ADC's challenge. For one thing, the ADC's argument conspicuously ignores key language from the very excerpt in *O'Keefe* on which it relies. The excerpt does not say that a State's *forbearance* from regulating candidate-contribution limits is what prevents it regulating coordination, as the ADC argues. It says instead that there would be no basis for regulating coordination "[i]f the Constitution *forb[ade]* all regulation of campaign contributions." Ex. B at 2 (emphasis added). As *O'Keefe* goes on to explain, however, that hypothetical proposition plainly is not the law. Even after *Citizens United* and even after *McCutcheon*, the Constitution permits regulation of campaign contributions—whether in the form of money paid directly to a candidate or, as relevant here, money laundered in coordination with a candidate through nominally independent PACs. The excerpt also identifies "ensur[ing] the public identification of [contributors]" as a basis for regulating coordinated campaign activities. Ex. B at 2. Along with preventing actual or apparent quid pro quo corruption, that interest is one of the State's precise justifications for the PAC transfer law. *See, e.g.*, doc. 44 at 49-50, doc. 48 at 13-15; *see also Let's Help Fla. v. McCrary*, 621 F.2d 195, 200 (5th Cir. 1980) ("promoting disclosure of campaign contributors is

2

an important state interest" in the realm of campaign-finance regulations) (discussed at oral argument held May 27, 2014).

Other portions of *O'Keefe* provide only further support for the PAC transfer law's validity. *O'Keefe*'s ultimate result, for example, was to allow a State to continue investigating whether "the campaign committee for a political official" was "coordinating fund-raising and expenditures with an 'independent' group" in violation of state campaign-finance laws. Ex. A at 2. And in the course of reaching that result, the Seventh Circuit noted that under the regime of *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), "the government is entitled to regulate coordination between candidates' campaigns and purportedly independent groups." Ex. A at 9. Alabama, of course, has presented uncontroverted evidence that its PAC transfer law eliminates a way to arrange bribes through precisely this sort of conduct. *See, e.g.*, doc. 45 at 62-69 (defendants' proffered undisputed facts 1-53). *O'Keefe* thus supports the law's facial validity. The law "deal[s] with" the very problem *Buckley* says States may try to solve—"the reality or appearance of corruption inherent in a system permitting unlimited financial contributions, even when the identities of the contributors and the amounts of their contributions are fully disclosed." 424 U.S. at 28. It just does so in a way different from (and less onerous than) a traditional, across-the-board candidate contribution limit.

Based on the need for clarity among the general public as well as the desire to avoid further litigation, the State reiterates its preference for the Court to uphold the law as a facial matter. Having said that, *O'Keefe* is distinguishable from the present case in a way that underscores why the PAC transfer law is at least valid as applied to the ADC. The plaintiffs in *O'Keefe* claimed not only to operate "independently" of candidates but also to engage only in "issue advocacy," promoting their preferred policies rather than the election of particular candidates. *See* Ex. A at 4; *see also id.* at 3. Thus, as the *O'Keefe* Court noted, those plaintiffs may well have had unique reason to be beyond "the scope of permissible [coordination] regulation." Ex. A at 9. Here, by contrast, the ADC concededly promotes the election of particular candidates. *See, e.g.*, doc. 45 at 70-71, 73-75 (undisputed facts 62-66, 70, 75, 88-89, 100, 103-106, 108). Indeed, the ADC concedes that it *coordinates* its campaign activities with the candidates it supports. *See, e.g.*, *id.* at 75-76 (undisputed facts 109, 111-114, 116-118). ADC's activities thus come nowhere close to any of the potential outer limits on coordination regulation that the *O'Keefe* panel hypothesized. *See* Ex. A at 9.

\* \* \*

The ADC's argument ultimately serves as a reminder that the PAC transfer law does, in fact, prevent ill-meaning donors and candidates from arranging bribes through coordinated PAC-to-PAC transfers. Otherwise, the ADC would not be ar-

guing that the State lacks a legitimate basis for regulating coordination. For the foregoing reasons, as well as those discussed previously, the Court should grant judgment to the defendants. Consistent with the "relatively complaisant" standard of scrutiny that governs this case, the Court should uphold Alabama's PAC transfer law, either on its face or specifically as applied to the ADC. *FEC v. Beaumont*, 539 U.S. 146, 161 (2003).

Respectfully submitted,

LUTHER STRANGE (ASB-0036-G42L)
   *Attorney General*

Andrew L. Brasher (ASB-4325-W73B)
   *Solicitor General*

s/William G. Parker, Jr.
Winfield J. Sinclair (ASB-1750-S81W)
James W. Davis (ASB-4063-I58J)
William G. Parker, Jr. (ASB-5142-I72P)
   *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
(334) 353-8440 (fax)
wsinclair@ago.state.al.us
jimdavis@ago.state.al.us
wparker@ago.state.al.us

**Attorneys for Attorney General Strange, District Attorney Broussard, and District Attorney Graham**

## CERTIFICATE OF SERVICE

I certify that on October 7, 2014, I electronically filed the foregoing document using the Court's CM/ECF system which will send notification of such filing to the following persons:

Edward Still
still@votelaw.com

John K. Tanner
john.k.tanner@gmail.com

Norman O Grubbs
ogrubbs@bellsouth.net

                                                s/William G. Parker, Jr.
                                                Counsel for the Defendants