APPEAL,CONMAG,PROTECTIVE ORDER,REOPEN

# U.S. District Court
# Northern District of Alabama (Northeastern)
# CIVIL DOCKET FOR CASE #: 5:11–cv–02449–JEO
### *Internal Use Only*

| | |
|---|---|
| Alabama Democratic Conference, The et al v. Strange et al | Date Filed: 07/06/2011 |
| Assigned to: Magistrate–Judge John E Ott | Date Terminated: 08/04/2015 |
| Case in other court:  USCA, 11–16040E | Jury Demand: None |
| Cause: 42:1973 Voting Rights Act | Nature of Suit: 441 Civil Rights: Voting |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Alabama Democratic Conference, The**<br>*an Alabama political action committee* | represented by | **John K Tanner**<br>JOHN TANNER LAW OFFICE<br>3743 Military Road NW<br>Washington, DC 20015<br>202–503–7696<br>Email: john.k.tanner@gmail.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Norman O Grubbs**<br>JOE M. REED &ASSOCIATES LLC<br>524 South Court Street<br>Montgomery, AL 36104<br>334–834–2000<br>Fax: 334–834–2088<br>Email: ogrubbs@bellsouth.net |
| | | **W Edward Still**<br>EDWARD STILL LAW FIRM LLC<br>429 Green Springs Hwy STE 161–304<br>Birmingham, AL 35209<br>205–320–2882<br>Fax: 205–320–2882<br>Email: Still@votelaw.com<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Dr. Eddie Greene** | represented by | **John K Tanner**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Norman O Grubbs**<br>(See above for address) |
| | | **W Edward Still**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

**James Griffin**                                    represented by   **John K Tanner**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Norman O Grubbs**
                                                                      (See above for address)

                                                                      **W Edward Still**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bob Harrison**                                    represented by   **John K Tanner**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Norman O Grubbs**
                                                                      (See above for address)

                                                                      **W Edward Still**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emmitt E Jimmar**                                 represented by   **John K Tanner**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Norman O Grubbs**
                                                                      (See above for address)

                                                                      **W Edward Still**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jimmie Payne**                                    represented by   **John K Tanner**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Norman O Grubbs**
                                                                      (See above for address)

                                                                      **W Edward Still**
                                                                      (See above for address)
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Luther Strange**
*in his official capacity as the Attorney*
*General of Alabama*

represented by **William G Parker , Jr**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
PO Box 300152
Montgomery, AL 36130–0152
334–242–7997
Fax: 334–353–8440
Email: wparker@ago.state.al.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew L Brasher**
OFFICE OF ALABAMA ATTORNEY
GENERAL
501 Washington Avenue
P O Box 300152
Montgomery, AL 36130–0152
334–353–2609
Fax: 334–242–4891
Email: abrasher@ago.state.al.us
*ATTORNEY TO BE NOTICED*

**James W Davis**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
P O Box 300152
Montgomery, AL 36130–0152
334–242–7300
Fax: 334–353–8440
Email: jimdavis@ago.state.al.us
*ATTORNEY TO BE NOTICED*

**Winfield J Sinclair**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
PO Box 300152
Montgomery, AL 36130–0152
334–353–9110
Fax: 334–353–8440
Email: wsinclair@ago.state.al.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert L Broussard**
*in his official capacity as District*
*Attorney for the 23rd Judicial Circuit*

represented by **William G Parker , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew L Brasher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James W Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winfield J Sinclair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | |
|---|---|
| **Bryce U Graham, Jr** | represented by **William G Parker , Jr** |
| *in his official capacity as District* | (See above for address) |
| *Attorney for the 31st Judicial Circuit* | *LEAD ATTORNEY* |
| | *ATTORNEY TO BE NOTICED* |

**Andrew L Brasher**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James W Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winfield J Sinclair**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/06/2011 | 1 | | COMPLAINT against Robert L Broussard, Bryce U Graham, Jr, Luther Strange filed by Jimmie Payne, Eddie Greene, Bob Harrison, Emmitt E Jimmar, Alabama Democratic Conference, The, James Griffin. (Attachments: # 1 Exhibit A)(KGE) (Entered: 07/06/2011) |
| 07/06/2011 | 2 | | MOTION for Leave to Appear pro hac vice by Alabama Democratic Conference, The, for atty John K Tanner (KGE, ) Modified text on 7/6/2011 (KGE, ). (Entered: 07/06/2011) |
| 07/06/2011 | | | Filing fee: $ 350.00, receipt number B4601024639 (KGE, ) (Entered: 07/06/2011) |
| 07/06/2011 | | | ORDER granting conditionally 2 Motion for Leave to Appear Pro Hac Vice upon payment of the proscribed fee. Signed by Magistrate–Judge John E Ott on July 6, 2011. (AMC) (Entered: 07/06/2011) |
| 07/06/2011 | 3 | | Request for service by certified mail filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 07/06/2011) |

| 07/08/2011 | 4 | | Summons Issued as to Robert L Broussard, Bryce U Graham, Jr, Luther Strange, mailed certified mail (KGE, ) (Entered: 07/08/2011) |
|---|---|---|---|
| 07/08/2011 | | | PHV Fee paid for atty John Tanner $50.00, receipt number B4601024797 (KGE, ) (Entered: 07/08/2011) |
| 07/12/2011 | 5 | | SUMMONS Returned Executed Robert L Broussard served on 7/11/2011, answer due 8/1/2011; Bryce U Graham, Jr served on 7/11/2011, answer due 8/1/2011. (KGE, ) (Entered: 07/12/2011) |
| 07/13/2011 | 6 | | SUMMONS Returned Executed Luther Strange served on 7/11/2011, answer due 8/1/2011. (KGE, ) (Entered: 07/13/2011) |
| 08/01/2011 | 7 | | MOTION to Dismiss by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Attachments: # 1 Exhibit A, Act 2010–756, # 2 Exhibit C, Indictment, US v. McGregor, et al., # 3 Exhibit D, Letters from Joe Reed to USDOJ)(Parker, William) (Additional attachment(s) added on 8/2/2011: # 4 Exhibit B Part 1, # 5 Exhibit B Part 2) (KGE, ). (Entered: 08/01/2011) |
| 08/02/2011 | 8 | | Corporate Disclosure Statement by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 08/02/2011) |
| 08/02/2011 | | | ORDER setting motion deadline on Defendants' 7 Motion to Dismiss. Plaintiffs' Response is due by August 16, 2011. Defendants' Reply is due by August 23, 2011. Signed by Magistrate–Judge John E Ott on August 2, 2011. (TDS) (Entered: 08/02/2011) |
| 08/16/2011 | 9 | | MOTION for Partial Summary Judgment *(Count One)* by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit Reed Declaration, # 2 Exhibit Attachment A, # 3 Exhibit Attachment B)(Still, Edward) (Entered: 08/16/2011) |
| 08/16/2011 | 10 | | Brief re 9 MOTION for Partial Summary Judgment *(Count One)* MOTION for Partial Summary Judgment *(Count One)*, 7 MOTION to Dismiss filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Appendix A –– Act 2011–687)(Still, Edward) (Entered: 08/16/2011) |
| 08/17/2011 | | | ORDER setting motion deadline on Plaintiffs' 9 Motion for Partial Summary Judgment. Defendants' response is due by September 7, 2011. Plaintiffs' reply is due by September 19, 2011. Signed by Magistrate–Judge John E Ott on August 17, 2011. (TDS) (Entered: 08/17/2011) |
| 08/17/2011 | 11 | | NOTICE of Appearance by James W Davis on behalf of Robert L Broussard, Bryce U Graham, Jr, Luther Strange (Davis, James) (Entered: 08/17/2011) |
| 08/17/2011 | 12 | | NOTICE of Appearance by Winfield J Sinclair on behalf of Robert L Broussard, Bryce U Graham, Jr, Luther Strange (Sinclair, Winfield) (Entered: 08/17/2011) |
| 08/19/2011 | 13 | | CONSENT to Jurisdiction by US Magistrate Judge John E Ott by Alabama Democratic Conference, The, Robert L Broussard, Bryce U Graham, Jr, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne, Luther Strange. (KGE) (Entered: 08/22/2011) |

| 08/23/2011 | 14 | | REPLY to re 9 , 7 *Reply in support of Motion to Dismiss and Opposition to Plaintiffs' Motion for Partial Summary Judgment* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 08/23/2011) |
|---|---|---|---|
| 09/15/2011 | 15 | | MOTION to Stay *Defendants' Unopposed Motion to Stay Discovery Deadlines* by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 09/15/2011) |
| 09/18/2011 | 16 | | REPLY Brief filed by Plaintiffs Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne re: 9 MOTION for Partial Summary Judgment *(Count One)* MOTION for Partial Summary Judgment *(Count One)* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 09/18/2011) |
| 09/20/2011 | | | ORDER granting Defendants' Unopposed Motion to Stay Discovery Deadlines (Doc. # 15). Should discovery be appropriate after the court rules on the pending motions, the parties will have until thirty (30) days after such ruling to conduct the parties' planning meeting and exchange initial disclosures. Signed by Magistrate–Judge John E Ott on September 20, 2011. (TDS) (Entered: 09/20/2011) |
| 11/01/2011 | 17 | | MOTION to Expedite *and additional authority* by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit Text of Carey consent judgment)(Still, Edward) (Entered: 11/01/2011) |
| 11/07/2011 | | | ORDER. This case is before the court on Plaintiffs' Motion to Expedite (Doc. # 17), filed November 1, 2011. The motion is GRANTED. Additionally, this case is SET for a hearing on Defendants' Motion to Dismiss (Doc. # 7) and Plaintiffs' Motion for Partial Summary Judgment (Doc. # 9) at 2:00 p.m. on Monday, November 21, 2011, in Courtroom 3B of the Hugo L. Black U.S. Courthouse in Birmingham, Alabama. Signed by Magistrate–Judge John E Ott on November 7, 2011. (TDS) (Entered: 11/07/2011) |
| 11/07/2011 | | | Motion Hearing set for 11/21/2011 at 02:00 PM before Magistrate–Judge John E Ott. Signed by Magistrate–Judge John E Ott on 11/7/11. (KGE, ) (Entered: 11/07/2011) |
| 11/15/2011 | 18 | | ORDER This case is currently set for a hearing on Dfts Motion to Dismiss and Plas Motion for Partial Summary Judgment on 11/21/11. Having reviewed the submitted briefs, the court is interested in receiving additional information concerning the constitutionality of the statute as it applies to the Alabama Democratic Conferences proposed segregated funding system (as opposed to the facial constitutionality of statute). The parties should be prepared to address this at oral argument. Should the parties wish to submit any supplemental briefing on this, or any other issue, such briefing SHALL be limited to ten pages and SHALL be filed by 4:30 p.m. on 11/18/11. Signed by Magistrate–Judge John E Ott on 11/15/11. (KGE) (Entered: 11/15/2011) |
| 11/18/2011 | 19 | | Brief re 10 Brief, *(supplemental memo on relief)* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 11/18/2011) |

| | | | |
|---|---|---|---|
| 11/21/2011 | | | Minute Entry for proceedings held before Magistrate–Judge John E Ott: Motion Hearing held on 11/21/2011 re: 9 MOTION for Partial Summary Judgment and 7 MOTION to Dismiss; oral arguments heard; parties to submit any supp. brief by 4:30pm by Wednesday.(Court Reporter Chanetta Sinkfield) (KWC) Modified text on 11/21/2011 (KWC) (Entered: 11/21/2011) |
| 11/22/2011 | 20 | | Brief *Supplemental Brief in Support of Defendants' Motion to Dismiss* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 11/22/2011) |
| 11/23/2011 | 21 | | Brief re 10 Brief, *(post–argument brief)* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 11/23/2011) |
| 11/30/2011 | 22 | | UNIFORM INITIAL ORDER – with appendices attached. Signed by Magistrate–Judge John E Ott on 11/30/11. (KGE, ) (Entered: 11/30/2011) |
| 12/13/2011 | 23 | | REPLY to *(notice of new authority)* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Appendix WRTL v. Barland)(Still, Edward) (Entered: 12/13/2011) |
| 12/14/2011 | 24 | | MEMORANDUM OPINION. Signed by Magistrate–Judge John E Ott on 12/14/11. (KGE, ) (Entered: 12/14/2011) |
| 12/14/2011 | 25 | | FINAL ORDER Plas Motion for Partial Summary Judgment 9 is GRANTED. Dfts Motion to dismiss 7 is GRANTED IN PART AND DENIED IN PART. The motion to dismiss is granted with respect to Count Two and denied with respect to Count One. Count Two of Plas Complaint is DISMISSED WITH PREJUDICE. Plas may move for attorneys fees and costs pursuant to 42 U.S.C. § 1988 within twenty–one days of this order. Signed by Magistrate–Judge John E Ott on 12/14/11. (KGE, ) (Entered: 12/14/2011) |
| 12/15/2011 | 26 | | NOTICE by Robert L Broussard, Bryce U Graham, Jr, Luther Strange *Notice of Appeal* (Parker, William) (Entered: 12/15/2011) |
| 12/16/2011 | 27 | | BILL OF COSTS by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 12/16/2011) |
| 12/16/2011 | | | NOTICE OF APPEAL by Robert L Broussard, Bryce U Graham, Jr, Luther Strange (see document 26 filed in as a Notice instead of a Notice of Appeal) (KGE, ) (Entered: 12/16/2011) |
| 12/16/2011 | 28 | | MOTION to Stay re 26 Notice (Other), 25 Order Dismissing Case, 27 Bill of Costs *Unopposed Motion to Postpone Taxation of Costs and Consideration of Attorney Fees* by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 12/16/2011) |
| 12/19/2011 | | | USCA Appeal Fees received $455.00 receipt number B4601029362 re Notice of Appeal filed by Bryce U Graham, Jr, Luther Strange, Robert L Broussard (KGE, ) (Entered: 12/19/2011) |
| 12/19/2011 | | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re Notice of Appeal (KGE, ) (Entered: 12/19/2011) |

| | | | |
|---|---|---|---|
| 12/20/2011 | | | ORDER. This case is before the court on Defendants' Unopposed Motion to Postpone Taxation of Costs and Consideration of Attorney Fees 28 . There being no opposition, the motion is GRANTED. Within fourteen days of a decision by the Eleventh Circuit in this case, the parties SHALL file a joint status report addressing taxation of costs and attorney fees. Signed by Magistrate–Judge John E Ott on December 20, 2011. (TDS) (Entered: 12/20/2011) |
| 12/27/2011 | 29 | | TRANSCRIPT REQUEST by Luther Strange for proceedings held on 11/21/11 before Judge John E. Ott, del to court reporter. (CVA) (Entered: 12/28/2011) |
| 01/04/2012 | 30 | | USCA Case Number 11–16040E for Notice of Appeal filed by Bryce U Graham, Jr, Luther Strange, Robert L Broussard. (KGE, ) (Entered: 01/04/2012) |
| 01/10/2012 | 31 | | NOTICE of filing Court Reporter Acknowledgment by Chanetta Sinkfield (KGE, ) (Entered: 01/10/2012) |
| 02/06/2012 | 32 | | Transcript of Motion Hearing held on 11/21/2011, before Judge John E. Ott. Court Reporter/Transcriber Chanetta Sinkfield. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. (A copy can be obtained at http://www.alnd.uscourts.gov/local/court forms/transcripts/Transcript Redaction Policy.pdf) See Transcript Redaction Policy Redaction Request due 2/27/2012. Redacted Transcript Deadline set for 3/8/2012. Release of Transcript Restriction set for 5/7/2012. (Attachments: # 1 certificate page) (61 pages)(BST, ) (Entered: 02/06/2012) |
| 02/06/2012 | 33 | | TRANSCRIPT REQUEST (green copy, transcript filed) for proceedings held on 11/21/2011 before Judge John E. Ott, (BST, ) (Entered: 02/06/2012) |
| 05/03/2012 | | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Northern District of Alabama certifies that the record is complete for purposes of this appeal re: Notice of Appeal, Appeal No. 11–16040–EE. The entire record on appeal is available electronically (KGE) (Entered: 05/03/2012) |
| 12/19/2013 | 34 | | MANDATE of USCA as JUDGMENT as to Notice of Appeal filed by Bryce U Graham, Jr, Luther Strange, Robert L Broussard. Before BARKETT and JORDAN, Circuit Judges, and SCHLESINGER, District Judge. We vacate the district court's entry of partial summary judgment in favor of ADC and remand for further proceedings consistent with this opinion. VACATED and REMANDED. (Attachments: # 1 Opinion)(PSM) (Entered: 12/19/2013) |
| 12/19/2013 | | | ORDER. This case is SET for a telephone status conference at 10:00 a.m. on January 8, 2014. The parties shall call 205–278–2186 and use Meeting ID 3895 to access the call. Signed by Magistrate Judge John E. Ott on December 19, 2013. (TDS) (Entered: 12/19/2013) |
| 12/20/2013 | 35 | | NOTICE of Appearance by Andrew L Brasher on behalf of Robert L Broussard, Bryce U Graham, Jr, Luther Strange (Brasher, Andrew) (Entered: |

| | | | |
|---|---|---|---|
| | | | 12/20/2013) |
| 01/08/2014 | 36 | | Submission of Discovery regarding motion by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. Related document: 17 MOTION to Expedite *and additional authority* filed by James Griffin, Jimmie Payne, Eddie Greene, Bob Harrison, Emmitt E Jimmar, Alabama Democratic Conference, The. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Still, Edward) (Entered: 01/08/2014) |
| 01/08/2014 | | | ORDER. Plaintiffs' motion for a preliminary injunction is due by January 17, 2014. Additionally, this case is SET for a telephone conference at 10:00 a.m. on January 22, 2014. The call–in number is 205–278–2186 and the Meeting ID is 3895. Signed by Magistrate Judge John E. Ott on January 8, 2014. (TDS) (Entered: 01/08/2014) |
| 01/08/2014 | | | Minute Entry for proceedings held before Magistrate Judge John E Ott: Telephone Conference held on 1/8/2014. (BST, ) (Entered: 01/08/2014) |
| 01/16/2014 | 37 | | MOTION for Preliminary Injunction by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, Edward) (Entered: 01/16/2014) |
| 01/22/2014 | | | Minute Entry for proceedings held before Magistrate Judge John E Ott: Telephone Conference held on 1/22/2014. (BST, ) (Entered: 01/22/2014) |
| 01/27/2014 | 38 | | ORDER This case is before the court on Plaintiffs' Motion for Preliminary Injunction 37 . The parties and court agreed that the most expeditious way to resolve the case was to combine the Motion for Preliminary Injunction with a final adjudication on the merits. In order to accomplish this, the parties shall be allowed to conduct discovery on an accelerated schedule. Said discovery shall be completed by March 14, 2014. Plaintiffs shall file their amended brief by April 4, 2014. Defendants shall file any response by April 25, 2014. Plaintiffs shall file any reply by May 5, 2014. This case is SET for a telephone conference on May 9, 2014, at 10:00 a.m. Signed by Magistrate Judge John E Ott on 1/27/2014. (PSM) (Entered: 01/27/2014) |
| 02/14/2014 | 39 | | MOTION for Protective Order *Precluding Rule 30(b)(6) Deposition of the Attorney General's Office* by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Attachments: # 1 Exhibit A – Deposition Notice, # 2 Exhibit B – Discovery Responses, # 3 Exhibit C – Defendants' Principal Appellate Brief, # 4 Exhibit D – Defendants' Reply Brief)(Parker, William) (Entered: 02/14/2014) |
| 02/19/2014 | 40 | | RESPONSE in Opposition re 39 MOTION for Protective Order *Precluding Rule 30(b)(6) Deposition of the Attorney General's Office* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit AG website)(Still, W) (Entered: 02/19/2014) |
| 02/24/2014 | | | ORDER. This case is SET for a telephone conference to discuss 39 Defendant's Motion for Protective Order at 8:30 a.m. on February 27, 2014. Signed by Magistrate Judge John E. Ott on February 24, 2014. (TDS) |

| | | | |
|---|---|---|---|
| | | | (Entered: 02/24/2014) |
| 02/26/2014 | | | ORDER. The call−in number for tomorrow's telephone conference is 205−278−2186. The Meeting ID is 3895. Signed by Magistrate Judge John E Ott on February 26, 2014. (TDS) (Entered: 02/26/2014) |
| 02/27/2014 | | | Minute Entry for proceedings held before Magistrate Judge John E Ott: Telephone Conference held on 2/27/2014. (Court Reporter Margaret Wasmund.) (BST, ) (Entered: 02/27/2014) |
| 03/03/2014 | 41 | | ORDER This case is before the court on Motion for Protective Order by Defendant Luther Strange 39 , filed February 14, 2014. The motion has been fully briefed. 39 &40 . As such, Defendant Luther Strange's Motion for Protective Order 39 is GRANTED as to the current deposition notice. On or before March 4, 2014, Plaintiffs shall issue a new deposition notice with more specific questions in the topical areas that seek factual responses that are more closely tethered to the issues this case. This case is SET for a telephone conference at 4:00 p.m. on March 10, 2014. Should Defendant Luther Strange need to file a motion for protective order as to this second deposition notice, said motion should be filed before noon on March 10, 2014. Signed by Magistrate Judge John E Ott on 3/3/2014. (PSM) (Entered: 03/03/2014) |
| 03/10/2014 | | | ORDER. The call−in number for today's telephone conference is 205−278−2186. The Meeting ID is 3895. Signed by Magistrate Judge John E. Ott on March 10, 2014. (TDS) (Entered: 03/10/2014) |
| 03/10/2014 | 42 | | MOTION for Extension of Time to Complete Discovery by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, W) (Entered: 03/10/2014) |
| 03/10/2014 | | | ORDER granting 42 Plaintiffs' Unopposed Motion for Extension of Time to Take Deposition of Ashley Newman. The fact that Defendants agreed to the extension does not prohibit them, or any third party, from objecting to the requests for production contained in the deposition notice. Signed by Magistrate Judge John E. Ott on March 10, 2014. (TDS) (Entered: 03/10/2014) |
| 03/10/2014 | | | Minute Entry for proceedings held before Magistrate Judge John E Ott: Telephone Conference held on 3/10/2014. (Court Reporter Lindy Fuller.) (BST, ) (Entered: 03/12/2014) |
| 04/04/2014 | 43 | | Second MOTION for Preliminary Injunction by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit AA−Packard depo, # 2 Exhibit BB−Lisenby depo, # 3 Exhibit CC−Newman depo, # 4 Exhibit DD−Reed depo)(Still, W) (Entered: 04/04/2014) |
| 04/25/2014 | 44 | | MOTION for Summary Judgment &Evidentiary Submission by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Attachments: # 1 Exhibit 1 – Newman Decl., # 2 Exhibit 2 – ADC Const., # 3 Exhibit 3 – SDEC Member List, # 4 Exhibit 4 – SDEC Bylaws, # 5 Exhibit 5 – Killough Decl., # 6 Exhibit 6 – ADC Disclosure Reports, # 7 Exhibit 7 – ADC Exec. Comm. Minutes, # 8 Exhibit 8 – Discovery Materials)(Parker, William) (Entered: 04/25/2014) |

| | | | |
|---|---|---|---|
| 04/25/2014 | 45 | | Brief re 44 MOTION for Summary Judgment *&Evidentiary Submission (and Opposition to Plaintiffs' Motions for Preliminary Injunction)* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 04/25/2014) |
| 05/05/2014 | | | ORDER. The telephone conference previously set for Friday, May 9, 2014, is hereby RESET for 10:00 a.m. on Thursday, May 8, 2014. The call–in number is 205–278–2186 and the Meeting ID is 3895. Signed by Magistrate Judge John E. Ott on May 5, 2014. (TDS) (Entered: 05/05/2014) |
| 05/05/2014 | 46 | | REPLY Brief filed by Plaintiffs Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne re: 44 MOTION for Summary Judgment *&Evidentiary Submission* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit EE ADC 2012 reports, # 2 Exhibit FF ADC 2012 summary, # 3 Exhibit GG Storm PAC, # 4 Exhibit HH Frederick book, # 5 Exhibit II FEC list, # 6 Exhibit JJ Reed declaration)(Still, W) (Entered: 05/05/2014) |
| 05/05/2014 | 47 | | REPLY Brief filed by Plaintiffs Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne re: 45 Brief filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, W) (Entered: 05/05/2014) |
| 05/08/2014 | | | ORDER Oral Argument set for 5/27/2014 01:30 PM before Magistrate Judge John E Ott; this hearing will be cancelled if the court deems it not necessary after all briefs are submitted; dft's reply brief due 5/19/14; Signed by Magistrate Judge John E Ott on 5/27/2014. (BST, ) (Entered: 05/08/2014) |
| 05/19/2014 | 48 | | REPLY Brief filed by Defendants Robert L Broussard, Bryce U Graham, Jr, Luther Strange re: 45 Brief *in Support of Summary Judgment* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 05/19/2014) |
| 05/27/2014 | 49 | | RESPONSE to *Plaintiffs' Statement of Facts (Doc. 46)* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 05/27/2014) |
| 05/27/2014 | | | Minute Entry for proceedings held before Magistrate Judge John E Ott: Evidentiary Hearing held on 5/27/2014; court's preliminary questions; pla's argument; dft's argument; hrg adj. (Court Reporter Lindy Fuller.) (BST, ) (Entered: 05/28/2014) |
| 06/04/2014 | 50 | | RESPONSE to *Plaintiffs' Oral Argument Exhibit* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Parker, William) (Entered: 06/04/2014) |
| 06/04/2014 | 51 | | REPLY Brief filed by Plaintiffs Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne re: 50 Response (other) *(re oral argument exhibit)* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Attachments: # 1 Exhibit 1 (from oral argument))(Still, W) (Entered: 06/04/2014) |
| 09/30/2014 | 52 | | TEXT ORDER. On January 16, 2014, Plaintiffs filed a 37 Motion for |

| | | | |
|---|---|---|---|
| | | | Preliminary Injunction. After consulting with the parties, the court determined that the most efficient way to proceed was by combining the Motion for Preliminary Injunction with the final adjudication on the merits and ordered the parties to conduct discovery. (Doc. 38). After discovery was completed, Plaintiffs filed a Second Motion for Preliminary Injunction that is essentially a more thorough version of their initial motion that is supported by evidence. In light of this, the court finds that Plaintiffs' 37 First Motion for Preliminary Injunction is MOOT. Signed by Magistrate Judge John E. Ott on September 30, 2014. (TDS) (Entered: 09/30/2014) |
| 10/07/2014 | 53 | | RESPONSE to *Plaintiffs' Notice of Additional Authority* filed by Robert L Broussard, Bryce U Graham, Jr, Luther Strange. (Attachments: # 1 Exhibit A – O'Keefe Decision, # 2 Exhibit B – Plaintiffs' O'Keefe cover letter)(Parker, William) (Entered: 10/07/2014) |
| 10/07/2014 | 54 | | NOTICE by Robert L Broussard, Bryce U Graham, Jr, Luther Strange *of Additional Authority* (Parker, William) (Entered: 10/07/2014) |
| 10/13/2014 | 55 | | RESPONSE to re 54 *Notice of Additional Authority* filed by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, W) (Entered: 10/13/2014) |
| 12/17/2014 | 56 | | NOTICE by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne re 43 Second MOTION for Preliminary Injunction *(new authority re separate accounts)* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Still, W) (Entered: 12/17/2014) |
| 04/30/2015 | 57 | | NOTICE by Robert L Broussard, Bryce U Graham, Jr, Luther Strange *of Additional Authority (Williams–Yulee v. Fla. Bar)* (Parker, William) (Entered: 04/30/2015) |
| 05/02/2015 | 58 | | NOTICE by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne *(response to additional authority of Def)* (Still, W) (Entered: 05/02/2015) |
| 08/03/2015 | 59 | 16 | MEMORANDUM OPINION. Signed by Magistrate Judge John E Ott on 7/31/2015. (KAM, ) (Entered: 08/03/2015) |
| 08/03/2015 | 60 | 51 | ORDER in accordance with the memo opn entered contemporaneously, denying 43 Motion for Preliminary Injunction; denying 44 Motion for Summary Judgment; the court finds on the merits that ALA. CODE § 17–5–15(b) is constitutional as applied to the Alabama Democratic Conference.. Signed by Magistrate Judge John E Ott on 7/31/2015. (KAM, ) (Entered: 08/03/2015) |
| 08/29/2015 | 61 | 14 | NOTICE OF APPEAL as to 60 Order on Motion for Preliminary Injunction, Order on Motion for Summary Judgment,, 59 Memorandum Opinion by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne. (Still, W) (Entered: 08/29/2015) |
| 08/29/2015 | 62 | | TRANSCRIPT REQUEST by Alabama Democratic Conference, The, Eddie Greene, James Griffin, Bob Harrison, Emmitt E Jimmar, Jimmie Payne (Still, W) (Entered: 08/29/2015) |
| 09/01/2015 | 63 | 13 | NOTICE of transmittal letter (KAM, ) (Entered: 09/01/2015) |

FILED

2015 Sep-01  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**Northern District of Alabama**
**Office of the Clerk**
**Hugo L. Black United States Courthouse**
**Room 140, 1729 5th Avenue North**
**Birmingham, Alabama 35203**
**(205) 278-1700**

Mr. Douglas Mincher, Clerk
U.S. Court of Appeals, 11th Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303.

U.S.D.C. No. 5:11cv2449-JEO
U.S.C.A. No. NEW APPEAL
IN RE: Alabama Democratic Conference, et al v. Luther Strange, et al

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this transmittal.

☒        Certified copy of Notice of Appeal, Docket Entries and Judgment/Order and Opinion appealed from enclosed.

☐        Certified record, supplemental record on appeal consisting of: Click here to enter text. volume(s) of pleadings, etc.; Click here to enter text.volume(s) of transcripts;

☒        First Notice of Appeal? Yes   Dates of other Notices: Click here to enter text.

☐        The following materials **SEALED** in this court (order enclosed) consisting of: Click here to enter text.

☐        Original papers (court file) and certified copy of docket entries per USCA request.

☐        There was no hearing from which a transcript could be made.

☐        Copy of CJA Form 20 or District Court order appointing counsel.

☒        The appellant docket fee has been paid. No   Date Paid:

☐        The appellant has been Granted or Denied.        leave to appeal in forma pauperis and Granted or Denied.        request for certificate of appealability (order enclosed).

☒        The Judge/Magistrate Judge appealed from is: John E. Ott

☐        The Court Reporter is:    205-252-6565.

☐        This is a **BANKRUPTCY APPEAL**.   Please send notice of final order and/or opinion to: Scott W. Ford, Acting Clerk, U.S. Bankruptcy Court, 1800 5th Avenue North, Birmingham, Alabama 35203.

☐        This is a **DEATH PENALTY** appeal.

☐        Appellant having failed to cure procedural defects re: appeal fee, the appeal is due to be DISMISSED.

☐        Other:

xc:   Counsel                         Sharon Harris, Clerk

                         By:__K. Miller_____
                                    Deputy Clerk

FILED
2015 Aug-29  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ALABAMA,
NORTHEASTERN DIVISION

| | |
|---|---|
| THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LUTHER STRANGE in his official capacity as the Attorney General of Alabama; et al., <br><br> Defendants. | CIVIL ACTION NO. 5:11-cv-02449-JEO |

## Plaintiffs' Notice of Appeal

THE ALABAMA DEMOCRATIC CONFERENCE, an Alabama political action committee, DR. EDDIE GREENE, JAMES GRIFFIN, BOB HARRISON, EMMITT E. JIMMAR, and JIMMIE PAYNE give notice of their appeal, to the United States Court of Appeals for the Eleventh Circuit, of the District Court's Memorandum Opinion and Order (doc. 59) and Judgment (doc. 60), entered 3 August 2015.

Submitted by,

/s/ Edward Still

| | |
|---|---|
| John K. Tanner <br> 3743 Military Rd, NW <br> Washington DC 20015 <br> Phone: 202-503-7696 <br> Email: john.k.tanner@gmail.com | Edward Still <br> 429 Green Springs Hwy STE 161-604 <br> Birmingham AL 35209 <br> Phone & fax: 205-320-2882 <br> email: still@votelaw.com |

1

Joe M. Reed
Joe M. Reed & Associates, LLC
524 S. Union Street
Montgomery, AL 36104
Phone: 334-834-2000
Fax: 334-834-2088
email: joe@joereedlaw.com

Norman Osaygefo Grubbs
The Grubbs Firm
1904 Berryhill Rd Ste 100
Montgomery, AL 36117-7789
E-mail:
ogrubbs@mylawyerlobby.com
Phone & fax: 334-523-9200

## CERTIFICATE OF SERVICE

I certify that on 29 August 2015 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

Andrew L. Brasher
James W. Davis
Winfield J. Sinclair
William Parker Jr.
Attorney General's Office
PO Box 300152
Montgomery, AL 36130-0152
abrasher@ago.state.al.us
jimdavis@ago.state.al.us
wparker@ago.state.al.us
wsinclair@ago.state.al.us

/s/ Edward Still

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **THE ALABAMA** | ) | |
| **DEMOCRATIC CONFERENCE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.:  5:11-cv-02449-JEO** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LUTHER STRANGE, in his** | ) | |
| **official capacity as Attorney** | ) | |
| **General of Alabama, et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

Alabama's Fair Campaign Practices Act ("FCPA") prohibits a political

action committee ("PAC") from making contributions, expenditures, or transfers

of funds to another PAC, except that a PAC that is not a "principal campaign

committee" may make contributions, expenditures, or transfers of funds to a

principal campaign committee.  ALA. CODE § 17-5-15(b).  This law was enacted in

response to concerns that donors were concealing their contributions to candidates

by "laundering" those contributions through multiple PACs before the donation

finally arrived with a candidate.  The broad language of the statute prohibits all

contributions, expenditures, and transfers of funds between PACs, except as noted

above, including those from one PAC to a second PAC where the money is to be

16

used solely for "independent expenditures."  The Alabama Democratic Conference

("the ADC") asserts the prohibition on its ability to receive contributions to be

used solely for independent expenditures violates the PAC's First Amendment

rights.  At the outset, the court notes that the ADC does not challenge ALA. CODE

§ 17-5-15(b) on its face, but rather brings an as applied challenge.  (Doc. 1 at ¶¶

29-43).

## I.    PROCEDURAL HISTORY AND FINDINGS OF FACT

### A.    PROCEDURAL HISTORY

On July 6, 2011, the ADC, a PAC under Alabama law, and five of its

members (collectively "the ADC" or "Plaintiffs") sued the Alabama Attorney

General and two District Attorneys (collectively "the State" or "Defendants") to

enjoin the enforcement of ALA. CODE § 17-5-15(b), the so-called PAC-to-PAC

transfer ban, because it violates the ADC's First Amendment rights and § 2 of the

Voting Rights Act, 52 U.S.C. § 10301 (previously codified at 42 U.S.C. § 1973.

(Doc. 1).  The State moved to dismiss the case (doc. 7) and the ADC moved for

partial summary judgment (doc. 9).  The undersigned granted the ADC's motion

for partial summary judgment as to the First Amendment claim and granted the

State's motion to dismiss the Voting Rights Act claim.  (Doc. 24).  The State

appealed the grant of summary judgment as to the First Amendment claim and the

2

Eleventh Circuit Court of Appeals reversed.  (Doc. 34).

On remand, the ADC filed a "Second Motion for Preliminary Injunction" (Doc. 43) and the State filed a "Motion for Summary Judgment and Evidentiary Submission."  (Doc. 44).  Prior to the filing of these motions, the court, together with the parties, determined that the best way to address the pending issues was to combine the Motion for Preliminary Injunction with a final adjudication on the merits.  (Doc. 38).[1]  The parties declined the opportunity to present live testimony to the court on these matters, and instead agreed to rely on the evidence submitted with their respective motions. The motions were fully briefed and are now properly under submission before the court.

As previously noted, the court is prepared to proceed to a final adjudication of the matter on the merits.  As such, both Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion for Summary Judgment are due to be denied. The court will consider the evidence and arguments offered in its final adjudication of the merits.[2]

---

[1] Because the court is proceeding to a final adjudication on the merits, Plaintiffs' Second Motion for Preliminary Injunction is moot.

[2] The central question in this case is whether the PAC-to-PAC transfer ban is closely drawn to serve a sufficiently important state interest.  Crucial to that determination is whether "the establishment of separate bank accounts by ADC, a hybrid independent expenditure and campaign contribution organization, eliminates all corruption concerns."  *Alabama Democratic Conference v. Broussard*, 541 F. App'x 931, 936 (11th Cir. 2013).  The Eleventh Circuit held

## B.      FINDINGS OF FACT[3]

### 1.      The Alabama Fair Campaign Practices Act

Alabama's political campaigns are governed by Alabama's Fair Campaign

Practices Act.  *See* ALA. CODE §§ 17-5-1, *et seq*.  The FCPA requires disclosure of

certain information, but, for the most part, does not contain any limits on the

amount of money that an individual, business, or political organization can

contribute directly to the campaign of a candidate for office.[4]  Under the FCPA, it

is

---

that this is a question of fact.  *Id.*  As such, summary judgment is inappropriate.

[3] This section comprises the undersigned's findings of fact.  However, the court notes that the evidence presented by the parties is largely undisputed.  (Docs. 45 at 61-77, 46, and 49). Where a fact offered by one party is either admitted or undisputed by the other party, and is also supported by the evidence, the court will cite directly to the numbered fact offered by that party. Where the fact is one that was initially offered by the Plaintiffs, the court will use the citation (PAF No. X), with X standing for the numbered paragraph used by Plaintiffs in their statement of facts, which is located at docket number 46.  Where the fact is one initially offered by Defendants, the court will use the citation (DAF No. X), with X standing for the numbered paragraph used by Defendants in their statement of facts, which is located at docket number 45. Before continuing, the court notes that Plaintiffs nominally dispute the vast majority of Defendants' undisputed facts. (Doc. 46 at ¶ 37) ("The statements alleged in ... Defendants' Numbered Statements of Undisputed Facts relate to the period before the development of a searchable database and have no relevance to the operation of the new system and the exponentially greater transparency it has created.).  This statement does not contest the accuracy of the facts offered by Defendant, but rather contests their relevancy.  Because Plaintiffs do not contest the accuracy of the facts, or provide contrary evidence, the court will consider these facts admitted.  Finally, the court will explicitly note when it is resolving a disputed fact.

[4] While not relevant here, ALA. CODE § 17-5-14(c) prohibits utilities regulated by the Public Service Commission from contributing to a candidate running for a position on the Public Service Commission.

unlawful for any person, acting for himself or herself or on behalf of any entity, to make a contribution in the name of another person or entity, or knowingly permit his or her name, or the entity's name, to be used to effect such a contribution made by one person or entity in the name of another person or entity, or for any candidate, principal campaign committee, or political action committee to knowingly accept a contribution made by one person or entity in the name of another person or entity.

ALA. CODE § 17-5-15(a).

Prior to 2010, the appearance in Alabama was that donors were attempting to conceal donations to candidates and other groups by laundering said donations through multiple PACs.  (Doc. 7-4).  This was allegedly accomplished when a donor made a contribution to one PAC, which in turn made a contribution to another PAC, which then made a contribution to yet another PAC and so on, such that by the time the money was delivered to a candidate there was no way to effectively trace the contribution from the original donor to the ultimate recipient.[5]

---

[5] At this juncture, the court would like to note that neither party submitted definitive proof that any donor actually did this with the intent to evade the disclosure requirements.  The State submitted an indictment alleging that bribery was facilitated by transactions such as these. (Doc. 45 at ¶¶ 41-53).  However, an indictment does not constitute proof.  While most of the defendants to that indictment were found not guilty (DAF No. 53), Ronald Gilley pleaded guilty. In doing so he signed a Factual Basis for Plea that admitted that he "attempted to conceal the true nature, source, and control of the payments made to members of the Alabama Legislature in return for favorable votes ... by engaging in financial transactions and disguising illicit payments through political action committees and using conduit contributors, and other means." *United States v. Gilley*, No. 2:10-cr-00186-MHT-WC, Doc. 986 at ¶ 24 (M.D. Ala. April 22, 2011). This admission does not provide enough detail to definitively say he was admitting to funneling money through multiple PACs in the manner noted above.  That being said, there is ample evidence in the record by way of numerous newspaper articles and other testimony, especially from Ashley Newman, to support the finding that, at the very least, the public perception prior to

(DAF No. 2).  Because there are no limits on the number of PACs any one person

can create in Alabama, a single campaign operative could control all of the PACs

in a contribution chain and carry out a scheme to conceal the source of a campaign

contribution by simply moving money from one PAC to another.  (DAF No. 4;

PAF No. 9).[6]

In order to stop this from occurring, the Alabama Legislature amended the

FCPA in 2010 to prohibit PACs[7] and  tax exempt political organizations[8] from

making a contribution, expenditure, or any other transfer of funds to any other

PAC or tax exempt political organization.  ALA. CODE § 17-5-15(b).  The parties,

and at times the court, call this provision the PAC-to-PAC transfer ban.  That

---

2010 was that donors were laundering money through PACs for the purpose of concealing their
identities.

[6] In their admitted fact, Defendants cite testimony stating that a campaign operative could
accomplish this by moving credits from one of the PACs he controlled to a different PAC. (DAF
No. 4).  Plaintiffs point out that pursuant to ALA. CODE § 17-5-6, except for expenditures that are
less than one hundred dollars, all expenditures must be made with a check from the PAC's
checking account. (PAF No. 9).  Plaintiffs' point is well taken.  However, the details of how a
political operative could legally move money between accounts is immaterial. What is relevant
is, at the time, the perception was that donors were legally moving money through PACs for the
purpose of concealing who was making the contribution and that could be made easier by the fact
one political operative could control a number of PACs.

[7] Under the Act, a PAC is defined broadly to include "[a]ny ... group of one or more
persons ... which receives or anticipates receiving contributions and makes or anticipates making
expenditures to or on behalf of any Alabama state or local elected official, proposition, candidate,
principal campaign committee or other political action committee."  ALA. CODE § 17-5-2(a)(12).

[8] Because the organization at the center of this case is a PAC, the court will use that term
in this opinion.

being said, the provision encompasses more than just transfers of funds: PACs are also prohibited from making contributions or expenditures to other PACs.

The Legislature amended this provision in 2013.  The relevant portion of the FCPA that is subject to the constitutional challenge before the court now provides:

> (b) It shall be unlawful for any political action committee or tax exempt political organization under 26 U.S.C. § 527, including a principal campaign committee, or any person authorized to make an expenditure on behalf of such political action committee or 527 organization, to make a contribution, expenditure, or any other transfer of funds to any other political action committee or 527 organization....  Notwithstanding the foregoing, a political action committee that is not a principal campaign committee may make contributions, expenditures, or other transfers of funds to a principal campaign committee

*Id*.

In 2011 and 2013, the Alabama Legislature amended the FCPA's disclosure requirements for elections. First, pre-election campaign finance reports must be filed more frequently that before.  ALA. CODE § 17-5-8(a). Second, the Secretary of State was required to establish a system of electronic filing of reports such that said reports were made part of a searchable database. ALA. CODE § 17-5-8.1(b). The searchable database provides the ability to search by a recipient's name, a contributor's name, a contributor's or recipient's Zip Code, and date of contribution.  *Id.*  Finally, any person or entity making an "electioneering

communication" must file the same type of reports as PACs file.[9]  ALA. CODE §

17-5-8(h).

### 2.     The Alabama Democratic Conference

The ADC was founded in 1960 and operates as a group advocating the

rights of black citizens.  (PAF No. 18).  Its basic mission is to organize and unify

the black vote.  (DAF No. 57).  It is a statewide organization with local chapters in

over 60 counties and approximately 3,000 members.  (PAF Nos. 18, 26; DAF Nos.

55, 58).  These local chapters are not separately incorporated, but are instead

internal divisions within the ADC.  (DAF No. 59).

The ADC endorses candidates for many state, district, and local positions, in

both primary and general elections.  (PAF No. 27).  Candidates seeking the ADC's

endorsement must appear in person to be interviewed.  (PAF No. 27). County

chapters decide which candidate to endorse for county elections, and the ADC

Executive Committee decides which candidate to endorse for statewide positions.

(PAF No. 27; DAF No. 66).  These endorsements are not based on whether a

candidate contributed to ADC: some candidate committees make donations to

---

[9] An electioneering communication is an expenditure over one-thousand dollars for a communication made within 120 days of an election that contains the name or image of a candidate and is for the purpose of influencing the outcome of an election.  ALA. CODE § 17-5-2(a)(5).

ADC and others do not.  (PAF No. 28).

The ADC spends its money by, among other things, providing money to its local chapters, funding get-out-the-vote efforts, and making contributions to candidates.  The ADC distributes a base amount of its available funds to each of its chapters.  (PAF 30).  Remaining funds are distributed based on an independent determination by the Chair of the ADC based on a variety of factors, including the size of the county's black population and the effectiveness of the local chapter. (PAF Nos. 29-30; DAF Nos. 61, 67-68).  In addition to distributing money to its chapters, the ADC also covers the cost of printing yellow sample ballots indicting which candidates the ADC endorses.  (DAF No. 62).  These yellow sample ballots play a role in the ADC's get-out-the-vote efforts, which include: distributing yellow sample ballots, calling people to encourage them to vote, attending churches or ministers' meetings to promote the ADC's message, promoting the use of absentee ballots, running radio spots encouraging people to vote, conducting phone bank and robocall campaigns, and paying for rides to the polls. (DAF No. 63).

The ADC has a close working relationship with the Democratic Party within the State of Alabama.  (DAF No. 72).  According to its constitution, one of the ADC's purposes is to "advocate and advance the cause of the Democratic Party."

9

(DAF No. 75 (quoting Doc. 44-2 at 2)).  The ADC focuses its activities on the Democratic Party because it perceives the Republican Party as hostile to the aspirations of black citizens.  (PAF No. 21).  The ADC actively seeks to influence the Democratic Party.  (PAF No. 20).  This is shown in the minutes of ADC Executive Committee meetings where on multiple occasions the ADC Chair encouraged ADC members and groups to become involved in the Democratic Party and influence the Party's decisions.  (DAF Nos. 76, 78, 80-85).  For example, in a 2007 Executive Committee meeting, ADC Chair Joe Reed noted that "it is important for ADC members to be involved in the local Democratic Executive Committee meetings since this group will play a very important role in the upcoming elections." (DAF No. 80 (quoting Doc. 44-7 at 8)).  In addition, these minutes noted at least two occasions where the Democratic Party provided assistance to the ADC: (1) in a 2006 meeting, Reed announced that Democratic National Committee ("DNC") staffers would be available to assist local ADC chapters in organizing community meetings and (2) in that same meeting, the State Democratic Party Chair gave brief remarks.  (DAF Nos. 77, 79).

That being said, the ADC endorses and actively supports certain candidates and actively opposes others in Democratic primary elections.  (PAF No. 20). Generally, for the general election, the ADC's yellow sample ballot recommends a

straight democratic ticket vote.  (DAF No. 88).  However, the ADC refuses to

endorse certain Democratic candidates in general elections and at times opposes

actions and policies of Democratic Party leaders and Democratic elected officials.

(PAF No. 23).

    As of February 2014, approximately 107 out of 292 total members of the

Alabama Democratic Executive Committee[10] ("ADEC") were also members of the

ADC.  (DAF No. 92).  Additionally, all five of the non-vacant ADC executive

officer positions were held by members of the Alabama Democratic Executive

Committee.  From 2005 through 2010, the ADC received four contributions from

the Alabama Democratic Party totaling $87,648.00.  (DAF No. 96).  The ADC has

not received money since then, however.  (DAF No. 97).

    In addition to having a relationship with the Democratic Party, the ADC

also has relationships with current and former public officeholders.  As of

February 2014, three of the five non-vacant ADC executive officer positions were

held by individuals who are current or previous public office holders.  (DAF No.

98).  Further, the ADC's constitution provides that the Executive Committee

includes "nine elected ex-officio members who shall be allocated as follows: three

---

[10]The ADEC is the governing body of the Alabama Democratic Party.  *See* http://
aldemocrats.org/about (last visited July 31, 2015).

11

members of the Alabama Legislature, three elected municipal officials, [and] three elected county officials." (DAF No. 99 (quoting Doc. 44-2 at 6)).  The minutes from a 2007 ADC Executive Committee meeting note that "[s]ome local organizations are leaving it up to local elected officials to determine the agenda of the [local ADC chapters]."  (DAF No. 107 (quoting 44-7 at 5)).

Additionally, the ADC actively solicits contributions from candidates running for public office.  From 2005 to 2010, the ADC received approximately $502,350.95 in contributions from candidates.  (DAF No. 123).  In 2010, three of the four candidates for state office endorsed by ADC contributed a total of $122,000 to the ADC.  (DAF No. 125).  On occasion, ADC works with or contributes to candidates to bolster its get-out-the-vote efforts.  (DAF No. 112). From 2005 to 2010, the ADC made approximately $42,340.00 in contributions to candidates or their committees for purposes of assisting with its get-out-the-vote efforts.  (DAF No. 124).

The ADC performed get-out-the-vote activities in support of each of the candidates that contributed to the ADC in 2010.  (DAF No. 104).  Candidates give money to the ADC "to turn the vote out to help them get elected."  (DAF No. 108 (quoting Doc. 43-4 at 31)).  The minutes of a 2010 Executive Committee meeting note that ADC Chair Reed reported that candidates "who do not help pay for [get

12

out the vote] will be left off the [yellow sample] ballot." (DAF 106 (quoting Doc. 44-7 at 15)). The ADC Chair considers a candidate's contribution to ADC's get-out-the-vote efforts as helpful to that candidate's own campaign. (Doc. 43-4 at 31). The ADC tells candidates what its "procedure is for getting out the vote and that they are expected to win their own elections." (Doc. 43-4 at 57). The ADC tells the candidate what its plans are and if "the [candidate has] something to suggest to [the ADC], [the ADC] listens to it. And if [the ADC] likens] it, [it'll] do it." (Doc. 43-4 at 57; DAF No. 117). ADC Chair Reed noted: "[One of the things you have to be careful about is that you can't run everybody's campaign. As ADC Chairman, you can't run – once we endorse, we endorse doing our procedure. But we can't be everybody's campaign manager. And oftentimes they want that." (Doc. 43-4 at 56).

Upon the enactment of the PAC-to-PAC transfer ban, the ADC sought to restructure its activities in a manner consistent with those upheld by the court in *Emily's List v. Federal Election Common*, 581 F.3d 1 (D.C. Cir. 2009). (PAF No. 35). Specifically, the ADC has established two bank accounts, one to receive contributions from individuals and businesses for the purpose of making contributions to candidates (the Candidate Account) and the other to receive contributions from any entity, including other PACs, for maintaining ADC

infrastructure, for get-out-the-vote efforts, and for other independent expenditures (including contributions to other PACs for use in their get-out-the-vote efforts) (Independent Expenditure Only Account).  (Doc. 9-1 at 5; Doc. 43 at 16-17; DAF No. 132).  The Independent-Expenditure-Only Account is controlled by the same entity or people that control the ADC's Candidate Account.  (DAF No. 133).

## II.   DISCUSSION

The First Amendment to the United States Constitution declares that "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I.  "Speech is an essential mechanism of democracy," the Supreme Court has observed, "for it is the means to hold officials accountable to the people." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010).  The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office."  *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, — U.S. ——, 131 S. Ct. 2806, 2817 (2011) (internal quotation marks omitted).  Further, it "is well-established that political contributions are considered to be political speech [and are] protected by the First Amendment." *Alabama Democratic Conference v. Broussard*, 541 F. App'x 931, 932-33 (11th Cir. 2013).  "Laws restricting campaign contributions are permissible, however, if the State can establish that they are 'closely drawn' to serve a 'sufficiently important interest.'"

14

*Id.* at 933 (citing *Buckley v. Vale,* 424 U.S. 1, 23-25 (1976)).

"The Supreme Court has specifically held that 'preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.' "[11] *Id.* (quoting *FEC v. Natal Conservative Political Action Comm.*, 470 U.S. 480, 496-97 (1985)).   The Supreme Court recently said the following about a state's interest in preventing corruption:

> In a series of cases over the past 40 years, we have spelled out how to draw the constitutional line between the permissible goal of avoiding corruption in the political process and the impermissible desire simply to limit political speech. We have said that government regulation may not target the general gratitude a candidate may feel toward those who support him or his allies, or the political access such support may afford. "Ingratiation and access ... are not corruption." *Citizens United v. Federal Election Common,* 558 U.S. 310, 360, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010). They embody a central feature of democracy—that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those

---

[11] Both parties discuss the applicability of the State's transparency interest in this case. The ADC even concedes that "transparency is a legitimate and important governmental concern." (Doc. 43 at 31).  However, this does not change the fact that preventing corruption or the appearance thereof is the only interest that the Supreme Court has found sufficiently important. Even if the undersigned were inclined to consider this interest based on the ADC's concession, the court is nonetheless bound by the Eleventh Circuit's opinion in this case establishing that the only sufficiently important interest is the prevention of corruption.  *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) ("Under the law of the case doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.").

The court does note, however, that transparency plainly is related to and furthers the State's interest in preventing corruption and the appearance of corruption insofar as one can only assess whether there has been a *quid pro quo* exchange if one is able to identify the party making the payment.

15

concerns.

> Any regulation must instead target what we have called "*quid pro quo*" corruption or its appearance. See *id*., at 359, 130 S. Ct. 876. That Latin phrase captures the notion of a direct exchange of an official act for money. *See McCormick v. United States,* 500 U.S. 257, 266, 111 S. Ct. 1807, 114 L. Ed. 2d 307 (1991). "The hallmark of corruption is the financial *quid pro quo*: dollars for political favors." *Federal Election Common v. National Conservative Political Action Comm.,* 470 U.S. 480, 497, 105 S. Ct. 1459, 84 L. Ed. 2d 455 (1985). Campaign finance restrictions that pursue other objectives, we have explained, impermissibly inject the Government "into the debate over who should govern." *Bennett, supra,* at ——, 131 S. Ct., at 2826. And those who govern should be the *last* people to help decide who *should* govern.

*McCutcheon v. Fed. Election Common*, ___U.S.___, 134 S. Ct. 1434, 1441-42 (2014). In other words, the only sufficiently important interest that will support the PAC-to-PAC transfer ban is preventing *quid pro quo* corruption or the appearance thereof.

With that in mind, the court will first address the question of whether the PAC-to-PAC transfer ban "sufficiently implicates the State's anti-corruption interest" before addressing whether the challenged statute is closely drawn to serve that interest. *Alabama Democratic Conference*, 541 F. App'x at 934.

### A. Does the PAC-to-PAC Transfer Ban as Applied to the ADC Implicate the State's Anti-corruption interest?

#### 1. The Law

Before delving into the specifics the State's anti-corruption interest in

banning contributions from one PAC to another PAC as it applies to ADC, the undersigned will first set out some guideposts.

First, it is unquestionable that a state has an anti-corruption interest in limiting contributions made to a candidate. *Buckley*, 424 U.S. at 29.  Further, when an expenditure is made in coordination with a candidate, it functions as a contribution and is treated as such.  *See Fed. Election Common v. Colorado Republican Fed. Campaign Comm.*, 533 U.S. 431, 447 (2001).  Finally, in addition to having an anti-corruption interest in limiting contributions to candidates, a state has an anti-corruption interest in preventing the circumvention of those contribution limits.  *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 140 n.20 (2d Cir. 2014); *Catholic Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 444 (5th Cir. 2014).

Second, independent expenditures do not give rise to corruption or the appearance thereof.  *Citizen's United*, 558 U.S. at 357.  After *Citizens United*, the Court no longer perceives a

> threat of quid pro quo corruption ... when independent groups spend money on political speech.  By definition, an independent expenditure is political speech presented to the electorate that is not coordinated with a candidate.  The separation between candidates and independent expenditure groups negates the possibility that independent expenditures will result in the sort of quid pro quo corruption with which [the Court's] case law is concerned. In short,

17

the candidate-funding circuit is broken. *Citizens United* thus held as a categorical matter that independent expenditures do not lead to, or create the appearance of, *quid pro quo* corruption.

*Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 153 (7th Cir. 2011)

(internal citations and quotation marks omitted).

After the Supreme Court held as a matter of law that independent expenditures do not constitute a threat of *quid pro quo* corruption, federal courts around the country began invalidating laws that limited *contributions* to independent expenditure only organizations. These various courts agreed that such limits do not withstand First Amendment scrutiny. *Republican Party of New Mexico v. King*, 741 F.3d 1089, 1096-97 (10th Cir. 2013); *New York Progress and Protection PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013); *Texans for Free Enterprise v. Texas Ethics Common*, 732 F.3d 535, 537-38 (5th Cir. 2013); *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d at 154; *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1121 (9th Cir. 2011); *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 696 (9th Cir. 2010); *SpeechNow.org v. FEC*, 599 F.3d 686, 694-96 (D.C. Cir. 2010) (en banc); *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 292-93 (4th Cir. 2008) (pre-*Citizens United*). In fact, the Second Circuit Court of Appeals observed that "few contested legal questions are answered so consistently by so many courts and

18

judges." *Walsh*, 733 F.3d at 488.

With the foregoing in mind, the court turns to the nature of the ADC, a PAC that, through two separate accounts, proposes to make both direct contributions to candidates and independent expenditures. The court will refer to these types of political committees and other organizations that engage in both independent expenditures and direct contributions to candidates as hybrid organizations or hybrid PACs. The question before the court is whether the State can permissibly restrict the ADC from receiving contributions from other PACs when those contributions will be used exclusively for independent expenditures.

The Circuit Courts are split on how to treat limitations on contributions to hybrid organizations when the contribution in question will solely fund independent expenditures. The Tenth Circuit found that segregated bank accounts for candidate contributions and independent expenditures were sufficient to alleviate a state's corruption concerns so long as the organization adhered to direct contribution limits and anti-coordination laws.[12] *Republican Party of New*

---

[12] In *Emily's List*, 581 F.3d 1, the District of Columbia Circuit found unconstitutional a Federal Election Commission regulation dictating that a large percentage of certain election-related activities, such advertisements, get-out-the-vote efforts, and voter registration drives be funded from a group's hard-money account. The court stated:

A non-profit that makes expenditures to support federal candidates does not suddenly forfeit its First Amendment rights when it decides also to make direct contributions to parties or candidates. Rather, it simply must ensure, to avoid circumvention of

*Mexico*, 741 F.3d at 1101.  The court found that a "hybrid PAC's direct contribution does not alter the uncoordinated nature of its *independent expenditures;* there still must be some attendant coordination with the candidate or political party to make corruption real or apparent." *Id.*

On the other hand, the Second and Fifth Circuits have found that the fact that an organization has separate bank accounts for independent expenditures and candidate contributions is not enough to alleviate a state's anti-corruption interest on its own.  In *Catholic Leadership Coal. of Texas*, 764 F.3d 409, the court upheld an as-applied challenge to a law preventing a hybrid PAC from accepting an email distribution list from a nonprofit corporation (donating the email distribution list would have been considered a contribution).  *Id.* at 418-19.  The email list was to be solely used in support of the PAC's independent expenditures.  *Id.*  In determining that the state had an anti-corruption interest in preventing the hybrid PAC from accepting the email distribution list, the court first noted that Texas law prohibits corporate contributions to candidates and that the ban on corporate contributions to PACs that contribute to candidates was a valid "anticircumvention

---

individual contribution limits by its donors, that its contributions to parties or candidates come from a hard-money account.

*Id.* at 12.

measure to prevent corporations from using a political committee to do an end-run around Texas's direct contribution ban." *Id.* at 443.  The court then reasoned that "[e]ven if the state does not have an anti-corruption interest in limiting contributions intended to support independent expenditures ... the state does have an anti-corruption interest in ensuring those donations facilitate only independent expenditures." *Id.* at 443.  In short, it was constitutionally permissible for Texas to ban corporate contributions to hybrid organizations that "lack[] sufficient internal controls to safeguard against the risk that the corporate contributions, even if formally earmarked for independent expenditures, could be funneled to a candidate." *Id.* at 445.

Similarly, the Second Circuit upheld an as applied challenge limiting contributions to an independent-expenditure-only  group when that group was enmeshed financially and organizationally with a closely related group that made contributions to candidates.  *Vermont Right to Life Comm.*, 758 F.3d 118.  The court found that because of the lack of organizational separation between the two groups, the fact that they had separate bank accounts was insufficient to eliminate the risk of coordinated expenditures between candidates and the independent-expenditure-only group.  *Id.* at 144-45.

The Eleventh Circuit has also provided guidance with how the undersigned

21

should proceed.[13]  Most importantly, it found that the fact that ADC is operating

two accounts, one for independent expenditures and another for contributions to

candidates, is not enough, on its own, to eliminate the State's concerns about

corruption or the appearance thereof.  *Alabama Democratic Conference*, 541 F.

App'x at 935.  Specifically, the Eleventh Circuit stated that

> [w]hen an organization engages in independent expenditures as well as
> campaign contributions, as ADC does, its independence may be called
> into question and concerns of corruption may reappear.  At the very
> least, the public may believe that corruption continues to exist, despite
> the use of separate bank accounts, because both accounts are controlled
> and can be coordinated by the same entity.  Consequently, we cannot
> hold as a matter of law that the State's interest in preventing corruption
> or the appearance of corruption is insufficient to justify contribution
> limits on funds when the receiving organization also makes campaign
> contributions.

*Id.*  The court went on note that whether the anti-corruption interest is sufficient in

light of the record in this case, and whether the transfer ban is a closely drawn

means of furthering that interest, is a mixed question of law and fact to be

determined by the undersigned.

The State offers several arguments explaining its anti-corruption interest in

---

[13] As noted earlier, while the Eleventh Circuit's earlier opinion in this matter is
unpublished, and thus does not constitute precedent in other cases, it is nevertheless the law of
this case.  As such, the undersigned is bound by it. *This That And The Other Gift And Tobacco,
Inc.*, 439 F.3d at 1283 ("Under the law of the case doctrine, the findings of fact and conclusions
of law by an appellate court are generally binding in all subsequent proceedings in the same case
in the trial court or on a later appeal.").

prohibiting the transfer of funds between PACs.  The arguments can generally be grouped into three categories: (1) how the State's anti-corruption interest is implicated when one PAC makes a contribution to another PAC, even if the PACs involved only make independent expenditures; (2) how the State's anti-corruption interest is implicated when one PAC is allowed to make contributions to a hybrid PAC's independent expenditure only account; and (3) how the State's anti-corruption interest is implicated by the nature of ADC and the way it conducts business.  Because the court finds that the nature of ADC as an organization implicates the State's anti-corruption interests, the undersigned will not address the State's broader anti-corruption arguments.  Accordingly, the court will focus on the third category of the State's arguments.

The State makes three arguments for why the nature of ADC specifically implicates its anti-corruption interest: (1) the lack of organization separation between the independent expenditure only side and the candidate contribution sides lends itself to the appearance of corruption; (2) the ADC is analogous to a political party or political party affiliate; and (3) the ADC's purported independent expenditures are actually coordinated expenditures.  The court will address each in turn.

### 1.   Does the ADC's Lack Organizational Separation Between the People that Control the Candidate Account and the Independent Expenditure Only Account?

As previously discussed, the ADC operates two bank accounts for purposes of keeping its funds for contributions to candidates separate from its funds to be used for independent expenditures.  It is undisputed that these two accounts are controlled by the same entity and people.  These two facts are all the court knows about how the ADC runs these separate accounts.  The ADC did not present any evidence to indicate there is any organizational separation with respect to the two accounts to alleviate any potential appearance of corruption.  Additionally, aside from the creation of two accounts, the ADC has not offered any evidence to indicate that it has implemented any other internal controls to safeguard against the risk that contributions, even if formally earmarked for independent expenditures, could be funneled to a candidate.

Bearing in mind the finding by the Eleventh Circuit that "[a]t the very least, the public may believe corruption continues to exist, despite the use of separate bank accounts, because both accounts are controlled and can be coordinated by the same entity," *Alabama Democratic Conference*, 541 F. App'x at 936, the undersigned finds that the State's "interest in preventing *quid pro quo* corruption and its appearance permits the [S]tate to insist, at the very least, that there is *some*

24

safeguard" in place to guard "against the risk that [contributions], even if formally earmarked for independent expenditure, could be funneled to a candidate." *Catholic Leadership Coal. of Texas*, 764 F.3d at 444-45.  In light of the lack evidence of some organizational division at the ADC such to ensure "that the independent expenditures are truly spent independent of any coordination with a candidate," *Vermont Right to Life Comm. v. Sorrell*, 758 F.3d at 145, or evidence of any other safeguard, the court finds that the State has a valid corruption concern with respect to the ADC.  Thus, the next question to be asked is whether the PAC-to-PAC transfer ban is closely drawn to that sufficiently important interest. However, before addressing that question, the court will briefly discuss the State's other corruption arguments as applied to the ADC.

### 2.      Is the ADC is Analogous to a Political Party?

The State theorizes that because the ADC has a close relationship with public officeholders and the Alabama Democratic Party, it should be treated as a political party for purposes of analyzing the State's anti-corruption interest.  (Doc. 45 at 44-47); (Doc. 48 at 12-13).  As explained below, this argument fails.

Before addressing the merits of this argument, the court will briefly restate some of the relevant facts.  These facts fall into two categories: (1) facts concerning the ADC's relationship with the Alabama Democratic Party and (2)

25

facts concerning the ADC's relationship with candidates and officeholders.

While the ADC is not a formal branch of the state Democratic Party, the two groups have a close relationship and pursue similar goals.  One of the ADC's stated purposes is to advocate and advance the cause of the Democratic Party and it actively seeks to influence that party.  Further, a large percentage of the members of the Alabama Democratic Executive Committee are also members of the ADC.  There is also evidence showing the Alabama Democratic Party's support of ADC.  As of February 2014, five of the non-vacant executive officer positions for the ADC were held by members of the Alabama Democratic Executive Committee.  In a 2006 ADC meeting, the Chair announced that the DNC would be available to assist local ADC chapters in organizing community meetings and the State Democratic Party Chair gave brief remarks.  Between 2005 and 2010, the ADC received $87,648.00 in contributions from the Alabama Democratic Party.

Part of what the ADC does is endorse parties for office and coordinate get-out-the-vote efforts that including publishing and distributing a yellow sample ballot highlight which candidates it endorses.  Candidates often donate to the ADC to support the get-out-the-vote efforts.  The ADC tells candidates what its get-out-the-vote procedures are and will listen to any ideas the candidates may have and, if

26

the ADC likes the ideas, implement said ideas.  With respect to officeholders, as of February 2014, three of the five non-vacant ADC Executive Officer positions were held by current or previous officeholders.  The ADC constitution provides for nine current officeholders to be included as ex-officio members of the ADC Executive Committee.  Finally, the minutes from a 2007 Executive Committee meeting note there was some discussion about how some local organizations were leaving it up to local officials to determine the agenda of the local ADC chapters.

The Supreme Court upheld contribution limits to national political parties' "soft money" accounts, accounts that are not used to make contributions to candidates, based on a vast amount of evidence indicating the corruptive nature of these contributions.  *McConnell v. Federal Election Common*, 540 U.S. 93, 143-154 (2003).  Specifically, the Court found that candidates and officeholders enjoy a special relationship and unity of interest with the national political parties.[14]  *Id.* at 145.  The Court further found that the national political parties, donors, and candidates exploited this relationship as follows:

> candidates and donors alike have in fact exploited the soft-money loophole, the former to increase their prospects of election and the

---

[14] To the extent the State points to evidence of the ADC's efforts to influence the Alabama Democratic Party as evidence of why it should be treated like a political party, that point is not well-taken.  The relevant question concerns the ADC's relationship to candidates and officeholders, not the Alabama Democratic Party.

latter to create debt on the part of officeholders, with the national parties serving as willing intermediaries.  Thus, despite FECA's hard-money limits on direct contributions to candidates, federal officeholders have commonly asked donors to make soft-money donations to national and state committees solely in order to assist federal campaigns, including the officeholder's own....  Parties kept tallies of the amounts of soft money raised by each officeholder, and "the amount of money a Member of Congress raise[d] for the national political party committees often affect[ed] the amount the committees g[a]ve to assist the Member's campaign....  Donors often asked that their contributions be credited to particular candidates, and the parties obliged, irrespective of whether the funds were hard or soft.... National party committees often teamed with individual candidates' campaign committees to create joint fundraising committees, which enabled the candidates to take advantage of the party's higher contribution limits while still allowing donors to give to their preferred candidate....  Even when not participating directly in the fundraising, federal officeholders were well aware of the identities of the donors: National party committees would distribute lists of potential or actual donors, or donors themselves would report their generosity to officeholders....

*For their part, lobbyists, CEOs, and wealthy individuals alike all have candidly admitted donating substantial sums of soft money to national committees not on ideological grounds, but for the express purpose of securing influence over federal officials.*

****

The record in the present cases is replete with similar examples of national party committees peddling access to federal candidates and officeholders in exchange for large soft-money donations....

So pervasive is this practice that the six national party committees actually furnish their own menus of opportunities for access to would-be soft-money donors, with increased prices reflecting an increased level of access.  For example, the DCCC offers a range of donor options,

starting with the $10,000–per–year Business Forum program, and going up to the $100,000–per–year National Finance Board program. The latter entitles the donor to bimonthly conference calls with the Democratic House leadership and chair of the DCCC, complimentary invitations to all DCCC fundraising events, two private dinners with the Democratic House leadership and ranking Members, and two retreats with the Democratic House leader and DCCC chair in Telluride, Colorado, and Hyannisport, Massachusetts.

*McConnell*, 540 U.S. at 146-51 (Internal citations and quotation marks omitted) (emphasis added). There is some question as to what extent *McConnell* remains good law after *Citizen's United*. *See Republican Nat. Comm. v. Fed. Election Common*, 698 F. Supp. 2d 150, 159 (D.D.C.), *aff'd*, 561 U.S. 1040 (2010). However, to whatever extent the limitations on contributions to a Political Party's soft money account are still valid under *McConnell*, the anti-corruption concerns that were raised in that case do not apply to the ADC, at least not on the record before the court. While there is some relationship between the ADC and candidates for office and current officeholders, unlike in *McConnell*, there is no evidence of the corruptive nature of those relationships. There is no evidence that ADC is providing donors access to candidates in exchange for their donations, that donors are donating to the ADC's get-out-the-vote efforts for purposes of securing access over a candidate for office, or that donors are donating to the ADC in order to circumvent contribution limits to a candidate, because, as noted previously,

29

Alabama does not have limits on the amount a donor can donate to a candidate.  In *McConnell* there was overwhelming evidence in the record to supports the Court's finding of the corruptive nature of donations to a National party's soft money account.  The evidence in this case does not rise to that level.[15]

### 3.    Are the ADC's Purported Independent Expenditures are Actually Coordinated Expenditures?

Finally, the State argues that it has an anti-corruption interest as applied to the ADC because its alleged independent expenditures are actually coordinated with candidates.  (Doc. 45 at 48-49).  In short, the argument is that because the ADC solicits contributions from candidates to fund the ADC's get-out-the-vote efforts, shares its get-out-the-vote procedures with candidates, and is willing to listen to candidates' suggestions with respect to get-out-the-vote procedures, then

---

[15] To the extent the State argues that it is the ADC's relationship with the Alabama Democratic Party, as opposed to its relationship with candidates and officeholders, that is corruptive, that argument is not well-taken either.  There would certainly be something to consider if the evidence supported a conclusion that the Alabama Democratic Party was controlling the ADC.  *Republican Party of New Mexico v. King*, 741 F.3d at 1103 ("If the political committees are indirectly controlled by political parties, that would raise a separate issue—coordination").  However, the evidence does not support that conclusion.  The evidence does show that the five ADC Executive Committee members are also members of the 292 member Alabama Democratic Executive Committee, that the Chair of the Alabama Democratic Party once gave remarks at an ADC meetings, and that over a five year period, the Alabama Democratic Party contributed over eighty-seven thousand dollars to the ADC.  However, there is no evidence that the Alabama Democratic Party was directing how those funds were used or how ADC implemented its programs, including the get-out-the-vote program.  Absent more, the undersigned cannot say that the Alabama Democratic Party directly or indirectly controlled the actions of the ADC.

the get-out-the-vote expenditures are necessarily coordinated with the candidates.

(*Id.*)  As such, because limits on coordinated expenditures are constitutionally

sound, so to are the limits on the ADC's ability to receive contributions from other

PACs.

When a PAC coordinates an expenditure with a candidate, it is the

functional equivalent of making a contribution to that candidate.  *See Colorado*

*Republican Fed. Campaign Comm.*, 533 U.S. at 447.  This is supported by the

FCPA's definition of contribution, which reads:

(2) CONTRIBUTION.

a.  Any of the following shall be considered a contribution:

> 1.  A gift, subscription, loan, advance, deposit of money
> or anything of value, a payment, a forgiveness of a loan,
> or payment of a third party, made for the purpose of
> influencing the result of an election.

> 2.  A contract or agreement to make a gift, subscription,
> loan, advance, or deposit of money or anything of value
> for the purpose of influencing the result of an election.

> 3.  Any transfer of anything of value received by a
> political committee from another political committee,
> political party, or other source.

> 4.  The payment of compensation by any person for the
> personal services or expenses of any other person if the
> services are rendered or expenses incurred on behalf of a
> candidate, political committee, or political party without

31

> payment of full and adequate compensation by the
> candidate, political committee, or political party....

ALA. CODE § 17-5-2(a)(2).  As the court understands this definition, if the ADC

spends money getting out the vote on behalf of a candidate, then the value of the

get-out-the-vote effort could be considered a contribution *if the candidate does not*

*provide payment of full and adequate compensation*.  ALA. CODE § 17-5-2

(a)(2)a.4.  Important to this is the assumption that the candidate prearranged this

expense on his or her behalf.  In the absence of prearrangement and coordination

the expenditure would not be a contribution, but would be an independent

expenditure.  *See Citizen's United*, 558 U.S. at 360.

The State argues that the fact ADC solicits and receives contributions from

candidates for getting out the vote demonstrates coordination, such that the value

of the get-out-the-vote efforts should be considered a contribution to a candidate.

However, this point overlooks the fact that under the FCPA's definition of

"contribution," an expenditure is not a contribution if the candidate provides full

and adequate compensation for the services rendered.  Here, assuming for

purposes of this discussion that there is sufficient evidence that a candidate was

prearranging with the ADC such that the ADC's get-out-the-vote efforts could be

considered to be on behalf of that particular candidate, there is not enough

evidence in the record that the undersigned can say that the candidates' contributions did not fully and adequately compensate ADC for those efforts.  In other words, there is not enough evidence to suggest that ADC was making a contribution to these candidates because the undersigned cannot determine whether the ADC was fully compensated for its get-out-the-vote efforts.  Because the undersigned cannot find that the ADC was using its independent-expenditure-only account to make candidate contributions by providing a prearranged service to the candidate without being compensated, the State has not proven it has an anti-corruption interest because the ADC's so-called independent expenditures are actually coordinated candidate contributions.

### B.      Is the PAC-to-PAC Transfer Ban Closely Drawn

Having established that the State's interest in preventing *quid pro quo* corruption and its appearance permits it to insist, at the very least, that there is some organizational separation or other safeguard in place with regard to the ADC to guard against the risk that contributions, even if formally earmarked for independent expenditures, could be funneled to a candidate, the question turns to whether the PAC-to-PAC transfer ban is a closely drawn means of furthering that interest.

Under the closely drawn standard, "[e]ven a significant interference with

protected rights of political association may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedoms." *McCutcheon*, 134 S. Ct. at 1444.  Clearing this hurdle "require[s] a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served[;] ... that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective." *Id.* at 1456-57 (internal citation and quotation marks omitted).

In this case, the court finds that the ban on contributions, expenditures, and transfers of funds to the ADC from other PACs is closely drawn to further the State's anti-corruption interest.  In light of lack of evidence of organizational separation or other safeguards to prevent contributions that are nominally for independent expenditures ending up in the Candidate Account, the court cannot say that a more narrowly tailored solution, such a limit on the amount another PAC could contribute to ADC, would adequately protect the State's interest. Given the lack of safeguards, even a small donation could end up in the wrong account.  Further, the impact of the PAC-to-PAC transfer ban on the ADC's associational rights is minimal.  The ADC is still able to receive unlimited

contributions from individuals; it can still make unlimited contributions to candidates; and it can make unlimited independent expenditures.  Because ALA. CODE  § 17-5-15(b) is closely drawn to serve a sufficiently important state interest, the ADC's as applied constitutional challenge must fail.  *See Catholic Leadership Coal. of Texas*, 764 F.3d at 445 ("Likewise, Texas's complete ban on Plaintiffs' proposed contribution is closely drawn to its anticircumvention interest insofar as Plaintiffs have failed to provide any clear safeguard that sufficiently assures that no part of the corporate contribution will end up being transferred to a candidate.").

## IV.   CONCLUSION

As noted above, Plaintiffs' "Second Motion for Preliminary Injunction" (doc. 43) and Defendants' "Motion for Summary Judgment and Evidentiary Submission" (doc. 44) are due to be denied.  The court further finds on the merits that ALA. CODE § 17-5-15(b) is constitutional as applied to the ADC.  As such, a final judgment in favor of the State will be entered.

**DONE**, this 31st day of July, 2015.

_John E. Ott_

_____

**JOHN E. OTT**
Chief United States Magistrate Judge

35

FILED

2015 Aug-03  AM 09:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **THE ALABAMA DEMOCRATIC CONFERENCE, et al.,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.:  5:11-cv-02449-JEO** |
| **v.** | ) ) | |
| **LUTHER STRANGE, in his official capacity as Attorney General of Alabama, et al.,** | ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER

In accordance with the Memorandum Opinion entered contemporaneously herewith, Plaintiffs' Second Motion for Preliminary Injunction (doc. 43) and Defendants' Motion for Summary Judgment (doc. 44) are **DENIED** and the court finds on the merits that ALA. CODE § 17-5-15(b) is constitutional as applied to the Alabama Democratic Conference.

**DONE**, this 31st day of July, 2015.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

51